1  BARRY E. HINKLE, Bar No. 071223
   KRISTINA L. HILLMAN, Bar No. 208599
2  CONCEPCIÓN E. LOZANO-BATISTA, Bar No. 227227
   WEINBERG, ROGER & ROSENFELD
3  A Professional Corporation
   1001 Marina Village Parkway, Suite 200
4  Alameda, California 94501-1091
   Telephone (510) 337-1001
5  Fax (510) 337-1023

6  Attorneys for Plaintiffs

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11 THE BOARD OF TRUSTEES of the          ) No.    C 08 01067 CW
   CARPENTERS HEALTH AND WELFARE         )
12 TRUST FUND FOR CALIFORNIA;            )
   CARPENTERS VACATION-HOLIDAY TRUST )
13 FUND FOR NORTHERN CALIFORNIA;         )
   CARPENTERS PENSION TRUST FUND FOR )    **DECLARATION OF MICHAEL**
14 NORTHERN CALIFORNIA; CARPENTERS       ) **PLOMMER IN SUPPORT OF**
   ANNUITY TRUST FUND FOR NORTHERN       ) **MOTION FOR DEFAULT**
15 CALIFORNIA; and CARPENTERS TRAINING   ) **JUDGMENT**
   TRUST FUND FOR NORTHERN               )
16 CALIFORNIA, and CARPENTERS 46         )
   NORTHERN CALIFORNIA COUNTIES          ) Date:   June 6, 2008
17 CONFERENCE BOARD for itself and on behalf ) Time:  9:30 a.m.
   of NORTHERN CALIFORNIA CARPENTERS     ) Courtroom: A, 15th Floor
18 REGIONAL COUNCIL and CARPENTERS       )
   UNION LOCAL NO. 22                    )
19                                       ) **Honorable Joseph C. Spero**
             Plaintiffs,                 )
20                                       )
           v.                            )
21                                       )
   SAUL M. CRUZ, Individually; SAUL M. CRUZ, )
22 Individually and doing business as SMC )
   MODULAR INSTALLATION; MAGDALENA       )
23 L. CRUZ, Individually; MAGDALENA L.   )
   CRUZ, Individually and doing business as SMC )
24 MODULAR INSTALLATION; SMC             )
   MODULAR INSTALLATION; Does 1 through  )
25 10, inclusive                         )
                                         )
26          Defendants.                  )
                                         )
27 _____   )

28

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village
Parkway, Suite 200
Alameda, CA  94501-1091

DECLARATION OF MICHAEL PLOMMER IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT
Case No. C 08 01067 CW

1    I, Michael J. Plommer, hereby declare as follows:

2        1.    I am a Field Agent for the Carpenter Funds Administrative Office of Northern

3    California, Inc. (hereinafter "Carpenter Funds") in Employer Accounts. As a Field Agent, I am

4    responsible for reviewing audits and collections on audits. My business address is Carpenter

5    Funds Administrative Office of Northern California, Inc., 265 Hegenberger Road, Suite 100,

6    Oakland, California 94621 and my business phone number is (510) 639-3977.

7        2.    The Carpenters Health and Welfare Trust Fund For California; Carpenters

8    Vacation-Holiday Trust Fund for California; Carpenters Pension Trust Fund for California;

9    Carpenters Annuity Trust Fund and Carpenters Training Trust Fund for California, (hereafter

10   "Trust Funds") were created by Trust Agreements. Said Trust Agreements were made pursuant to

11   collective bargaining agreements. Attached hereto as Exhibit "A" are true and correct copies of

12   said Trust Agreements.

13       3.    The Carpenters Health and Welfare Trust Fund for California; Carpenters Vacation-

14   Holiday Trust Fund for Northern California; Carpenters Pension Trust Fund for Northern

15   California; Carpenters Annuity Trust Fund for Northern California; and Carpenters Training Trust

16   Fund for Northern California ("Trust Funds"), are funds organized under and pursuant to the

17   provisions of Sections 302(c)(5), 302(c)(6) and 302(c)(9) of the Labor Management Relations Act

18   of 1947, as amended, 29 U.S.C. Sections 186(c)(5), 186(c)(6) and 186(c)(9). The principal offices

19   of the Carpenters Trust Funds are in Oakland, California.

20       4.    The Carpenters Master Agreement binds signatory Employers, such as Defendant to

21   the Trust Agreements respectively establishing said Trust Funds. The Trust Funds maintain an

22   account for the Defendants, and I am familiar with this file. The Trust Funds' records show that

23   Defendants are signatory employer and signed a collective bargaining agreement with the

24   Carpenter 46 Northern California Counties. As part of and in the normal course of business, the

25   Trust Funds retain copies of the collective bargaining agreement. Attached hereto and marked as

26   Exhibit "B" is a true and correct copy of the Memorandum Agreement signed on April 8, 2003.

27       5.    By signing the Collective Bargaining Agreements and Memorandum of Agreement,

28

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village
Parkway, Suite 200
Alameda, CA  94501-1091

- 2 -

DECLARATION OF MICHAEL PLOMMER IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT
Case No. C 08 01067 CW

Defendants agreed to the terms and conditions of said agreements.  Defendants specifically promised to contribute and pay to the Carpenter Trust Funds the hourly amounts required by the collective bargaining agreements for each hour paid for and/or worked by any of its employees who performed any work covered by said agreements, and that it would be subject to and bound by all of the terms, provisions and conditions of the Trust Agreements.

6.    SMC Modular Systems is a business operating in San Francisco, CA.  Saul and Magdalena Cruz are the owners of SMC Modular Systems.  I know this because Sal M. Cruz, an owner of SMC Modular Systems, provided this information when he signed the Collective Bargaining Agreement and because Magdalena Cruz executed a promissory note on behalf of SMC Modular Systems and in favor of the Carpenters Trust Funds. This information is also listed in the Fictitious Business records for San Francisco County.  The Fictitious Business records for San Francisco County, which I reviewed on the County's website at http://services.sfgov.org , are attached hereto as Exhibit "C."

7.    The Agreements require signatory employers to make timely contributions into the Trust Funds at a specified rate for each hour worked by, or paid by, all employees performing work covered under the Master Agreement.  The Agreements also require employers to report the number of covered hours worked by, or paid to, each of their employees performing covered work by submitting Employer Reports of Contributions, along with the amounts owed pursuant to the Reports, to the Trust Funds.  Liquidated damages in the amount of $20 per delinquency or ten percent (10%) of the contribution or contributions due, whichever is greater, is assessed by the Trust Fund against the employer, if the employer remits the contributions late.

8.    At all times material hereto, the Defendants, Saul M. Cruz, Individually; Saul M. Cruz, Individually and doing business as SMC Modular Installation; Magdalena L. Cruz, Individually; Magdalena L. Cruz, Individually and doing business as SMC Modular Installation; and SMC Modular Installation have been, and are, employers within the meaning of Section 3(5) and Section 515 of ERISA, 29 U.S.C. Section 1002(5), 1145, and employers in an industry affecting commerce within the meaning of Section 301 of the Labor Management Relations Act,

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village
Parkway, Suite 200
Alameda, CA  94501-1091

DECLARATION OF MICHAEL PLOMMER IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT
Case No. C 08 01067 CW

1    29 U.S.C. Section 185. I know this based upon the Collective Bargaining Agreement and the

2    Employers Reports of Contribution submitted by, and on behalf of Defendants to the Trust Funds.

3         9.    The Collective Bargaining Agreement between the Carpenters and the Defendants

4    has never been terminated.

5         10.    On April 3, 2007, Magdalena L. Cruz, signed a Promissory Note to the Plaintiffs,

6    promising to pay Plaintiffs $220,226.53 on behalf of herself, Saul M. Cruz and SMC Modular

7    Systems for past due contributions. Defendants defaulted on the Promissory Note. Plaintiffs then

8    filed a grievance against Defendant to collect delinquent contributions owed to them which was

9    arbitrated before Fred R. Wright on January 8, 2008. Attached hereto and marked as Exhibit "D"

10   is a true and correct copy of the Promissory Note.

11        11.    Defendants refused to comply with the Decision and Award of Arbitrator Fred R.

12   Wright of January 9, 2008 (Grievance No. 07-166) requiring Defendant to pay delinquent fringe

13   benefit contributions owing under the Promissory Note and under Defendants' own reports and to

14   submit to an audit of its books and records. Attached hereto and marked as Exhibit "E" is a copy

15   of the Decision and Award of Arbitrator Fred R. Wright of January 9, 2008 (Grievance No. 07-

16   166). Accordingly, Trust Funds referred the matter to the Trust Funds' attorneys, Weinberg, Roger

17   & Rosenfeld, and the Trust Funds brought an action to confirm the Board of Adjustment Award

18   and compel the audit.

19        12.    The Trust Agreements governing the Carpenters Trust Funds provide for an audit of

20   the books and records of signatory employers so that the Trust Funds may determine if the

21   employer is making full and prompt payment of required contributions. Article IV Section 6 of the

22   Trust Agreement for the Carpenters Pension Trust Fund for Northern California, which is

23   representative of the language of the language of the Agreements for the other Carpenters Trust

24   Funds named in this proceeding, provides the Trust Funds the right to:

25            …enter upon the premises of the Individual Employer during business
             hours, at a reasonable time or times, and to examine and copy books,
26            records, papers or reports of the Individual Employer as necessary to
             determine whether the Individual Employer is making full and prompt
27            payment of all sums required to be paid by him or it to the Fund. In

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village
Parkway, Suite 200
Alameda, CA  94501-1091

28

- 4 -

DECLARATION OF MICHAEL PLOMMER IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT
Case No. C 08 01067 CW

addition, each Individual Employer will comply with all of the terms and conditions of the 46 Counties Agreement with regard to audits.

A true and accurate copy of Article IV of the Trust Agreement for the Carpenters Pension Trust Fund is attached hereto as Exhibit "F." Also, attached hereto as Exhibit "G" is a true and accurate copy of copy of Article IV, Section 6 of the Trust Agreement for the Carpenters Annuity Trust Fund also allowing the Trust Fund to conduct an audit of the Employer's books and records. Also, attached hereto as Exhibit "H" is a true and accurate copy of Article IV, Section 7 of the Trust Agreement for the Carpenters Health and Welfare Trust Fund, which also allows the Trust Fund to conduct an audit of the Employer's books and records. Also, attached hereto as Exhibit "I" is a true and accurate copy of Article IV, Section 6 of the Trust Agreement for the Carpenters Vacation and Holiday Trust Fund, which also allows the Trust Fund to conduct an audit of the Employer's books and records. Also, attached hereto as Exhibit "J" is a true and accurate copy of Article IV, Section 6 of the Trust Agreement for the Carpenters Training Trust Fund, which also allows the Trust Fund to conduct an audit of the Employer's books and records.

13.   Plaintiffs wish to audit Defendants to determine their compliance with their obligations under the Agreements and pursuant to the Decision and Award of Arbitrator Fred R. Wright of January 9, 2008 (Grievance No. 07-166). Despite numerous requests, the Defendants have failed to submit to an audit of their books and records.

14.   In light of the Defendants' failure to submit to an audit and to pay the amounts due under the various arbitration awards, the Trust Funds have incurred attorney's fees and costs that are detailed in the accompanying Declaration of Concepción E. Lozano-Batista for attorney's fees.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village
Parkway, Suite 200
Alameda, CA  94501-1091

- 5 -

DECLARATION OF MICHAEL PLOMMER IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT
Case No. C 08 01067 CW

1    15.    The Master Agreement and Trust Agreements provide for the recovery of attorney's

2    fees and costs in an action to recover a delinquent balance due.  In addition, section 502(g)(2) of

3    the Employee Retirement Income Security Act of 1974, 29 U.S.C. Section 1132(g)(2) ("ERISA")

4    also provides for the recovery of attorney's fees and costs incurred in an action to recover a

5    delinquent balance due.

6    16.    The Trust Funds rely on employers' self-reporting and conduct audits to ensure the

7    employers' compliance with their contributing obligations.  Performing audits is one way to find

8    out whether an employer has complied with the contribution requirements in the Collective

9    Bargaining Agreement and Trust Agreements.  Plaintiffs rely on Defendant to self report.

10    17.    Not being able to conduct an audit creates uncertainty.  Without an audit, the Trust

11    Funds will be unable to fulfill their fiduciary duty to assure that the Defendants have made proper

12    payments in compliance with the Collective Bargaining Agreements.  Because benefits cannot be

13    verified without Defendants' payroll records, the Pension Trust Fund runs the risk of extending

14    benefits to individuals not covered by the plan and not providing the appropriate level of benefits

15    to participants.  Without being able to review Defendants' records, the Trust Funds do not know

16    whether Defendants have reported contributions for all individuals performing covered work.  The

17    Health and Welfare Trust Fund may deny a participant's claim because it has not received

18    contribution payments from Defendants or may pay a claim on behalf of an individual that should

19    not be covered.  If unpaid contributions go undetected, the Pension Trust Fund may make

20    payments to some beneficiaries at the expense of other participants and beneficiaries.

21    18.    If called as a witness I could competently testify to the above facts since they are

22    within my personal knowledge.

23    I declare under penalty of perjury that the foregoing is true and correct.  Executed this 10th

24    day of April 2008, at Oakland, California.

25    By:  Michael S Plommer

26    MICHAEL J. PLOMMER

27    118076/489803

28

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village
Parkway, Suite 200
Alameda, CA  94501-1091

- 6 -

DECLARATION OF MICHAEL PLOMMER IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT
Case No. C 08 01067 CW



# AGREEMENTS
# ESTABLISHING

## THE

EXHIBIT A

Exh A - Part 1

# CARPENTERS HEALTH AND WELFARE TRUST FUND

# CARPENTERS HEALTH AND WELFARE TRUST FUND FOR CALIFORNIA

## PLAN ADMINISTRATOR

### BOARD OF TRUSTEES

**Employer Trustees**
Ronald H. Askham
Dave Higgins, Sr.
Randy Jenco
Mark Lundquist
Larry Nibbi
Russell B. Peck
Roy Van Pelt

**Employee Trustees**
Harry Allen
John Casey
John Dawson
Stephen H. Ferini
John Hadzess
Rodney Osborn
Fred R. Wright

## FUND MANAGER
Carpenter Funds Administrative Office
of Northern California, Inc.
Houston D. Kemper, Secretary

## LEGAL COUNSEL
Stanton, Kay & Watson
and
Van Hourg, Weinberg, Roger & Rosenfeld

## CONSULTANTS
The Segal Company
and
Sedgwick Noble Lowndes

## CERTIFIED PUBLIC ACCOUNTANTS
Henning Morse, Inc

## INVESTMENT MANAGER
McMorgan & Company

## CORPORATE CO-TRUSTEE
Wells Fargo Bank, N.A

# INDEX

| SUBJECT | PAGE |
|---|---|
| Parties to Agreement | 6 |
| Recitals of Agreement | 6 |
| **ARTICLE I – DEFINITIONS** | |
| Section 1    Collective Bargaining Agreement | 6 |
| Section 2    Individual Employer | 6 |
| Section 3    Employee | 7 |
| Section 4    District Council | 7 |
| Section 5    Local Union | 7 |
| Section 6    Signatory Association | 7 |
| Section 7    Trust Agreement | 7 |
| Section 8    Trustees | 8 |
| Section 9    Board of Trustees | 8 |
| Section 10   Fund | 8 |
| Section 11   Health and Welfare Plan | 8 |
| Section 12   Contribution | 8 |
| Section 13   Participant | 8 |
| Section 14   Beneficiary | 8 |
| Section 15   ERISA | 8 |
| **ARTICLE II – TRUST FUND** | |
| Section 1    Establishment of Fund | 8 |
| Section 2    Principal Office of Fund | 8 |
| Section 3    Employee Rights Limited to Benefits | 8 |
| Section 4    Administration of Fund - Exclusive Purpose | 8 |
| Section 5    Rights of the Parties | 9 |
| Section 6    Prohibition Against Assignment or Alienation | 9 |
| Section 7    Limitation of Liability | 9 |
| Section 8    Non-Liability for Debts | 9 |
| Section 9    Manner of Contributions | 9 |
| Section 10   Delinquent Contributions - Due Date | 9 |
| Section 11   Delinquent Contributions - Liquidated Damages | 9 |
| Section 11   Weekly Contributions | 10 |
| **ARTICLE III – BOARD OF TRUSTEES** | |
| Section 1    Designation of Trustees | 10 |
| Section 2    Selection of Trustees | 10 |
| Section 3    Selection of Chairman and Co-Chairman | 10 |
| Section 4    Tenure of Office of Trustees | 11 |
| Section 5    Trustee Resignation | 11 |
| Section 6    Removal of Trustee from Office | 11 |
| Section 6    Successor Trustee | 11 |
| **ARTICLE IV – FUNCTIONS AND POWERS OF BOARD OF TRUSTEES** | |
| Section 1    Authority of Trustees | 11 |
| Section 1(A) Appointment of Investment Manager | 12 |
| Section 1(B) Allocation of Responsibilities | 12 |
| Section 1(C) Designation of Persons to Carry Out Fiduciary Responsibilities | 12 |
| Section 1(D) Employ Persons to Render Advice | 12 |
| Section 2    Contributions Due and Payable | 12 |

Section 1 — Demand and Enforce Payment of Contributions ......... 12
Section ... — For Limitation of Power ......... 12
Section 4(A) — Pay Expenses to Establish Fund and Plan ......... 12
Section 4(H) — Accumulate Reserve Funds ......... 12
Section 4(I) — Establish Funding Policy Consistent with ERISA ......... 12
Section 4(J) — Employ and Engage Personnel Consistent with ERISA ......... 13
Section 4(D) — Incur Reasonable Expense Incidental to Administration of Fund or Plan ......... 13
Section 4(E) — Compromise, Settle or Release Claims ......... 13
Section 4(F) — Invest and Reinvest Assets of the Fund ......... 13
Section 4(G) — Sell, Exchange, Lease, or Convey Property ......... 13
Section 4(H) — Construe Provisions of Trust Agreement and Plan ......... 13
Section 4(I) — Pay Taxes ......... 13
Section 4(J) — Maintain Actuarial Data ......... 14
Section 4(K) — Prepare and Furnish Periodic Reports ......... 14
Section 4(L) — Maintain Bank Accounts ......... 14
Section 4(M) — Adopt Rules and Procedures for Administration ......... 14
Section 4(N) — Borrow Money ......... 14
Section 4(O) — Exercise Powers Specified in Trust Agreement ......... 14
Section 4(P) — Provide Health & Welfare Benefits ......... 14
Section 5 — Insurance and Bonding Protection ......... 14
Section 6 — Maintain Records, Audit Employer Reports ......... 14
Section 7 — Annual Audit of Fund ......... 15
Section 8 — Reciprocity ......... 15
Section 9 — Authority to Merge With Other Funds ......... 15
Section 10 —

ARTICLE V – PROCEDURE OF BOARD OF TRUSTEES
Section 1 — Time of Regular and Special Meetings ......... 16
Section 2 — Appointment of Secretary to Board ......... 16
Section 3 — Manner of Voting ......... 16
Section 4 — Place of Meetings ......... 16
Section 5 — Board Action Without Meeting ......... 17

ARTICLE VI – CORPORATE CO-TRUSTEE OR CUSTODIAN
Section 1 — Appointment of Corporate Co-Trustee or Custodian ......... 17
Section 2 — Corporate Co-Trustee or Custodian Neither Employer Nor Union Affiliation ......... 17
Section 3 — Duties, Responsibilities, Rights and Powers of Corporate Co-Trustee or Custodian, Act as Fiduciary ......... 17

ARTICLE VII – GENERAL PROVISIONS APPLICABLE TO TRUSTEES
Section 1 — Provisions Subject to and Qualified by ERISA ......... 17
Section 2 — Efficacy of Instruments Executed by Trustees ......... 17
Section 3 — Duties, Responsibilities, Liabilities and Limitations of Trustee ......... 17
Section 4 — Liability of Trustee in Performance of Duty ......... 17
Section 5 — Defense of any Civil Action or Proceeding ......... 18
Section 5(A) — Refuse Defense of a Civil Action or Proceeding ......... 18
Section 5(B) — Defense of Criminal Action or Proceeding ......... 18
Section 5(C) — Defense Expenses ......... 18
Section 5(D) — Recover Reasonable Expenses to Retain Own Counsel for Defense ......... 18
Section 6 — Liability of Signatories to Agreement or Plan ......... 19

Section 7 — Liability of Signatories for Actions of Trustees ......... 19
Section 8 — Reimbursement of Trustee Expense ......... 19
Section 9 — Surrender of Trust Property by Trustee on Resignation or Removal ......... 19
Section 10 — Use of Name of Fund ......... 19

ARTICLE VIII – ARBITRATION
Section 1 — Action in Event of Deadlock ......... 19
Section 2 — Appointment of Umpire in Event of Non-Agreement of Trustees ......... 20
Section 3 — Expenses of Arbitration ......... 20
Section 4 — Matters Subject to Arbitration ......... 20

ARTICLE IX – GENERAL PROVISIONS
Section 1 — Effect of Agreement on Parties ......... 20
Section 2 — Decision of Board Final and Binding as to Disputes ......... 20
Section 3 — Manner of Delivering Notices ......... 21
Section 4 — Parties Bound by Trust Agreement ......... 21
Section 5 — Determination of Questions Regarding Agreement, Fund or Plan ......... 21
Section 6 — Severability ......... 21
Section 7 — Records Shall be Confidential ......... 21
Section 8 — Union Acts on Behalf of Employees ......... 21
Section 9 — Employers Act on Behalf of Individual Employers ......... 21
Section 10 — Tax Exemption ......... 21
Section 11 — Venue in City and County of San Francisco ......... 22

ARTICLE X – NON-MEMBER EMPLOYERS
Section 1 — Acceptance of Individual Employer ......... 22
Section 2 — Rights and Obligations of Individual Employer ......... 22

ARTICLE XI – AMENDMENT AND TERMINATION
Section 1 — Amendment or Modification of Trust Agreement ......... 22
Section 2 — Term of Trust Agreement ......... 22
Section 3 — Termination of Trust Agreement ......... 23
Section 4 — Disposition of Monies in Fund on Termination ......... 23
Section 5 — Life of Trust ......... 23

Signatory Parties ......... 23
Acceptance of Office by Trustees ......... 24
Substitution of Trustees ......... 24
Substitution of Corporate Co-Trustee ......... 24
Changes in Contribution Rate ......... 24

# AMENDED AND RESTATED TRUST AGREEMENT ESTABLISHING THE CARPENTERS HEALTH AND WELFARE TRUST FUND FOR CALIFORNIA

## April, 1997

This TRUST AGREEMENT, was entered into on March 4, 1953, by and between Central California Chapter and Northern California Chapter, the Associated General Contractors of America, Inc., acting for the 42 County Area of Northern California, and the Eight Employers' Association, namely Associated Home Builders of the Greater East Bay, Inc., Associated Home Builders of Northern California, Inc., (formerly known as Associated Home Builders of San Francisco, Inc.), General Contractors and Builders Association of the East Bay, General Building Contractors Association of San Francisco, Marin Builders Association, Inc., Peninsula General Contractors and Builders Association, Inc., Central California Chapter, the Associated General Contractors of America, Inc., and Northern California Chapter, the Associated General Contractors of America, Inc., acting for the 4 Bay 3 County Area, referred to collectively as the "EMPLOYERS," and the California State Council of Carpenters, the District Councils and Local Unions of the United Brotherhood of Carpenters and Joiners of America, referred to collectively as the "UNION," recites and provides as follows:

### RECITALS:

1. The Employers, and the other employer associations signatory to this agreement, are parties to various collective bargaining agreements with the Union which provide for employer contributions for each hour worked by employees under those agreements to a health and welfare plan to be established for the benefit of the employees.

2. The parties agreed that contributions should be payable to and be deposited into the trust fund created and established by this Trust Agreement.

3. The purpose of this Trust Agreement is to provide for the establishment of the Trust Fund and for the maintenance of the Health and Welfare Plan in accordance with the terms of the Collective Bargaining Agreement.

4. Since the establishment of the Health and Welfare Trust Fund:

(A) the "Employers" have been succeeded through historical collective bargaining procedures in the area by Associated General Contractors of California, Inc., Construction Employers Association, and Home Builders Association of Northern California which now constitute the entity referred to collectively as the "Employers"; and

(B) the "Union" has been succeeded through historical collective bargaining procedures in the area by the Carpenters 46 Northern California Counties Conference Board, which now constitutes the entity referred to as the "Union."

5. The Employers and the Union agree that this Trust Agreement shall be and is amended, modified and restated to conform with all of the requirements of the Employee Retirement Income Security Act of 1974, as amended, and of any valid regulations issued consistent with ERISA.

### PROVISIONS:

In consideration of the foregoing, and of the mutual promises stated, the parties agree as follows:

## ARTICLE I
## Definitions

Unless the context or subject matter otherwise requires the following definitions shall govern in this Trust Agreement:

**Section 1.** The term "Collective Bargaining Agreement" includes: (a) the Carpenters 46 Northern California Counties Master Agreement dated June 16, 1971; (b) the Piledrivers Master Agreement dated July 25, 1956; and, (c) any other collective bargaining agreement other than the Collective Bargaining Agreements referred to above which is approved by the Carpenters 46 Northern California Counties Conference Board to be defined as a Collective Bargaining Agreement for the purposes of contributions to the Health and Welfare Plan or Health and Welfare Trust Fund established by this Agreement.

**Section 2.** The term "Individual Employer" means any employer who is required by the Collective Bargaining Agreement to make Contributions to the Fund, or who does in fact make one or more Contributions to the Fund. The term "Individual Employer" also includes any Local Union or District Council, any labor council or other labor organization with which a Local Union or District Council is affiliated, and any corporation, trust or other entity which provides services to the Fund or in the training of apprentice or journeymen carpenters, which makes Contributions to the Fund with respect to the work of its employees pursuant to a Subscriber's Agreements approved by the Board of Trustees, provided that the inclusion of any Local Union, District Council, labor council, other labor organization, corporation, trust or other entity, as an Individual Employer is not a violation of any existing law or regulation. Any Local Union, District Council, labor council, other labor organization, corporation, trust or other entity shall be an Individual Employer solely for the purpose of making Contributions with respect to the work of its respective employees and shall have no other rights or privileges under this Trust Agreement as an Individual Employer.

**Section 3.** The term "Employee" means any employee of an Individual Employer who performs work covered by the Collective Bargaining Agreement. The term "Employee" shall also include (a) employees of Local Unions and District Councils, and employees of labor councils or other labor organizations with which a Local Union or District Council is affiliated, or of any corporation, trust or other entity described in Section 2, with respect to whose work Contributions are made to the Fund pursuant to regulations adopted by the Board of Trustees and (b) former employees who are eligible to receive benefits from the Carpenters Pension Trust Fund for Northern California or from the Staff Pension Plan of the Carpenter Funds Administrative Office of Northern California, Inc., provided the inclusion of any of these employees or former employees is not a violation of any existing law or regulation. The term "Employee" shall not include office or clerical employees, except clerical employees who may be specifically included in a health and welfare plan or rules and regulations established by the Board of Trustees pursuant to Article IV, Section 4.

**Section 4.** The term "District Council" means any district council in the 46 Northern California Counties affiliated with the United Brotherhood of Carpenters and Joiners of America, AFL-CIO, and the Carpenters 46 Northern California Counties Conference Board.

**Section 5.** The term "Local Union" means any Local Union in the 46 Northern California Counties affiliated with the United Brotherhood of Carpenters and Joiners of

Association, which signs this Agreement on behalf of those members a written acceptance of and agreement to be bound by the terms of this Trust Agreement.

**Section 7.** The term "Trust Agreement" means this Agreement and any modification, amendment, extension or renewal.

**Section 8.** The term "Trustee" means any natural person designated as Trustee pursuant to Article III.

**Section 9.** The terms "Board of Trustees" or "Board" mean the Board of Trustees established by this Trust Agreement.

**Section 10.** The term "Fund" means the Trust Fund created and established by this Trust Agreement.

**Section 11.** The terms "Health and Welfare Plan" or "Plan" mean the Health and Welfare Plan established pursuant to the Collective Bargaining Agreement and this Trust Agreement and any amendments or modifications of the Plan.

**Section 12.** The term "Contribution" means the payment made to the Fund by any Individual Employer under the provisions of the Collective Bargaining Agreement or Subscriber's Agreement.

**Section 13.** The term "Plan Participant" or "Participant" means any Employee or former Employee who is or who may become eligible to receive a benefit of any type from the Fund or whose Beneficiaries may be or become eligible to receive benefits.

**Section 14.** The term "Beneficiary" means a person designated by a Participant pursuant to the Plan or by the terms of the Plan who is or who may become entitled to a benefit under the terms of the Plan.

**Section 15.** The term "ERISA" means the Employee Retirement Income Security Act of 1974, 29 U.S.C. Section 1001 et seq., as amended, and any valid regulation issued consistent with that Act.

## ARTICLE II
## Trust Fund

**Section 1.** The Carpenters Health and Welfare Trust Fund for California shall consist of all Contributions required by the Collective Bargaining Agreement or Subscriber's Agreement to be made for the establishment and maintenance of the Health and Welfare Plan, and all interest, income and other returns of any kind.

**Section 2.** The Fund shall have its principal office in San Francisco, California, or any other place designated by the Board of Trustees.

**Section 3.** No Employee shall be entitled to receive any part of the Contributions made or required to be made to the Fund in lieu of the benefits provided by the Health and Welfare Plan.

**Section 4.** The Fund shall be administered by the Board of Trustees for the exclusive benefit of Employees and their Beneficiaries pursuant to the provisions of the Health and Welfare Plan. Notwithstanding anything to the contrary contained in this Trust Agreement or in the Plan, no part of the corpus or income shall at any time revert to, or be recoverable by any of the Employers, any Signatory Association, any Individual Employer, the Union, any Local Union, or District

Council, to be used for, or diverted to, purposes other than for the exclusive benefit of Employees and their Beneficiaries under the Plan, and the payment of administration expenses of the Fund and the Plan except for Contributions, which may be refunded to an Individual Employer under applicable law.

**Section 5.** Neither the Employers, any Signatory Association, any Individual Employer, the Union, any Employee or other Beneficiary of the Health and Welfare Plan nor any other person shall have any right, title or interest in the Fund other than as specifically provided in this Trust Agreement or in the Health and Welfare Plan. Neither the Fund nor any Contributions to the Fund shall be in any manner liable for or subject to the debts, contracts or liabilities of the Employers, any Signatory Association, any Individual Employer, the Union or any Employee or Beneficiary.

**Section 6.** No part of the Fund, nor any benefits payable in accordance with the Health and Welfare Plan shall be subject in any manner to anticipation, alteration, sale, transfer, assignment, pledge, encumbrance or charge by any person. However, the Board of Trustees may establish a procedure which allows an Employee to assign benefits due him to be paid to an institution in which either he or his dependent is hospitalized in consideration for medical or hospital services or to any other provider of services specified in the Plan.

**Section 7.** Neither the Employers or any member of the Employers or any Signatory Association, nor any officer, agent, employee or committee member of the Employers or any Signatory Association, shall be liable to make Contributions to the Fund or be under any other liability to the Health and Welfare Plan, with respect to the Health and Welfare Plan, except to the extent that he may be an Individual Employer required to make Contributions to the Fund with respect to his or its own individual or joint venture operations, or to the extent he may incur liability as a Trustee. The liability of any Individual Employer to the Fund, or with respect to the Health and Welfare Plan, shall be limited to the payments required by the Collective Bargaining Agreement with respect to his or its individual or joint venture operations, and in no event shall he or it be liable or responsible for any portion of the Contributions due from other Individual Employers with respect to the operations of those Individual Employers. The basis on which payments are made to the Fund as specified in the Collective Bargaining Agreement shall not be required to make any further payments or Contributions to the cost of the operation of the Fund or of the Plan, except as may be provided in those agreements.

**Section 8.** Neither the Employers, any Signatory Association, any Individual Employer, the Union nor any Employee shall be liable or responsible for any debts, liabilities or obligations of the Fund or the Trustees.

**Section 9.** Contributions to the Fund shall be due commencing March 1, 1953 for work on or after that date, and shall be payable in San Francisco, California, in regular monthly installments starting on or before April 15, 1953, and continuing from month to month subject to the provisions of the Collective Bargaining Agreement. The Contributions payable on or before April 15, 1953, shall include all amounts which accrued for work performed during the period from March 1, 1953, up to the close of the Individual Employer's payroll period ending closest to the last day of that month. Each subsequent monthly Contribution shall include all amounts which accrued in the interim for work performed up to the close of the Individual Employer's payroll period ending closest to the last day of the preceding calendar month. Each monthly Contribution shall be accompanied by a report in a form prescribed by the Board of Trustees. The rate of contribution shall be not less than the rate of contribution required by the Collective Bargaining Agreement subject to the further provisions of this Section and to the provisions of the applicable collective bargaining agreement. The Board of Trustees shall have authority to prescribe and adopt

8

9

rules and procedures pursuant to Article IV, Section 4 of this Trust Agreement permitting Individual Employers to make Contributions to the Fund on a quarterly instead of a monthly basis, subject to any conditions or requirements the Board deems necessary or desirable.

Section 10. Each Contribution to the Fund shall be made promptly, but in no event later than the 25th day of the calendar month in which it becomes payable, on which date the Contribution, if not paid in full shall be delinquent. If any Individual Employer fails to pay his or its monthly Contribution in full on or before the 25th day of the month on 4 occasions within any 12-month period, the Board of Trustees may provide by resolution that during the 12-month period immediately following the resolution the 15th day of the month shall be the delinquency date for that Individual Employer.

The parties recognize and acknowledge that the regular and prompt payment of Contributions to the Fund is essential to the maintenance in effect of the Health and Welfare Plan, and that it would be extremely difficult, if not impracticable, to fix the actual expense and damage to the Fund and to the Health and Welfare Plan which would result from the failure of an Individual Employer to pay monthly Contributions in full within the time prescribed. Therefore, the amount of damage to the Fund and the Health and Welfare Plan resulting from any failure to promptly pay shall be presumed to be the sum of $20 per delinquency or 10% of the amount of the Contribution or Contributions due, whichever is greater. This amount shall become due and payable to the Fund as liquidated damages and in San Francisco, California, upon the day immediately following the date on which the Contribution or Contributions become delinquent and shall be in addition to the delinquent Contribution or Contributions. The Contribution, as increased, shall be the amounts required to be paid to the Fund.

Section 11. The Board of Trustees may adopt and from time to time amend, revise or repeal rules and regulations establishing a procedure which requires an Individual Employer who is delinquent in making Contributions as provided in Article II, Sections 9 and 10, to make Contributions to the Fund on a weekly rather than a monthly basis and to remit each weekly Contribution to the Fund accompanied by a report of contribution in an envelope postmarked not later than midnight on Friday of the week for which the Contribution is due. In the event these rules and regulations are adopted, any Individual Employer to whom the rules and regulations apply shall make Contributions to the Fund in accordance with the rules and regulations, and the provisions of Article II, Section 10, with regard to liquidated damages shall apply with respect to any weekly Contribution which is not paid within the time provided in the rules and regulations, except that the amount of the liquidated damages shall be $5.00 per delinquency or 20% of the amount of the Contribution or Contributions due, whichever is greater.

## ARTICLE III
## Board of Trustees

Section 1. The Fund shall be administered by a Board of Trustees which shall consist of 7 Trustees representing the Individual Employers and 7 Trustees representing the Employees. The Trustees representing the Individual Employers shall be appointed in writing by the Employers as follows: Two shall be appointed by Associated General Contractors of California, Inc., or its successor; two shall be appointed by Home Builders Association of Northern California or its successor; and, (One shall be proposed by an employer association other than Associated General Contractors of California, Inc., Construction Employers Association or Home Builders Association of Northern California or shall be proposed by an independent employer. This Trustee shall be appointed only by

the unanimous vote of Associated General Contractors of California, Inc., Construction Employers Association and Home Builders Association of Northern California or their respective successors.

No employer association or its successor shall continue to have appointing authority pursuant to this Section unless the association or its successor is signatory to the Collective Bargaining Agreement with the Union on behalf of its members or of a multi-employer unit which it represents for purposes of collective bargaining with the Union.

If an employer association or its successor ceases to be bound to the Collective Bargaining Agreement with the Union, any Trustee appointed by that association or its successor shall be deemed to have resigned and a successor Trustee shall be appointed by the employer associations designated above or their successors, who remain signatory to the Collective Bargaining Agreement with the Union. The Employers designated pursuant to the above provisions are irrevocably designated by each Individual Employer as his or its attorney-in-fact for the purpose of appointing and removing Trustees and successor Trustees.

The Trustees representing the Employers shall be appointed by an instrument in writing signed by the Executive Officer of the Union.

The Employers and the Union expressly designate the Trustees jointly as named fiduciaries, who shall have exclusive authority and discretion acting as the Board of Trustees to control and manage the operation and administration of the Fund and the Plan. Each of the Trustees expressly accepts designation as a fiduciary and as Trustee by written acceptance and signature of this Trust Agreement and assumes the duties, responsibilities and obligations of this Trust as created and established by this Trust Agreement and under applicable law. Any successor Trustee shall do likewise by signing the Trust Agreement or written acceptance, in a form approved by and filed with the Board of Trustees.

Section 2. The Trustees shall select one Trustee to act as Co-Chairman of the Board of Trustees and one Trustee to act as Co-Chairman, each to serve for a period of time determined by the Trustees. When the Chairman is selected from among the Employer Trustees, the Co-Chairman shall be selected from among the Employee Trustees, and vice versa. Neither the Chairman nor the Co-Chairman shall succeed himself.

Section 3. Each Trustee shall serve until his death, resignation or removal from office.

Section 4. An Employer Trustee shall be deemed to have resigned under the circumstances specified in Section 1 of this Article. Any other Trustee may resign at any time by serving written notice of his resignation upon the Secretary of the Board of Trustees at least 30 days prior to the date on which his resignation is to be effective. The Secretary shall promptly notify in writing the Chairman and the Co-Chairman of the Board and the Employers and the Union of the resignation of a Trustee.

Section 5. Any Employer Trustee may be removed from office at any time, for any reason, by a written instrument signed by the employer association having appointing authority with respect to the Trustee and served on the Secretary of the Board of Trustees. Any Employer Trustee may be removed from office at any time, for any reason, by a writing signed by the Executive Officer of the Union and served on the Secretary of the Board of Trustees. The Secretary shall promptly notify in writing the Chairman and Co-Chairman of the Board, the Trustee being removed, and the Union or Employers, as the case may be, of the removal.

Section 6. If any Employer Trustee dies, resigns or is removed from office, a successor Trustee shall be promptly appointed by an instrument in writing signed by the employer association having appointing authority with respect to the Trustee. If any Employee Trustee dies, resigns or is removed from office, a successor Trustee shall be promptly appointed by an instrument in writing specified by the Executive Officer of the Union.

10

11

## ARTICLE IV
## Functions and Powers of Board of Trustees

Section 1. The Board of Trustees acting jointly shall have the power to control and manage the assets, operation and administration of the Fund and the Plan as a fiduciary and shall exercise that authority with the care, skill, prudence and diligence under the prevailing circumstances that a prudent board acting in a like capacity and familiar with these matters would use in the conduct of an enterprise of like character and with like aims; provided, however, that the Board may:

(A) Appoint an investment manager or managers (as defined in ERISA) to manage (including the power to acquire and dispose of) any assets of the Fund.

(B) To enter into an agreement allocating among Trustees the specific responsibilities, obligations or duties as the Board shall determine;

(C) Designate persons other than named fiduciaries to carry out fiduciary responsibilities (other than Trustee responsibilities) under this Trust Agreement or the Plan; and

(D) Employ one or more persons to render advice with regard to any responsibility the Board has under this Trust Agreement or Plan.

Any person or entity appointed, designated or employed shall act solely in the interests of the Participants and Beneficiaries of the Fund and Plan

The detailed basis on which health and welfare benefits are to be paid shall be set forth in the Health and Welfare Plan of the Carpenters Health and Welfare Trust Fund for California. The Board of Trustees expressly reserves the right, in its sole discretion at any time, and from time to time on a non-discriminatory basis, amend, rescind or terminate any Plan provision even though the changes may affect claims which have already been accrued.

Section 2. All Contributions to the Fund established by this Trust Agreement are due and payable in San Francisco, California, and shall be paid to, received and held by the Trustees subject to the terms and provisions of this Trust Agreement. The acceptance and cashing of any checks for Contributions, and the disposition of the monies covered in accordance with this Trust Agreement, shall not release or discharge the Individual Employer from his or its obligation under the Collective Bargaining Agreement for hours worked under that agreement for which no Contribution has actually been received, notwithstanding any statement, restriction or qualification appearing on the check or any attachment. The Board of Trustees may direct that any check may be a single check covering monies payable to one or more other funds and may join in with the boards of trustees of other funds in instructing the bank or banks with regard to the allocation of the monies covered by the check among the funds. In the event these instructions are given they shall be binding upon the bank or banks, the Individual Employer, the Employees, the Unions and all other parties.

Section 3. The Board of Trustees shall have the power in the name of the Fund or otherwise, as in its discretion may be deemed necessary or desirable, to demand and enforce, by suit or in court, the prompt payment of Contributions to the Fund, including payments due to delinquencies as provided in Article II, Section 10, without being limited or restricted by any grievance or arbitration procedures provided in the Collective Bargaining Agreement. In addition, the Board shall have the right to assert and enforce all rights and other claims or rights with respect to any Contributions or payments belonging to the Fund, this Trust, or any of its Participants or Beneficiaries, including the right to file priority or other claims in bankruptcy

If any Individual Employer defaults in the making of Contributions or payments and of

the Board consists legal counsel, there shall be added to the obligation of the Individual Employer who is in default, reasonable attorney's fees, court costs and all other reasonable expenses incurred in connection with the suit or claim, including any and all appellate proceedings.

Section 4. Without limitation of the provisions of Section 1 of this Article, the Board of Trustees shall have power:

(A) To pay out of the Fund the reasonable expenses incurred in the establishment of the Fund and the Health and Welfare Plan;

(B) To establish and accumulate reserve funds as may be adequate to provide for administration expenses and other obligations of the Fund, including the maintenance of the Health and Welfare Plan;

(C) To provide a procedure for establishing and carrying out a funding policy consistent with the objectives of the Health and Welfare Plan and the requirements of ERISA;

(D) To employ or engage executive, consultant, actuarial, accounting, administrative, clerical, secretarial, legal or other employees, assistants or advisees, as may be necessary in connection with the administration of the Fund and the Health and Welfare Plan and to pay, out of the Fund, the compensation and necessary expenses of those employees, assistants or advisees and the cost of office space, furnishings and other essentials required in the administration of the Plan. If the Board is unable to agree upon the employment of either a consultant or an attorney pursuant to this clause, the Employer Trustees and the Employee Trustees may each select either a consultant or an attorney, or both, as the case may require, who shall be directed to act jointly in connection with the administration of the Fund and the reasonable cost of the advice or services shall be paid from the Fund. The Board shall engage pursuant to this clause an independent qualified public accountant on behalf of all Health and Welfare Plan Participants as required by ERISA;

(E) To incur and pay out of the Fund any other expense reasonably incidental to the administration of the Fund for the Health and Welfare Plan;

(F) To compromise, settle, or release claims or demands in favor of or against the Fund on any terms and conditions the Board may deem desirable, including the power to continue, maintain and from time to time modify or revoke, in whole or in part, a policy and procedure for the waiver of all or any part of the liquidated damages portion of any Contribution or Contributions upon terms and conditions the Board determines would be in the interest of the Fund and its Participants and Beneficiaries. However, this clause shall not excuse a violation of any of the collective bargaining agreements;

(G) If no investment manager is designated and appointed by the Board of Trustees, to invest and reinvest the assets of the Fund in accordance with all applicable laws. Investments may be made with a bank or other fiduciary to the fullest extent permitted by law. No indicia of ownership shall be maintained outside the jurisdiction of the district courts of the United States, except to the extent permitted by law.

(H) To sell, exchange, lease, convey or otherwise dispose of any property of any kind forming a part of the Fund upon terms the Board deems proper and to execute and deliver any and all instruments of conveyance or transfer;

(I) To construe the provisions of this Trust Agreement and the Plan and any construction adopted by the Board in good faith shall be binding upon any and all parties or persons;

(J) To pay any and all real or personal property taxes, income taxes, or other taxes or assessments of any or all kinds levied or assessed upon or with respect to the Fund;

(K) To maintain on a current basis, all actuarial data, records and information in connection with the administration of the Plan and to have the books and records checked and evaluated annually, or more often if the Board so determines, by the Fund consultant/actuary or consultant/actuaries, as the case may be, whose reports shall be available for inspection by interested persons at a reasonable times and upon proper notice, at a place or places designated by the Board and the Board shall have the right to rely upon all reports and records.

(L) To prepare reports, descriptions, summaries and other information required by law or as the Board of Trustees in its discretion deems necessary or advisable and to file and furnish the reports, descriptions, summaries and information to Participants and their beneficiaries, the Union, Employers, the Trustees, or other persons or entities, including government agencies.

(M) To maintain a bank account or bank accounts as may be necessary in the administration of the Fund or the Plan, and to designate the person or persons authorized to sign checks and withdrawal orders on those accounts;

(N) To prescribe and adopt reasonable rules and procedures, which shall not be inconsistent with the provisions of this Trust Agreement or of the Plan, governing the reporting of Contributions, the entitlement to benefits, and any and all other matters in connection with the Fund and Plan.

(O) To borrow money and to encumber real or personal property by mortgage, deed of trust (with power of sale), contract of sale, security agreement, pledge or otherwise, to borrow money on the credit of the trust estate, and to purchase real or personal property subject to and assume the obligation secured by a mortgage, deed of trust (with power of sale), contract of sale, security agreement, pledge or otherwise, and

(P) To exercise and perform any and all of the other powers and duties specified in this Trust Agreement or the Plan.

Section 5. The Board of Trustees shall establish the Health and Welfare Plan, which shall consist of (a) the benefits provided by contracts and insurance policies entered into pursuant to the provisions of this Section and, in the alternative or in combination with, (b) a written statement of benefits and rules and regulations established by the Board pursuant to this Section to govern the direct payments of benefits. The Board shall promptly use the monies available in the Fund to first provide the benefits specified in the Plan.

The Board shall have power to enter into contracts and procure insurance policies necessary to place into effect and maintain all or any part of the Plan, to terminate, modify or renew any contracts or contracts in the provisions of the Plan, and to exercise and claim all rights and benefits granted to the Fund or the Fund by any contracts or contracts. Any contract may be executed in the name of the Fund. If, after reviewing the matter, the Board licenses it advisable to do so, the Board shall also have power to provide for the direct payment out of the Fund of all or any part of the benefits to be furnished under the Plan, but only to the extent that such payment is permitted by existing laws and regulations and subject to the terms and conditions of payment. In the event that the Board elects to provide for the direct payment of any benefit or benefits the detailed basis on which payments are to be made shall be set forth in a written statement, which statement, and any amendment or modification, shall be signed on behalf of the Board by the Chairman and Co-Chairman, and when so signed shall be a part of this Agreement for all purposes of the Labor Management Relations Act, as amended, as of any other law or regulation. An accurate summary of the benefits and the terms and conditions of payment, shall be printed and made available to each active or retired Employee who is eligible for any benefit or benefits

14

Section 6. The Board of Trustees shall provide at the expense of the Fund, where and to the extent permissible by applicable law, insurance and bonding protection for the Fund and for each Trustee, former Trustee or estate of a deceased Trustee or former Trustee, and all other persons who handle funds or other property of the Fund for any purpose. The protection shall be from companies and with limits determined by the Board.

Section 7. The Board of Trustees shall maintain suitable and adequate records of and for the administration of the Fund and the Health and Welfare Plan. The Board may require the Employers, any Signatory Association, any Individual Employer, the Union, any Employee or any other Beneficiary under the Health and Welfare Plan to submit to it any information, data, report or documents reasonably relevant to and suitable for the purposes of administration. However, the Union, Local Unions and District Councils shall not be required to submit membership lists. The parties agree that they will use their best efforts to secure compliance with any reasonable request of the Board for information, data, report or documents. Upon a request in writing from the Board, each Individual Employer will permit a certified public accountant selected by the Board to enter upon the premises of the Individual Employer during business hours, at a reasonable time or times, and to examine and copy books, records, papers or reports of the Individual Employer as necessary to determine whether the Individual Employer is making full and prompt payment of all sums required to be paid by him or it to the Fund. In addition, each Individual Employer will comply with all of the terms and conditions of the 46 Counties Agreement with regard to audits.

Any action to secure compliance with the provisions of this Section or any other provision of the Trust Agreement, to enforce the prompt payment of Contributions or any other sums owed to the Fund or arising out of any dispute concerning the interpretation, application or enforcement of this Section or of any other provision of the Trust Agreement, shall be brought and tried in a court of competent jurisdiction located in the City and County of San Francisco, and each party to the action expressly waives any right to change the venue of the action to any other county or to any other place.

Section 8. The books of account and records of the Board of Trustees, including the books of account and records pertaining to the Fund, shall be audited at least once a year by an independent qualified public accountant engaged by the Board on behalf of all Plan Participants who shall conduct an examination of any financial statements of the Fund and Plan, and of other books and records of the Fund and Plan required by ERISA. A statement of the results of the annual audit shall be available for inspection by interested persons at the principal office of the Fund and at any other suitable place the Board may designate. Copies of the statement shall be delivered to the Employers, the Union and each Trustee within 10 days after the statement is prepared. The Board shall also prepare all other reports required by law.

Section 9. The Board of Trustees may, subject to any applicable law or regulation, coordinate its activities in the administration of the Fund and the Health and Welfare Plan or plans, established for employers in the building and construction industry. The authority granted by this Section shall include, without limitation, the authority to enter into agreements or other arrangements with any other board of trustees or administrative board providing for a joint administrative office, or for the performance of services by one board or plan for another board or plan, or for the reciprocal exchange of funds or credits. The costs involved in the execution of any agreement or arrangement shall be shared by the participating plans in proportion to the benefits received by the respective plans and as near as may be practicable, the agreement or arrangement shall be operated without profit or loss to any of the participating plans. Any sums received pursuant to the terms of any agreement or arrangement shall be paid into and become a part of the Fund. If the agreement or arrangement or

15

arrangement is found to be or becomes inconsistent with the continuance of the existing status of the Fund for tax purposes or the deductibility of Contributions to the Fund and of benefits paid under the Health and Welfare Plan, the provision or provisions of the agreement or arrangement causing the inconsistency shall be inoperative. Except as expressly modified, all of the terms and provisions of the Trust Agreement, as amended, shall continue in full force and effect.

Section 10. (A) The Board of Trustees may enter into an agreement with the board of trustees of any other health and welfare trust fund, which is established or maintained pursuant to a collective bargaining agreement, providing for the consolidation, merger, or amalgamation of the Fund with another fund, upon any terms and conditions the Board shall determine, subject to the prior written approval of the agreement by the Employers and the Union, and may accept the transfer of monies, accounts, contracts, liabilities, property and any other investments or rights, provide for the payment of benefits and otherwise execute and carry out the terms of the agreement.

(B) In the event the Board of Trustees approves the consolidation, merger or amalgamation of the Fund, the Board of Trustees shall have the power to appoint an equal number of employer trustees and employee trustees from the existing board of trustees of the merging fund to the Board of Trustees. These trustees shall serve at the discretion of the Board of Trustees and for as long as the Board of Trustees may deem desirable.

## ARTICLE V
## Procedure of Board of Trustees

Section 1. The Board of Trustees shall determine the time and place for regular periodic meetings of the Board. Either the Chairman or the Co-Chairman, or any 4 Trustees, may call a special meeting of the Board by giving written notice to all other Trustees of the time and place of the meeting at least 5 days before the date set for the meeting. Any notice of a special meeting shall be sufficient if sent by ordinary mail or by wire addressed to the Trustee at his address as shown in the records of the Board. Any meeting at which all Trustees are present, or concerning which all Trustees have waived notice in writing, shall be a valid meeting without the giving of any notice.

Section 2. The Board shall appoint a secretary, who shall keep minutes or records of all meetings, proceedings and acts of the Board. The minutes need not be verbatim.

Section 3. The Board shall not take any action or make any decision on any matter coming before it in consideration or exercise any power or right given or reserved to it or conferred upon it by this Trust Agreement except upon the vote of a majority of all 14 of the Trustees at a meeting of the Board duly and regularly called or except by the signed concurrence of all 14 Trustees without a meeting, as provided in Section 3 of this Article.

In the event of the absence of any Employer Trustee from a meeting of the Board, the Employer Trustees present at the meeting may vote on behalf of the absent Employer Trustee and if the Employer Trustees cannot all agree as to how the vote of the absent Employer Trustee shall be cast then it shall be cast as the majority of them shall determine or, in the absence of a majority determination, it shall be cast as the Employer Trustee Chairman or Co-Chairman of the Board shall determine. In the event of the absence of any Employee Trustee from a meeting of the Board, the Employee Trustees present at the meeting may vote on behalf of the absent Employee Trustee pursuant to the same method and in the same manner as provided for Employer Trustees to cast the vote of any absent Employer Trustee.

At the request of any Trustee, made either before or after the taking of a vote on any matter coming before the Board, the action or decision of the Board on the matter shall

16

be by unit vote, that is, the vote of the Employer Trustees on the action or decision shall be determined by the majority of all Employer Trustees and the vote of the Employee Trustees on the action or decision shall be determined by the majority of all Employee Trustees.

Section 4. All meetings of the Board shall be held at the principal office of the Fund unless another place is designated by the Board.

Section 5. Upon any matter which may properly come before the Board of Trustees, the Board may act in writing without a meeting, provided the action has the concurrence of all the Trustees.

## ARTICLE VI
## Corporate Co-Trustee or Custodian

Section 1. The Corporate Co-Trustee or Custodian and any successor may be appointed by the Board of Trustees.

Section 2. The Corporate Co-Trustee or Custodian shall not be a representative of either the Employers or the Union.

Section 3. The duties, responsibilities, rights, and powers of the Corporate Co-Trustee or Custodian shall be those delegated to it by the Board of Trustees and the shall be set forth in a contract between the Board and the Corporate Co-Trustee or Custodian. If so designated the Corporate Co-Trustee or Custodian shall act as a fiduciary.

## ARTICLE VII
## General Provisions Applicable to Trustees

Section 1. The provisions of this Article are subject to and qualified by the provisions of ERISA to the extent those provisions are constitutionally applicable. In order to induce experienced, competent and qualified persons and entities to serve as fiduciaries, to deal with the Fund and the Board of Trustees and to participate in other ways in the administration and operation of the Fund and Plan and to further the interests of the Participants and Beneficiaries of the Plan, it is the intent and purpose of the parties to provide for the maximum permissible protection and indemnification of those persons or entities from and against personal liability, loss, cost or expense as a result of the service, dealing or participation, and the provisions of this Article shall be liberally construed and applied to accomplish this objective.

Section 2. No party who has verified that he or it is dealing with the duly appointed Trustees, shall be obligated to see to the application of any money or property of the Fund, or to see that the terms of this Agreement have been complied with, or to inquire as to the necessity or expediency of any act of the Trustees. Every instrument executed by the Board of Trustees or by its direction shall be conclusive in favor of every person who relies on it, that (a) at the time of the delivery of the instrument this Trust Agreement was in full force and effect, (b) the instrument was executed in accordance with the terms and conditions of this Trust Agreement, and (c) the Board was duly authorized to execute the instrument or direct its execution.

Section 3. The duties, responsibilities, liabilities and limitations of any Trustee under this Agreement shall be determined solely by the express provisions of the Trust Agreement and no further duties, responsibilities, liabilities or limitations shall be implied or imposed

Section 4. The Trustees shall incur no liability, either collectively or individually, to

17

acting upon any papers, documents, data or information believed by them to be genuine and accurate and to have been made, executed, delivered or ascribed by the proper parties. The Trustees may delegate any of their ministerial powers or duties to any of their agents or employees. No Trustee shall incur any liability for simple negligence, oversight or carelessness in connection with the performance of his duties as a Trustee. No Trustee shall be liable for the act or omission of any other Trustee. The Fund shall exonerate, reimburse and save harmless the Trustees, individually and collectively, against any and all liabilities and reasonable expenses arising out of the trusteeship, except (as to the individual Trustee or Trustees directly involved) for expenses and liabilities arising out of willful misconduct or gross negligence. No expense shall be deemed reasonable under this Section unless and until approved by the Board of Trustees.

Section 5.

(A) Except as otherwise provided in Subsection (B) of this Section, upon request of a Trustee or former Trustee, or the legal representative of a deceased Trustee or former Trustee, the Board of Trustees shall provide for the defense of any civil action or proceeding brought against the Trustee, former Trustee or estate of a deceased Trustee or former Trustee, in his capacity as a Trustee or former Trustee or in his individual capacity or in both, on account of any act or omission in the scope of his service or duties as a Trustee of the Fund For the purposes of this Section, a cross-action, counterclaim, cross-complaint or administrative or arbitration proceeding against a Trustee shall be deemed to be a civil action or proceeding brought against him or it.

(B) The Board of Trustees may refuse to provide for the defense of a civil action or proceeding brought against a Trustee or former Trustee or estate if the Board determines that:

(1) The act or omission was not within the scope of his service as a Trustee of the Fund; or

(2) He acted or failed to act in breach of his fiduciary duty because of willful misconduct or gross negligence; or

(3) The defense of the action or proceeding by the Board would create a conflict of interest between the Board or Fund and the Trustee, former Trustee or estate.

(C) The Board of Trustees may provide for the defense of a criminal action brought against a Trustee or former Trustee if:

(1) The criminal action or proceeding is brought on account of an act or omission in the scope of his services or duties as a Trustee or former Trustee; and

(2) The Board determines that such defense would be in the best interests of the Fund and its Participants and Beneficiaries and that the Trustee or former Trustee acted, or failed to act, in good faith, without actual malice and in the apparent interest of the Fund and its Participants and Beneficiaries.

(D) The Board may provide for a defense pursuant to this Section by Fund counsel or co-counsel or by employing other counsel or by purchasing insurance which requires that the insurer provide the defense. All of the expenses of providing a defense pursuant to this Section are proper charges against the Fund. The Fund shall have no right to recover these expenses from the Trustee, former Trustee or estate.

(E) If the Board fails or refuses to provide a Trustee, former Trustee or estate with a defense against a civil action or proceeding brought against him or it and the Trustee or former Trustee or legal representative retains his own counsel to defend the action or proceeding, he shall be entitled to recover from the Fund reasonable attorney's fees, costs and expenses incurred by him in defending the action or proceeding if the action or proceeding arose out of an act or omission in the scope of his service or duties as a Trustee of the

Fund, unless the Board establishes that the Trustee or former Trustee acted or failed to act in breach of his fiduciary duty because of willful misconduct or gross negligence.

Section 6. Neither the Employers, any Signatory Association, the Individual Employers, the Union nor any of the Trustees shall be responsible or liable for:

(A) The validity of this Trust Agreement or the Health and Welfare Plan;

(B) The form, validity, sufficiency, or effect of any contract or policy for health and welfare benefits which may be entered into;

(C) Any delay occasioned by any restriction or provision in this Trust Agreement, the Health and Welfare Plan, the rules and regulations of the Board of Trustees, any contract or policy procured in the course of the administration of the Fund, or by any other proper procedure in the administration. However, this clause shall not excuse any violation of the Collective Bargaining Agreement; or

(D) The making or retention of any deposit or investment of the Fund, or the disposition of any investment, or the failure to make any investment of the Fund, or any loss or diminution of the Fund, except any loss due to the gross neglect or willful misconduct of a particular person.

Section 7. Neither the Employers, any Signatory Association, any Individual Employer, the Union, any Local Union nor any District Council shall be liable in any respect for any of the obligations or acts of the Trustees because the Trustees are in any way associated with any Employers, Signatory Association, Individual Employer, Union, Local Unions, or District Councils.

Section 8. Subject to and within the limitations of law and any applicable government regulations, each Trustee shall be reimbursed by the Fund for all expenses reasonably, properly and actually incurred by him in attending a meeting of the Board of Trustees or a committee meeting of the Board, or in the performance of any other of his duties with the Plan, including attendance at educational or training conferences, institutes or other meetings relevant to the duties authorized by the Board, in accordance with rules and regulations adopted by the Board.

Section 9. Any Trustee who resigns or is removed from office shall turn over to the Chairman or Co-Chairman of the Board of Trustees at the principal office of the Fund any and all records, books, documents, monies and other property in his possession or under his control which belong to the Fund or which were received by him in his capacity as a Trustee

Section 10. The name of the Fund may be used to designate the Trustees collectively and all instruments may be effected by the Board of Trustees in the name of the Fund.

## ARTICLE VIII
## Arbitration

Section 1. In the event that the Trustees deadlock on any matter arising in connection with the administration of the Fund or the Health and Welfare Plan, they shall agree upon a neutral person to serve as an impartial umpire to decide the dispute. The Employer Trustees and the Employee Trustees may, by mutual agreement, select an equal number of representatives from their respective Trustee groups to sit with the umpire to constitute a Board of Arbitration. The decision of a majority of this board shall be final and binding upon the Trustees and the parties and the Participants and Beneficiaries of this Trust Agreement and of the Health and Welfare Plan. Otherwise, the decision of the impartial umpire shall be final and binding upon the Trustees, the parties and the Participants and Beneficiaries of this Trust Agreement and the Health and Welfare Plan. Any matter in

dispute and to be arbitrated shall be submitted to the Board of Arbitration or the impartial umpire in writing; and in making its or his decision, the Board or umpire shall be bound by the provisions of this Trust Agreement, the Health and Welfare Plan and any Collective Bargaining Agreement and shall have no authority to alter or amend any of the terms of these agreements. If the Trustees cannot jointly agree upon a statement submitting the matter to arbitration, each Trustee group shall prepare and state in writing its version of the dispute and the question or questions involved. The decision of the Board of Arbitration or the impartial umpire, shall be binding upon both the Trustees, the Employers and the Employees.

Section 2. If no agreement on an impartial umpire is reached within 10 days, or within the time as the Trustees may allow for the purpose, an umpire shall, on petition of either the Employer Trustees or the Union Trustees, be appointed by the United States District Court for the Northern District of California.

Section 3. The reasonable expenses of any arbitration, including any necessary court proceedings to secure the appointment of an umpire or the enforcement of the arbitration award (excluding the fees and expenses of witnesses called by the parties and the cost of any attorneys selected pursuant to Article IV, Section 4 (D)), shall be a proper charge against the Fund. No expense shall be deemed reasonable under this Section unless and until approved by the Board of Trustees.

Section 4. No matter in connection with the interpretation or enforcement of any collective bargaining agreement shall be subject to arbitration under this Article. No matter which is subject to arbitration under this Article shall be subject to the grievance procedure or any other arbitration procedure provided in any collective bargaining agreement.

## ARTICLE IX
## General Provisions

Section 1. Subject to the provisions of the Collective Bargaining Agreement, the rights and duties of all parties, including the Employees, the Signatory Associations, the Individual Employers, the Union, the Local Councils, the Employees, the Retired Employees and their dependents, and the Trustees, shall be governed by the provisions of this Trust Agreement and the Health and Welfare Plan and any insurance policies or contracts procured or executed pursuant to this Trust Agreement.

Section 2. No Employee or other Beneficiary shall have any right or claim to benefits under the Health and Welfare Plan, except as specified in the policy or policies, the contract or contracts, or the written statement and amendments or modifications, as adopted on behalf of the Board of Trustees pursuant to Article IV, Section 5. Any dispute as to eligibility, type, amount or duration of benefit under any policy or contract shall be resolved by the appropriate insurance carrier or service organization consistent with the policy or contract, and the Employee or other Beneficiary shall have no right or claim against the Fund or the Trustees. Any dispute as to eligibility, type, amount or duration of benefit under any written statement or amendment or modification shall be resolved by the Board consistent with the Plan, and the Board's decision of the dispute shall be final and binding upon all parties. The Board of Trustees shall establish a procedure for the presentation, consideration and determination of any claim or right, which shall comply with ERISA. No action may be brought for benefits provided by any written statement or amendment or modification, or to enforce any rights, until after the claim has been submitted to and determined by the Board. The only action which may be brought is one to enforce the decision of the Board. Neither the Trustees, any Signatory Association, the Union, any affiliated Local Union, nor any of the Trustees shall be liable for the failure or omission for any reason to pay any benefits under the Health and Welfare Plan.

20

Section 3. Any notice required to be given under the terms of this Trust Agreement, the Plan or the rules and regulations of the Board of Trustees shall be deemed to have been duly served if delivered personally to the person to be notified in writing, or if mailed in a sealed envelope, postage prepaid to that person at his last known address as shown in the records of the Fund or if sent by wire or other means of written communication to that person at his last known address.

Section 4. This Trust Agreement shall be binding upon and inure to the benefit of all Individual Employers who are now or may become members of an employers association or any Signatory Association, or who become in any other way party to the Collective Bargaining Agreement, and the heirs, executors, administrators, successors, purchasers and assigns of the Employers, any Signatory Association, any Individual Employer, the Union, and the Trustees.

Section 5. All questions pertaining to this Trust Agreement, this Trust Fund or the Health and Welfare Plan, and their validity, interpretation or construction, shall be determined in accordance with the laws of the United States and any applicable laws of the State of California.

Section 6. If any provision of this Trust Agreement, the Plan, the rules and procedures, or any step in the administration of the Plan, are held to be illegal or invalid for any reason, or to render payments by the Individual Employers into this Trust non-deductible for tax purposes or taxable to the Individual Employer, or to prevent or defeat any other objectives, that holding shall not affect the remaining portion of this Trust Agreement, the Plan or the rules and procedures, unless that holding prevents accomplishment of the objectives and purposes of the Trust Agreement and Plan. In the event this occurs, the necessary steps to remedy any defect shall be taken immediately.

Section 7. Except to the extent necessary for the proper administration of the Fund or the Plan, all books, records, papers, reports, documents or other information obtained with respect to the Fund or the Plan shall not be made public or used for any other purpose. Nothing in this Section shall prohibit the preparation and publication of statistical data and summary reports with respect to the operations of the Fund and the Plan that do not reveal the cooperation with benefit funds or plans authorized by other provisions of this Trust Agreement.

Section 8. In the establishment and maintenance of the Health and Welfare Plan, and in the execution, amendment and implementation of this Trust Agreement, the Union acts for and on behalf of the Employees and as their collective bargaining representatives and agents, and every agreement or act of the Union in connection with the establishment, maintenance and operation of the Fund or the Plan shall be deemed to be and is the agreement or act of the Employee, or Employees, concerned or affected by the agreement or action.

Section 9. In the establishment and maintenance of the Health and Welfare Plan, and in the execution, amendment and implementation of this Trust Agreement, the Employers act for and on behalf of the Individual Employers who, at the time of its execution of this Trust Agreement are, or during the term become members of, any of the Employers, or of any Signatory Association, and for and on behalf of any other Individual Employer who is required by the Collective Bargaining Agreement to make Contributions to the Fund or who in fact makes one or more Contributions to the Fund. Every agreement or act of the Employers in connection with the establishment, maintenance and operation of the Fund or the Plan shall be deemed to be and is the agreement or act of the Individual Employers, concerned or affected by the agreement or action.

Section 10. It is the intent and purpose of the parties that Contributions to the Fund shall be at all times deductible by the Individual Employers for income tax purposes, or the

21

taxable year when paid, and that the Trust created shall be at all times tax exempt. Application for the qualification of the Trust created by this Trust Agreement under Section 501 of the Internal Revenue Code has been made, and the parties and the Board of Trustees have done whatever was necessary to secure the qualification, if any administrative or mutual ruling holds that any provision of this Trust Agreement or of the Health and Welfare Plan prevents or defeats the qualification of the Trust or any other objective stated in this Section, either under existing laws or regulations or under any laws or regulations subsequently enacted or adopted, or if for any reason it shall be necessary or desirable to amend this Trust Agreement or the Health and Welfare Plan to accomplish any stated objective, the parties will immediately enter into regulations with regard to the amendment of this Trust Agreement or the Health and Welfare Plan to accomplish the qualification or other objectives. Any amendment shall be effective, insofar as practicable, as of the effective date of this Trust Agreement or of the Health and Welfare Plan or as of the effective date of any law or regulation enacted or adopted.

**Section 11.** Any payment required by a decision of the Board shall be due and payable in the City and County of San Francisco, California and any action or proceeding to enforce or clarify that decision shall be brought in a court of competent jurisdiction in that City and County. Any action or proceeding affecting the Fund, the Plan or the Trust shall be brought solely against the Fund as an entity, and solely by or on behalf of the claimant in the claims procedure established pursuant to Section 2 of this Article. Neither the Employers nor any Signatory Association or Individual Employer, the Union, any Local Union or District Council, any Employee, any Beneficiary or other person shall be entitled to notice of any action or proceeding or to service of process. Any final judgment entered in any action or proceeding shall be binding upon all of the parties so long as the judgment does not impose any personal liability upon or against any party not joined or not served in the action or proceeding.

## ARTICLE X
## Non-Member Employers

**Section 1.** Any Individual Employer who is not a member of or represented by Employers or a Signatory Association but who is performing work coming within the jurisdiction of the Union may become a party to this Agreement by executing in writing and depositing with the administrative office of the Board of Trustees his or its acceptance of this Agreement, in a form acceptable to the Board.

**Section 2.** Any Individual Employer who executes and deposits a written acceptance, or who in fact makes one or more contributions to the Fund, assumes and shall be bound by all of the obligations imposed by this Trust Agreement upon the Individual Employer, is entitled to all rights under this Agreement and is otherwise subject to it in all respects

## ARTICLE X
## Amendment and Termination

**Section 1.** The provisions of this Trust Agreement may be amended or modified at any time, by mutual agreement of the Employers and the Union subject to the terms and conditions of the Collective Bargaining Agreement and any applicable law or regulation. Any amendment or modification may be executed in counterpart

**Section 2.** Subject to the provisions of this Article and Article IX, Section 6 of this Trust Agreement, this Trust is irrevocable, and the provisions of this Trust Agreement shall continue in effect during the term of the Collective Bargaining Agreement, and any

---

amendments, renewals or extensions which provide for the continuation of payments into the Fund and of the Health and Welfare Plan, and for a period of 6 months following the termination of the last of the collective bargaining agreements which provide for the continuation of payments into the Fund and the Plan.

**Section 3.** This Trust Agreement and the Trust may be terminated by the Employers and the Union by an instrument in writing executed by mutual consent at any time, subject to the provisions of Section 4 of this Article. Upon the termination of the Trust, any monies remaining in the Fund after the payment of all expenses and obligations of the Trust shall be paid or used for the continuance of one or more benefits in accordance with the provisions of the Health and Welfare Plan, until the Fund is exhausted.

**Section 4.** In no event shall any amendment or modification of this Trust Agreement, or the termination of this Trust Agreement, result in any portion of the Fund reverting to, or being recoverable by, any of the Employers, any Signatory Association, any Individual Employer, the Union, any Local Union or District Council, or result in the diversion of any portion of the Fund to any purpose other than the exclusive benefit of Employers, Retired Employees or their Beneficiaries under the Plan and the payment of the administrative expenses of the Fund and the Plan.

**Section 5.** In no event shall the Trust established by this Trust Agreement continue for a longer period than is permitted by law.

Executed as of May 20, 1997.

FOR THE EMPLOYERS:
ASSOCIATED GENERAL CONTRACTORS OF CALIFORNIA, INC.

By    (Signed)    Thomas Holsman

CONSTRUCTION EMPLOYERS ASSOCIATION

By:    (Signed)    Michael Walton

HOME BUILDERS ASSOCIATION OF NORTHERN CALIFORNIA

By:    (Signed)    Paul Balacec, Jr.

FOR THE UNION:
CARPENTERS 46 NORTHERN CALIFORNIA COUNTIES CONFERENCE BOARD

By:    (Signed)    Jim R. Green
By:    (Signed)    John Casey

## ACCEPTANCE OF OFFICE BY TRUSTEES

The undersigned accept office as Trustees appointed pursuant to this Agreement and agree to act under and be subject to all of the terms and conditions of this Agreement. The undersigned declare that they hold the Fund created by this Agreement in trust for the uses and purposes set forth in this Agreement.

Dated: March 23, 1953

| Initial Employer Trustees | Initial Employee Trustees |
|---|---|
| W.E. Ames, Jr. | C.R. Bartolini |
| Walter N Gabriel | J.F. Cambiano |
| Ben C. Gerweck, Jr | R.O. Jorgensen |
| William E. Gillis | B.M. Segress |
| Gordon Pollock | Clayton R. Taylor |
| Harry E. Smith | Dave Williams |
| Bert O. Summers | W. Yocman |

### SUBSTITUTION OF TRUSTEES

Changes in the composition of the Board of Trustees can be obtained from the Carpenter Funds Administrative Office.

### SUBSTITUTION OF CORPORATE CO-TRUSTEE

Changes in the named Corporate Co-Trustees can be obtained from the Carpenter Funds Administrative Office.

### CHANGES IN CONTRIBUTION RATE

The changes in the Contribution rates since the inception of the Trust are available at the Carpenter Funds Administrative Office.

24

# CARPENTERS PENSION TRUST FUND

# CARPENTERS PENSION
# TRUST FUND FOR NORTHERN CALIFORNIA

## PLAN ADMINISTRATOR
### BOARD OF TRUSTEES

| Employer Trustees | Employee Trustees |
| --- | --- |
| Paul Baldacci, Jr. | Robert Alvarado |
| Dave Higgins, Sr. | John Casey |
| Mark Lindquist | Philip Hennessy |
| Larry Nibbi | Mike Knab |
| Burke Nicholson | Wm. Gary Marin |
| Gerald Overaa | Ronnell Spikes |
| Bruce Smith | Richard Wright |

### FUND MANAGER
Carpenter Funds Administrative Office
of Northern California, Inc.
Houston D. Kemper, Secretary

### LEGAL COUNSEL
Stanton, Kay & Watson
and
Van Bourg, Weinberg, Roger & Rosenfeld

### CONSULTANTS
The Segal Company
and
Sedgwick Noble Lowndes

### CERTIFIED PUBLIC ACCOUNTANTS
Hemming Morse, Inc.

### INVESTMENT MANAGER
McMorgan & Company
MacKay-Shields Financial Corporation

### CORPORATE CO-TRUSTEE
Wells Fargo Bank, N.A.

- 2 -

# INDEX

| SUBJECT | PAGE |
| --- | --- |
| Parties to Agreement | 6 |
| Recitals of Agreement | 6 |

**ARTICLE I – DEFINITIONS**

| | | PAGE |
| --- | --- | --- |
| Section 1 | Collective Bargaining Agreement | 8 |
| Section 2 | Individual Employer | 8 |
| Section 3 | Employer | 8 |
| Section 4 | District Council | 9 |
| Section 5 | Local Union | 9 |
| Section 6 | Signatory Association | 9 |
| Section 7 | Trust Agreement | 9 |
| Section 8 | Trustees | 9 |
| Section 9 | Board of Trustees | 9 |
| Section 10 | Pension Fund | 9 |
| Section 11 | Pension Plan | 9 |
| Section 12 | Contribution | 9 |
| Section 13 | Participant | 9 |
| Section 14 | Beneficiary | 9 |
| Section 15 | ERISA | 9 |

**ARTICLE II – TRUST FUND**

| | | PAGE |
| --- | --- | --- |
| Section 1 | Establishment of Fund | 9 |
| Section 2 | Principal Office of Fund | 10 |
| Section 3 | Employee Rights Limited to Benefits | 10 |
| Section 4 | Administration of Fund - Exclusive Purpose | 10 |
| Section 5 | Rights of the Parties | 10 |
| Section 6 | Prohibition Against Assignment or Alienation | 10 |
| Section 7 | Limitation of Liability | 10 |
| Section 8 | Non-Liability for Debts | 11 |
| Section 9 | Manner of Contributions - Due Date | 11 |
| Section 10 | Delinquent Contributions - Liquidated Damages | 11 |
| Section 11 | Weekly Contributions | 12 |

**ARTICLE III – BOARD OF TRUSTEES**

| | | PAGE |
| --- | --- | --- |
| Section 1 | Designation of Trustees | 12 |
| Section 2 | Selection of Chairman and Co-Chairman | 13 |
| Section 3 | Tenure of Office of Trustees | 13 |
| Section 4 | Trustee Resignation | 13 |
| Section 5 | Removal of Trustee from Office | 13 |
| Section 6 | Successor Trustee | 13 |

**ARTICLE IV – FUNCTIONS AND POWERS OF BOARD OF TRUSTEES**

| | | PAGE |
| --- | --- | --- |
| Section 1 | Authority of Trustees | 13 |
| Section 1(A) | Appointment of Trustees | 13 |
| Section 1(A) | Allocation of Responsibilities | 13 |
| Section 1(B) | Appointment of Investment Manager | 13 |
| Section 1(C) | Designation of Persons to Carry Out Fiduciary Responsibilities | 13 |
| Section 1(D) | Employ Persons to Render Advice | 13 |
| Section 2 | Contributions Due and Payable | 14 |
| Section 3 | Demand and Enforce Payment of Contributions | 14 |

Section 4      No Limitation of Power ............................................ 14
Section 4(A)   Pay Expenses to Establish Fund and Plan. ................. 14
Section 4(B)   Accumulate Reserve Funds ................................... 14
Section 4(C)   Establish Funding Policy Consistent with ERISA. ...... 14
Section 4(D)   Employ and Engage Personnel Consistent with ERISA. 14
Section 4(E)   Incur Reasonable Expense Incidental to Administration
               of Fund or Plan. ................................................ 14
Section 4(F)   Compromise, Settle or Release Claims ..................... 14
Section 4(G)   Invest and Reinvest Assets of the Fund .................. 15
Section 4(H)   Enter Into Contracts and Procure Insurance. ............ 15
Section 4(I)   Pay Benefits .................................................... 15
Section 4(J)   Sell, Exchange, Lease, or Convey Property. .............. 15
Section 4(K)   Construe Provisions of Trust Agreement and Plan ...... 15
Section 4(L)   Pay Taxes. ...................................................... 15
Section 4(M)   Maintain Actuarial Data ..................................... 15
Section 4(N)   Prepare and Furnish Periodic Reports. .................... 15
Section 4(O)   Maintain Bank Accounts ..................................... 15
Section 4(P)   Adopt Rules and Procedures for Administration .......... 15
Section 4(Q)   Borrow Money .................................................. 15
Section 4(R)   Exercise Powers Specified in Trust Agreement. ......... 16
Section 5      Insurance and Bonding Protection ......................... 16
Section 6      Maintain Records, Audit Employer Reports ............... 16
Section 7      Annual Audit of Fund ......................................... 16
Section 8      Reciprocity ..................................................... 16
Section 9      Participation in Northern California Pension Investment Foundation. 16
Section 10     Authority to Merge With Other Funds ...................... 17

ARTICLE V – PROCEDURE OF BOARD OF TRUSTEES ............ 17
Section 1      Time of Regular and Special Meetings. .................... 17
Section 2      Appointment of Secretary to Board ........................ 17
Section 3      Manner of Voting. ............................................. 17
Section 4      Place of Meetings ............................................. 17
Section 5      Board Action Without Meeting ............................... 17

ARTICLE VI – CORPORATE CO-TRUSTEE OR CUSTODIAN ...... 18
Section 1      Appointment of Corporate Co-Trustee or Custodian. ... 18
Section 2      Corporate Co-Trustee or Custodian Neither Employer Nor
               Union Affiliation. .............................................. 18
Section 3      Duties, Responsibilities, Rights and Powers of Corporate
               Co-Trustee or Custodian, Act as Fiduciary ............... 18

ARTICLE VII – GENERAL PROVISIONS APPLICABLE TO TRUSTEES 18
Section 1      Provisions Subject to and Qualified by ERISA. ......... 18
Section 2      Efficacy of Instruments Executed by Trustees. ......... 18
Section 3      Duties, Responsibilities, Liabilities and Limitations of Trustee. 18
Section 4      Liability of Trustee in Performance of Duty ............. 18
Section 5(A)   Defense of any Civil Action or Proceeding ............... 19
Section 5(B)   Refuse Defense of a Civil Action or Proceeding. ........ 19
Section 5(C)   Defense of Criminal Action or Proceeding ............... 19
Section 5(D)   Defense Expenses .............................................. 19

Section 5(E)   Recover Reasonable Expenses to Retain Own Counsel for Defense ... 19
Section 6      Liability of Signatories to Agreement or Plan. .......... 19
Section 7      Liability of Signatories for Actions of Trustees .......... 20
Section 8      Reimbursement of Trustee Expense. ....................... 20
Section 9      Surrender of Trust Property by Trustee on Resignation or Removal .. 20
Section 10     Use of Name of Fund. ........................................ 20

ARTICLE VIII – ARBITRATION ..................................... 20
Section 1      Action in Event of Deadlock ................................ 20
Section 2      Appointment of Umpire in Event of Non-Agreement of Trustees. . 21
Section 3      Expenses of Arbitration ..................................... 21
Section 4      Matters Subject to Arbitration ............................. 21

ARTICLE IX – GENERAL PROVISIONS ............................ 21
Section 1      Effect of Agreement on Parties. ............................ 21
Section 2      Decision of Board Final and Binding as to Disputes. ... 21
Section 3      Manner of Delivering Notices ............................... 21
Section 4      Parties Bound by Trust Agreement. ........................ 21
Section 5      Determination of Questions Regarding Agreement, Fund or Plan. 22
Section 6      Severability. ................................................... 22
Section 7      Records Shall be Confidential ............................... 22
Section 8      Union Acts on Behalf of Employees. ....................... 22
Section 9      Employers Act on Behalf of Individual Employers. ..... 22
Section 10     Tax Exemption. ............................................... 22
Section 11     Venue in City and County of San Francisco .............. 23

ARTICLE X – NON-MEMBER EMPLOYER ......................... 23
Section 1      Acceptance of Individual Employer ........................ 23
Section 2      Rights and Obligations of Individual Employer .......... 23

ARTICLE XI – AMENDMENT AND TERMINATION ................. 23
Section 1      Amendment or Modification of Trust Agreement. ........ 23
Section 2      Term of Trust Agreement. ................................... 23
Section 3      Termination of Trust Agreement. ........................... 23
Section 4      Disposition of Monies in Fund on Termination. .......... 24
Section 5      Life of Trust .................................................... 24

Signatory Parties ................................................................ 24
Acceptance of Office by Trustees. ........................................... 24
Substitution of Trustees. ...................................................... 24
Substitution of Corporate Co-Trustee. ...................................... 24
Changes in Contribution Rate. ............................................... 24

- 4 -

**AMENDED AND RESTATED TRUST AGREEMENT ESTABLISHING THE**

**CARPENTERS PENSION TRUST FUND**

**FOR NORTHERN CALIFORNIA**

**April, 1997**

This TRUST AGREEMENT was entered into on August 19, 1958, by and between the Eight Employer Associations, consisting of Peninsula Contractors and Builders Association, Inc., Marin Builders Association, Inc., General Building Contractors Association of San Francisco, Associated Home Builders of the Greater East Bay, Inc., General Contractors and Builders Association of the East Bay, Northern California Chapter, the Associated General Contractors of America, Inc., and Central California Chapter, the Associated General Contractors of America, Inc., acting for the bargaining unit covered by the Carpenters 4 Bay Counties Master Agreement, Northern California Chapter, the Associated General Contractors of America, Inc., Central California Chapter, the Associated General Contractors of America, Inc., and Piledriving Contractors Association, Associated General Contractors of America, Inc., acting for the bargaining unit covered by the Piledrivers' Master Agreement, the Associated General Contractors of California, Central California Chapter and Northern California Chapter, the Associated General Contractors of California acting for the bargaining unit covered by the Carpenters 42 Northern California Counties Master Agreement, referred to collectively as the "EMPLOYERS" and the Bay Counties District Council of Carpenters, A.F.L.-C.I.O., acting for the bargaining unit covered by the Carpenters 4 Bay Counties Master Agreement, the Piledrivers, Bridge, Wharf and Dock Builders Local Union No. 34 and The United Brotherhood of Carpenters and Joiners of America, acting for the bargaining unit covered by the Piledrivers Master Agreement, and the United Brotherhood of Carpenters and Joiners of America acting for the bargaining unit covered by the Carpenters 42 Northern California Counties Master Agreement, referred to collectively as the "UNION", recites and provides as follows:

**RECITALS:**

1. The Eight Employer Associations are parties to a collective bargaining agreement with the Bay Counties District Council of Carpenters dated July 18, 1956, known as the Carpenters 4 Bay Counties Master Agreement, which provided in Section XVII-C as follows:

"Effective for work performed on and after June 15, 1957, each individual employer covered by this agreement will contribute the sum of ten cents (10¢) per hour for each hour worked by carpenters employed by such individual employer under the agreement to a pension plan to be established prior to said effective date. The details of such plan shall be negotiated by a subcommittee on which the Employer and the Union shall be equally represented in conjunction with persons skilled in actuarial and other problems involved in the establishment of such plans, cost to be borne from pension contributions. Said pension plan shall comply with all pertinent legal requirements"

2. The Piledriving contractors are parties to a collective bargaining agreement with the Piledrivers Union Local No. 34 and the United Brotherhood, known as the Piledrivers Master Agreement dated July 25, 1956, which provided in Section VII-C as follows:

"Effective for work performed on and after June 15, 1957, each individual employer covered by this agreement will contribute the sum of ten cents (10¢) per hour for each hour worked by employees in the classifications covered by the agreement, and employed by such individual employer, to a pension plan to be established prior to said effective date. The details of such plan shall be negotiated on the

– 6 –

same terms and conditions provided under the Memorandum of Agreement between the Eight Employer Associations and the Bay Counties District Council of Carpenters dated July 18, 1956, with the understanding that the Contractors will be represented on the Employer's side of the Joint Sub-committee set up for this purpose and the union will be represented on the Union's side of such Sub-committee."

3. The AGC Chapters are parties to a collective bargaining agreement with the United Brotherhood, acting for its District Councils and Local Unions having jurisdiction in the area, known as the Carpenters 42 Northern California Counties Master Agreement dated May 1, 1957, which provided in Section C(B) as follows:

"Effective for work performed on and after January 1, 1959, each individual employer covered by this agreement will contribute the sum of ten (10¢) cents per hour for each hour worked by carpenters employed by such individual employer under the Agreement to a pension plan to be established prior to said effective date. The details of such plan shall be negotiated by a subcommittee on which the Collective Bargaining Representative of the Employer and the Union shall be equally represented in conjunction with persons skilled in actuarial and other problems involved in the establishment of such plans, cost to be borne from general contributions. Said pension plan shall comply with all pertinent legal requirements"

4. In addition, various individual employers performing work within the area covered by one or more of the Master Agreements are now or will become parties to collective bargaining agreements with one or more of the unions providing that individual Employers comply with the wages, hours and working conditions as set forth in one or more of the Master Agreements, or providing for payments to a pension plan for employees covered by collective bargaining agreements

5. Pursuant to the Master Agreements and other collective bargaining agreements, sub-committees were established upon which the Employers and the Union were equally represented and the subcommittees negotiated the details of the pension plans referred to in the agreements which include the details of the Trust Agreement.

6. Pending completion of the negotiations, the Joint Employer-Union Subcommittee established pursuant to the Carpenters 4 Bay Counties Master Agreement dated July 18, 1956, and the Piledrivers Master Agreement dated July 25, 1956, entered into an Escrow Agreement with the Crocker-Anglo National Bank dated November 25, 1957, providing for the payment of the contributions coming due under the collective bargaining agreements for work on and after June 15, 1957, into an escrow account with the Bank, known as the 4 Bay Counties Carpenters Pension Trust Fund Escrow Account, pending the preparation and execution of this Trust Agreement, and under the Escrow Agreement contributions have been paid by individual Employers into the account.

7. The subcommittees agreed that the pension plans specified in each of the agreements should be consolidated into one pension plan in order to provide the greatest possible benefit to the participating individual employers and employees and agreed to the establishment of this Trust, to be known as the Carpenters Pension Trust Fund for Northern California. The Pension Plan and Trust designated by the Joint Employer-Union Subcommittee referred to in paragraph 6 are declared to be the Plan and Trust referred to in said Escrow Agreement with the Crocker-Anglo National Bank dated November 25, 1957.

8. This Trust is being created and the Pension Plan implemented, each of which shall at all times conform to the applicable requirements of the Labor-Management Relations Act of 1947, as amended, and be qualified pursuant to the applicable provisions of the Internal Revenue Code, as amended, for all available exemptions and immunities

9. The subcommittees referred to in the agreements negotiated the following terms and

provision of the Trust Agreement governing the establishment and administration of the Carpenters Pension Trust Fund for Northern California.

10. Since the establishment of the Pension Fund:

(A) The Carpenters 4 Bay Counties Agreement and the Carpenters 42 Northern California Counties Master Agreement have been succeeded through historical collective bargaining procedures in the area by the Carpenters 46 Northern California Counties Master Agreement;

(B) The "Employers" have been succeeded through historical collective bargaining procedures in the area by Associated General Contractors of California, Inc., Construction Employers Association, and Home Builders Association of Northern California which now constitute the entity referred to collectively as the "Employers"; and

(C) The "Union" has been succeeded through historical collective bargaining procedures in the area by the Carpenters 46 Northern California Counties Conference Board, which now constitutes the entity referred to as the "Union".

11. The Employers and the Union agree that this Trust Agreement shall be and is restated and amended to conform with all of the requirements of the Employee Retirement Income Security Act of 1974, as amended, and any valid regulations issued consistent with ERISA.

## PROVISIONS

In consideration of the foregoing, and of the mutual promises stated, the parties agree as follows:

## ARTICLE I
## Definitions

Unless the context or subject matter otherwise requires, the following definitions shall govern in this Agreement:

Section 1. The term "Collective Bargaining Agreement" includes (a) the Carpenters 46 Northern California Counties Master Agreement dated June 16, 1971; (b) the Piledrivers Master Agreement dated July 25, 1956; and, (c) any other collective bargaining agreement other than the Collective Bargaining Agreements referred to above which is approved by the Carpenters 46 Northern California Counties Conference Board to be defined as a Collective Bargaining Agreement for the purposes of contributions to the Pension Plan or Pension Fund established by this Trust Agreement.

Section 2. The term "Individual Employer" means any individual employer who is required by the Collective Bargaining Agreement to make Contributions to the Pension Fund or who in fact makes one or more Contributions to the Fund. The term "Individual Employer" also includes any Local Union or District Council, any labor council or other labor organization with which a Local Union or District Council is affiliated, and any corporation, trust or other entity which provides services to the Fund or in the enforcement or administration of contracts requiring Contributions to the Fund, or in the training of apprentice or journeymen carpenters, which makes Contributions to the Fund with respect to the work of its employees pursuant to a Subscriber's Agreement approved by the Board of Trustees; provided the inclusion of any Local Union, District Council, labor council, other labor organization, corporation, trust or other entity as an Individual Employer is not a violation of any existing law or regulation. Any Local Union, District Council, labor council, other labor organization, corporation, trust or other entity shall be an Individual Employer solely for the purpose of making Contributions with respect to the work of its respective employees and shall have no other rights or privileges under this Trust Agreement as an Individual Employer.

- 8 -

Section 3. The term "Employee" means any employee of an Individual Employer who performs one or more hours of work covered by the Collective Bargaining Agreement. The term "Employee" shall also include employees of Local Unions and District Councils, and employees of labor councils or other labor organizations with which a Local Union or District Council is affiliated or of any corporation, trust or other entity described in Section 2, with respect to whose work Contributions are made to the Fund pursuant to regulations adopted by the Board of Trustees; provided the inclusion of any of those employees is not a violation of any applicable law or regulation. The term "Employee" as used in this Section shall exclude clerical employees and employees covered by any other collective bargaining agreement.

Section 4. The term "District Council" means any district council in the 46 Northern California Counties affiliated with the United Brotherhood of Carpenters and Joiners of America, AFL-CIO, and the Carpenters 46 Northern California Counties Conference Board.

Section 5. The term "Local Union" means any local union in the 46 Northern California Counties affiliated with the United Brotherhood of Carpenters and Joiners of America, AFL-CIO, and the Carpenters 46 Northern California Counties Conference Board.

Section 6. The term "Signatory Association" means any employer organization, other than the Employers, which signs this Trust Agreement on behalf of its members or executes an agreement to be bound by the terms of this Trust Agreement.

Section 7. The term "Trust Agreement" means this Agreement and any modification or amendment.

Section 8. The term "Trustee" means any natural person designated as Trustee pursuant to Article III.

Section 9. The terms "Board of Trustees" or "Board" mean the Board of Trustees established by this Trust Agreement.

Section 10. The terms "Pension Fund" or "Fund" mean the Pension Fund created and established by this Trust Agreement.

Section 11. The terms "Pension Plan" or "Plan" mean the Pension Plan created pursuant to the Collective Bargaining Agreement and this Trust Agreement and any modification or amendment of the Plan.

Section 12. The term "Contribution" means the payment made to the Fund by any Individual Employer under the provisions of the Collective Bargaining Agreement or Subscriber's Agreement.

Section 13. The term "Plan Participant" or "Participant" means any Employee or former Employee who is or who may become eligible to receive a benefit of any type from the Fund or whose Beneficiaries may be or become eligible to receive benefits.

Section 14. The term "Beneficiary" means a person designated by a Participant pursuant to the Plan or by the terms of the Plan who is or who may become entitled to a benefit under the terms of the Plan.

Section 15. The term "ERISA" means the Employee Retirement Income Security Act of 1974, 29 U.S.C. Section 1001, et seq, as amended, and any valid regulation issued consistent with this Act.

## ARTICLE II
## Trust Fund

Section 1. The Carpenters Pension Trust Fund for Northern California shall consist of all Contributions required by the Collective Bargaining Agreement or Subscriber's Agreement to be made for the establishment and maintenance of the Pension Plan, and all interest, income and other returns of any kind and any other money or property received or held by reason of or pursuant to this Trust

9

Section 2. The Fund shall have its principal office in San Francisco, California, or any other place designated by the Board of Trustees.

Section 3. No Employee shall be entitled to receive any part of the Contributions made or required to be made to the Fund in lieu of the benefits provided by the Pension Plan.

Section 4. The Fund shall be administered by the Board of Trustees for the exclusive benefit of Employees and Retired Employees and the Beneficiaries of the Employees pursuant to the provisions of the Pension Plan. Notwithstanding anything to the contrary contained in this Trust Agreement or in the Plan, or any modification, amendment, extension or renewal of the Plan, no portion of the Fund shall at any time revert to, or be recoverable by, any of the Employers, any Signatory Association, any Individual Employer, the Union, any Local Union, or District Council, or be used for, or diverted to, purposes other than the Plan, exclusive benefit of Employees, Retired Employees or their Beneficiaries and the payment of the administrative expenses of the Fund and the Plan except for Contributions, which may be refunded to an Individual Employer under applicable law.

Section 5. Neither the Employers, any Signatory Association, any Individual Employer, the Union, any Local Union, any District Council, any Employee, Retired Employee or Beneficiary under the Pension Plan nor any other person shall have any right, title or interest in or to the Fund other than as specifically provided in this Trust Agreement or in the Pension Plan. Neither the Fund nor any Contributions to the Fund shall be in any manner liable for or subject to the debts, contracts or liabilities of any of the Employers, any Signatory Association, any Individual Employer, the Union, any Local Union, any District Council or any Employee, Retired Employee or Beneficiary.

Section 6. Each Employee, Retired Employee or Beneficiary under the Pension Plan is restrained from selling a prospective pension or any other right or interest under the Plan, and the Board of Trustees shall not recognize, or be required to recognize, any sale, transfer, anticipation, assignment, alienation, hypothecation or other disposition. Any pension, prospective pension, right or interest shall not be subject in any manner to voluntary transfer or transfer by operation of law or otherwise, and shall be exempt from the claims of creditors or other claimants and from all orders, decrees, garnishments or other legal or equitable process or proceedings to the fullest extent permitted by law or regulation, the Board of States or any regulation. However, to the extent permitted by law or regulation, the Board of Trustees may enter into an arrangement allowing any Retired Employee, or any surviving spouse while entitled to receive a pension, to direct a portion of the pension due to him or her to be paid to the Carpenters Health and Welfare Trust Fund for Individual Employer and shall make any part of the cost of benefit to be provided to him or her by that fund and shall make the payments when directed.

The Board shall prescribe and adopt reasonable rules and regulations for the implementation of the qualified domestic relations order provisions of ERISA, the Internal Revenue Code and the Retirement Equity Act. The Board shall include in the Pension Plan or in the rules and regulations, or both, any provision necessary to assure that a qualified domestic relations order does not provide for or result in the payment of benefits which have an actuarial value in excess of the actuarial value of the benefits to which the Participant would be entitled in the absence of the order.

Section 7. Neither the Employers or any Signatory Association, nor any officer, agent, employee or committee member of the Employers or any Signatory Association shall be liable to make Contributions to the Fund or to be under any other liability to the Fund or with respect to the Pension Plan, except to the extent that he or it may be an Individual Employer required to make Contributions to the Fund with respect to his or its own individual or joint venture operations, or to the extent he may incur liability as a Trustee. The liability of any Individual Employer to the Fund, or with respect to the Pension Plan, shall be limited to the payments required by the Collective Bargaining Agreement with respect to his or its

10

individual or joint venture operation and in no event shall he or it be liable or responsible for any portion of the Contributions due from other Individual Employers with respect to the operations of those Individual Employers. The basis on which payments are made to the Fund shall be as specified in the Collective Bargaining Agreement, Subscriber's Agreement and in this Trust Agreement and the Individual Employers shall not be required to make any further payments or Contributions to the cost of operation of the Fund or of the Plan, except as may be provided in those agreements. The plan is and has been at all times a Defined Benefit Plan within the meaning of ERISA.

Section 8. Neither the Employers, any Signatory Association, any Individual Employer, the Union, any Local Union, any District Council nor any Employer, Retired Employee or Beneficiary shall be liable or responsible for any debts, liabilities or obligations of the Fund or the Trustees.

Section 9. Contributions to the Fund shall be due commencing June 15, 1957, for work on or after that date covered by the Carpenters 4 Bay Counties Master Agreement or the Piledrivers Master Agreement and commencing January 1, 1959, for work on and after that date covered by the Carpenters 42 Northern California Counties Master Agreement and shall be payable in San Francisco, California, in regular monthly installments starting on or before August 15, 1957, or February 15, 1959, respectively, and continuing from month to month subject to the provisions of the applicable collective bargaining agreement. The Contribution payable on or before August 15, 1975, shall include all amounts which accrued for work performed during the period from June 15, 1957, up to the close of the last day of July, 1957. Each subsequent monthly Contribution shall include all amounts which accrued in the interim for work performed up to the close of the Individual Employer's payroll period ending closest to the last day of the preceding calendar month. Each monthly Contribution shall be accompanied by a report in a form prescribed by the Board of Trustees. The rate of contribution made by Local Union, District Council or other entities pursuant to regulations adopted by the Board of Trustees shall be not less than the rate of contributions called for by the Collective Bargaining Agreement subject to the further provisions of this Section and to the provisions of the applicable collective bargaining agreement. The Board of Trustees shall have authority to prescribe and adopt rules and procedures pursuant to Article IV, Section 4 of this Trust Agreement permitting Individual Employers to make Contributions to the Fund quarterly instead of on a monthly basis subject to any conditions or requirements the Board deems necessary or desirable.

Section 10. Each Contribution to the Fund shall be made promptly, but in no event later than the 25th day of the calendar month in which it becomes payable, on which date any Contribution, if not paid in full, shall be delinquent. If any Individual Employer fails to pay his or its monthly Contribution in full on or before the 25th day of the month on 4 occasions within any 12-month period, the Board of Trustees may provide by resolution that during the 12-month period immediately following the resolution the 15th day of the month shall be the delinquency date for that Individual Employer.

The parties recognize and acknowledge that the regular and prompt payment of Contributions to the Fund is essential to the maintenance in effect of the Pension Plan, and that it would be extremely difficult, if not impracticable to fix the actual expense and damage to the Fund and to the Pension Plan which would result from the failure of an Individual Employer to pay monthly Contributions in full within the time prescribed Therefore, the amount of damage to the Fund resulting from any failure to promptly pay shall be presumed to be the sum of $20.00 per delinquency or 11% of the amount of the Contribution or Contributions due, whichever is greater. This amount shall become due and payable to the Fund as liquidated damages and as a penalty, in San Francisco, California, upon the day immediately following the date on which the Contribution or Contributions become delinquent and shall be in addition to the delinquent

11

Contribution or Contributions The Contributions, as increased, shall be the amount required to be paid to the Fund.

Section 11. The Board of Trustees may adopt and from time to time amend, revise or repeal rules and regulations establishing a procedure which requires an Individual Employer who is delinquent in making Contributions as provided in Article II, Sections 9 and 10 to make Contributions to the Fund on a weekly rather than a monthly basis and to remit each weekly Contribution to the Fund accompanied by a report of Contribution in an envelope postmarked not later than midnight on Friday of the week for which the Contribution is due. In the event these rules and regulations are adopted, any Individual Employer to whom the rules and regulations apply shall make Contributions to the Fund in accordance with those rules and regulations, and the provisions of Article II, Section 10 with regard to liquidated damages shall apply with respect to any weekly Contribution which is not paid within the time provided in the rules and regulations, except that the amount of the Contribution or Contributions shall be $5.00 per delinquency or 20% of the amount of the Contribution or Contributions due, whichever is greater.

## ARTICLE III
## Board of Trustees

Section 1. The Fund shall be administered by a Board of Trustees which shall consist of 7 Trustees representing the Individual Employers and 7 Trustees representing the Employees. The Trustees representing the Individual Employers shall be appointed in writing by the Employers as follows: Two shall be appointed by the Associated General Contractors of California, Inc., or its successor; Two shall be appointed by the Construction Employers Association, or its successor; Two shall be appointed by the Home Builders Association of Northern California, or its successor; and One shall be proposed by an employer association other than the Associated General Contractors of California, Inc., Construction Employers Association or Home Builders Association of California and shall be proposed by an independent employer. This Trustee shall be appointed only by the unanimous vote of the Associated General Contractors of California, Inc., Construction Employers Association, Associated General Contractors of Northern California or their respective successors, and Home Builders Association of Northern California.

No employer association or its successor shall continue to have appointing authority pursuant to this Section unless the Union, or its successor, is signatory to the Collective Bargaining Agreement with the Union on behalf of its members or a multi-employer unit which it represents for purposes of collective bargaining with the Union.

If an employer association or its successor ceases to be bound to the Collective Bargaining Agreement with the Union, any Trustee appointed by that association or its successor shall be deemed to have resigned and a successor Trustee shall be appointed by the the employer associations designated above or their successors who remain signatory to the Collective Bargaining Agreement with the Union. The Employers designated pursuant to the above provisions are irrevocably designated by each Individual Employer as his or its attorney-in-fact for the purpose of appointing and removing Trustees and successor Trustees. The Trustees representing the Employers shall be appointed by an instrument in writing signed by the Executive Officer of the Union.

The Employers and the Union expressly designate the Trustees jointly as named fiduciaries, who shall have exclusive authority and discretion acting as the Board of Trustees to control and manage the operation and administration of the Fund and the Pension Plan. Each of the Trustees expressly accepts designation as a fiduciary and as Trustee by written acceptance and signature of this Trust Agreement and assumes the duties, responsibilities and obligations of a Trustee created and established by this Trust Agreement and under applicable law. Any successor Trustee shall do likewise by signing the Trust Agreement or a written acceptance, in a form approved by and filed with the Board of Trustees

Section 2. The Trustees shall select one Trustee to act as Chairman of the Board of Trustees and one Trustee to act as Co-Chairman, each to serve for a period of time determined by the Trustees. When the Chairman is selected from among the Employer Trustees, the Co-Chairman shall be selected from among the Employee Trustees, and vice versa. Neither the Chairman nor the Co-Chairman shall succeed himself.

Section 3. Each Trustee shall serve until his death, resignation or removal from office.

Section 4. An Employer Trustee shall be deemed to have resigned under the circumstances specified in Section 1 of this Article. Any other Trustee may resign at any time by serving written notice of his resignation upon the Secretary of the Board of Trustees at least 30 days prior to the date on which his resignation is to be effective. The Secretary shall promptly notify in writing the Chairman and Co-Chairman of the Board and the Employers and the Union of the resignation of a Trustee.

Section 5. Any Employer Trustee may be removed from office at any time, for any reason, by a writing signed by the employer association having appointing authority with respect to that Trustee and served upon the Secretary of the Board of Trustees. Any Employee Trustee may be removed from office at any time, for any reason, by a writing signed by the Executive Officer of the Union and served on the Secretary of the Board of Trustees. The Secretary shall promptly notify in writing the Chairman and Co-Chairman of the Board, the Employers and the Union of the removal.

Section 6. If any Employer Trustee dies, resigns or is removed from office, a successor Trustee shall be promptly appointed by an instrument in writing signed by the employer association having appointing authority with respect to that Trustee. If any Employer Trustee dies, resigns or is removed from office, successor Trustee shall be promptly appointed by an instrument in writing signed by the appropriate Executive Officer of the Union.

## ARTICLE IV
## Functions and Powers of Board of Trustees

Section 1. The Board of Trustees acting jointly shall have the power to control and manage the assets, operation and administration of the Fund and the Plan as a fiduciary and shall exercise that authority with the care, skill, prudence and diligence under the prevailing circumstances that a prudent board acting in a like capacity and familiar with these matters would use in the conduct of an enterprise of like character and with like aims; provided, however, that the Board may:

(A) Appoint an investment manager or managers (as defined in ERISA) to manage (including the power to acquire and dispose of) any assets of the Fund;

(B) To enter into an agreement allocating among Trustees the specific responsibilities, obligations, or duties as the Board shall determine;

(C) Designate persons other than named fiduciaries to carry out fiduciary responsibilities (other than Trustee responsibilities) under this Trust Agreement or the Plan; and

(D) Employ one or more persons to render advice with regard to any responsibility the Board has under this Trust Agreement or Plan.

Any person or entity appointed, designated or employed shall act solely in the interests of the Participants and Beneficiaries of the Fund and Plan

The detailed basis on which pension benefits are to be paid shall be set forth in the Pension Plan of the Carpenters Pension Trust Fund for Northern California. The Board of Trustees may at any time, and from time to time, amend or modify the Pension Plan, except that no amendment or modification may reduce any benefits payable to Employees who retire prior to the amendment or modification so long as funds are available for payment of benefits.

- 12 -

13

Section 2. All Contributions to the Pension Plan or the Fund established by this Trust Agreement are due and payable in San Francisco, California, and shall be paid by, received and held by the Fund subject to the terms and provisions of this Trust Agreement. The acceptance and cashing of any checks for Contributions, and the disposition of the monies covered in accordance with this Trust Agreement, shall not release or discharge the Individual Employer from his or its obligation under the Collective Bargaining Agreement for bonus compensated under that agreement for which no Contribution has actually been received, notwithstanding any statement, restriction or qualification appearing on the check or any attachment. The Board of Trustees may direct that any check may be a single check covering monies payable to one or more other funds and may join with the boards of trustees of other funds in instructing the bank or banks with regard to the allocation of the monies covered by any check among the funds. In the event these instructions are given they shall be binding upon the bank or banks, the Individual Employer, the Employees, the Employers, the Union and all other parties.

Section 3. The Board of Trustees shall have the power in the name of the Fund, as in its discretion may be deemed necessary or desirable, to demand and enforce, by suit in court, the prompt payment of Contributions to the Fund, including payments due to delinquencies as provided in Article 11, Section 10, without being limited or restricted by any grievance or arbitration procedures provided in the Collective Bargaining Agreement. In addition, the Board shall have the right to assert and enforce all priorities, lien rights, and other claims or rights with respect to any Contributions or payments belonging to the Fund, this Trust or any of its Participants or Beneficiaries, including the right to file priority and other claims in bankruptcy.

If any Individual Employer defaults in the making of Contributions or payments and if the Board consults its legal counsel, or files any suit or claim, there shall be added to the obligation of the Individual Employer who is in default, reasonable attorney's fees, court costs and all other reasonable expenses incurred in connection with the suit or claim, including any and all appellate proceedings.

Section 4. Without limitation of the provisions of Section 1 of this Article, the Board of Trustees shall have power:

(A) To pay out of the Fund the reasonable expenses incurred in the establishment of the Fund and the Pension Plan;

(B) To establish and accumulate reserve funds as may be adequate to provide for administration expenses and other obligations of the Fund, including the maintenance of the Pension Plan;

(C) To provide a procedure for establishing and carrying out a funding policy consistent with the objectives of the Pension Plan and the requirements of ERISA;

(D) To employ or engage executive, consultant, actuarial, accounting, administrative, clerical, secretarial, legal or other employees, assistants or advisers, as may be necessary in connection with the administration of the Fund and the Pension Plan and to pay out of the Fund the compensation and necessary expenses of the employees, assistants or advisers and the cost of office space, furnishings and supplies and other essentials required in the administration of the Plan. If the Board is unable to agree upon the employment of either a consultant-actuary or an attorney pursuant to this clause, the Employer Trustees and the Employee Trustees may each select either a consultant-actuary or an attorney, or both, as the case may require, who shall be directed to act jointly in connection with the administration of the Fund, and the reasonable cost of the advice or services shall be paid from the Fund. The Board shall engage and retain an independent qualified public accountant on behalf of all Plan Participants as required by ERISA and an enrolled actuary on behalf of all Plan Participants, also as required by ERISA;

(E) To incur and pay out of the Fund any other expense reasonably incidental to the administration of the Fund or the Pension Plan;

- 14 -

(F) To compromise, settle, or release claims or demands in favor of or against the Fund on any terms and conditions as the Board may deem desirable, including the power to continue, maintain and from time to time to modify or revoke, in whole or in part, a policy and procedure for the waiver of all or any part of the liquidated damages portion of any Contribution or Contributions upon terms and conditions as the Board determines would be in the interests of the Fund and its Participants and Beneficiaries. However, this clause shall not excuse a violation of any of the collective bargaining agreements;

(G) If no investment manager is designated and appointed by the Board of Trustees, to invest and reinvest the assets of the Fund in accordance with all applicable laws. Investments may be made with a bank or other fiduciary to the fullest extent permitted by law. No indicia of ownership shall be maintained outside the jurisdiction of the district courts of the United States, except to the extent permitted by law;

(H) To enter into contracts and procure insurance policies in its own name or in the name of the Fund, to provide any or all of the benefits specified in the Pension Plan, to terminate, modify or renew any contracts or policies subject to the provisions of the Plan, and to exercise and claim all rights and benefits granted to the Board or the Fund by any contracts or policies;

(I) With or without any of the contracts or policies mentioned in paragraph (H) of this Section, to pay all or any part of the benefits provided in the Pension Plan, to the persons entitled under the Plan, and in accordance with the terms and provisions of the Plan which shall be the basis on which payments are made from the Plan;

(J) To sell, exchange, lease, convey or otherwise dispose of any property of any kind forming a part of the Fund upon terms the Board deems proper and to execute and deliver any and all instruments of conveyance or transfer;

(K) To construe the provisions of this Trust Agreement and the Plan and any construction adopted by the Board in good faith shall be binding upon any and all parties or persons;

(L) To pay any and all real or personal property taxes, income taxes, or other taxes or assessments of any or all kinds levied or assessed upon or with respect to the Fund;

(M) To maintain on a current basis, all actuarial data, records and information in connection with the administration of the Plan and to have the books and records checked and evaluated annually, or more often if the Board so determines, by the Fund consultant-actuary or consultant-actuaries, as the case may be, whose reports shall be available for inspection by interested persons at a reasonable times and upon proper notice, at a place or places designated by the Board, and the Board shall have the right to rely upon all reports and records;

(N) To prepare reports, descriptions, summaries and other information required by law or as the Board of Trustees in its discretion deems necessary or advisable and to file and furnish the reports, descriptions, summaries and information to Participants and their Beneficiaries, the Union, Employers, the Trustees, or other persons or entities, including government agencies;

(O) To maintain a bank account or bank accounts as may be necessary or advisable in the administration of the Fund or the Plan, to designate the person or persons authorized to sign checks and withdrawal orders on those accounts;

(P) To prescribe and adopt reasonable rules and procedures, which shall not be inconsistent with the provisions of this Trust Agreement or of the Plan, governing the reporting of Contributions, the entitlement to pension benefits, and any and all other matters in connection with the administration of the Fund or the Plan;

(Q) To borrow money and to encumber or hypothecate real or personal property by mortgage, deed of trust (with power of sale), contract of sale, security agreement, pledge or otherwise, to borrow money on the credit of the trust estate, and to purchase real or

15

personal property subject to and assume the obligation secured by a mortgage, deed of trust (with power of sale), contract of sale, security agreement, pledge or otherwise, and

(B) To exercise and perform any and all of the other powers and duties specified in this Trust Agreement or the Pension Plan.

Section 5. The Board of Trustees shall provide at the expense of the Fund, where and to the extent permissible by applicable law, insurance and bonding protection for the Fund and for each Trustee, former Trustee or estate of a deceased Trustee or former Trustee, and all other persons who handle funds or other property of the Fund for any purpose. The protection shall be from companies and with limits determined by the Board.

Section 6. The Board of Trustees shall maintain suitable and adequate records of and for the administration of the Fund and the Pension Plan. The Board may require of the Employers, any Signatory Association, any Individual Employer, the Union, any Local Union or District Council, any Employee, Retired Employee, or Beneficiary to submit to it any information, data, reports or documents reasonably relevant to and suitable for the purposes of administration. However, due, the Union, Local Unions and District Councils shall not be required to submit membership lists. The parties agree that they will use their best efforts to secure compliance with any reasonable request of the Board to enter upon the premises of the Individual Employer during business hours, at a reasonable time or times, and to examine and copy books, records, papers or reports of the Individual Employer as is necessary to determine whether the Individual Employer is making full and prompt payment of all sums required to be paid by him or it to the Fund. In addition, each Individual Employer will comply with all of the terms and conditions of the 46 Counties Agreement with regard to audits.

Any action to secure compliance with the provisions of this Section or any other provision of the Trust Agreement, to enforce prompt payment of Contributions or any other sums owed to the Fund, or arising out of any dispute concerning the interpretation, application or enforcement of this Section or of any other provision of the Trust Agreement, shall be brought and tried in a court of competent jurisdiction located in the City and County of San Francisco, and each party to be the action expressly waives any right to change the venue of such action to any other county or to any other place.

Section 7. The books of account and records of the Board of Trustees, including the books of account and records pertaining to the Fund, shall be audited at least once a year by an independent qualified public accountant engaged by the Board on behalf of all Plan Participants who shall conduct an examination of any financial statements of the Fund and Plan required by ERISA. A statement of the results of the annual audit shall be available for inspection by interested persons at the principal office of the Fund and at any other suitable place the Board may designate. Copies of the statement shall be delivered to the Employers, the Union and each Trustee within 10 days after the statement is prepared. The Board shall also prepare all other reports required by law.

Section 8. Compatible with equitable principles and to the extent that sound actuarial and accounting principles permit, the Board of Trustees may coordinate its activities in the administration of the Fund and the Pension Plan with the administrative activities of the governing board or boards of any other fund or funds, or plan or plans, established for employees in the building and construction industry to the extent and upon terms deemed necessary or desirable by the Board including the entering into and performance of agreements or arrangements with any board or boards providing for reciprocity or the transfer or exchange of credits or Contributions between or among the funds or plans upon terms the Board may determine are for the best interests of the Participants and Beneficiaries of the Pension Plan.

Section 9. Subject to and within the limitations of ERISA and any other applicable law

- 16 -

or regulation, and subject to the other provisions of this Trust Agreement, the Board of Trustees shall have authority, acting through an investment manager or managers appointed pursuant to Section 1 of this Article, to participate in the Northern California Pension Investment Foundation or any similar foundation or organization, or any successor, including the adoption of group trusts as part of the Trust and Plan administered by the Board to the extent required by the Internal Revenue Code, or rulings or regulation, as a condition of qualified or tax exempt status.

Section 10.

(A) The Board of Trustees may enter into an agreement with the board of trustees of any other pension trust fund, which is established or maintained pursuant to a collective bargaining agreement, providing for the consolidation, merger, or amalgamation of the Fund with other funds, upon terms and conditions the Board shall determine, subject to the prior written approval of the agreement by the Employers and the Union, and may accept the transfer of monies, accounts, contracts, liabilities, property and any other investments of the rights, provide for the payment of benefits and otherwise execute and carry out the terms of the agreement.

(B) In the event the Board of Trustees approves the consolidation, merger or amalgamation of the Fund, the Board of Trustees shall have the power to appoint an equal number of employer trustees and employee trustees from the existing board of trustees of the merging fund to the Board of Trustees. These trustees shall serve at the discretion of the Board of Trustees and for as long as the Board of Trustees may deem desirable.

ARTICLE V

Procedure of Board of Trustees

Section 1. The Board of Trustees shall determine the time and place for regular periodic meetings of the Board. Either the Chairman or the Co-Chairman, or any 4 members of the Board, may call a special meeting of the Board by giving written notice to all other Trustees of the time and place of the meeting at least 5 days before the date set for the meeting. Any notice of a special meeting shall be sufficient if sent by ordinary mail to the meeting. Any notice of a special meeting shall be sufficient if sent by ordinary mail to the address as shown in the records of the Board. Any meeting at which all Trustees are present, or concerning which all Trustees have waived notice in writing, shall be a valid meeting without the giving of any notice.

Section 2. The Board shall appoint a secretary who shall keep minutes or records of all meetings, proceedings and acts of the Board. The minutes need not be verbatim.

Section 3. The Board shall not take any action or make any decision on any matter coming before it or presented to it for consideration or exercise any power or right given or reserved to it or conferred upon it by this Trust Agreement except upon the vote of a majority of all 14 of the Trustees at a meeting of the Board duly and regularly called or except by the signed concurrence of all 14 Trustees without a meeting, as provided in Section 5 of this Article.

In the event of the absence of any Employer Trustee from a meeting of the Board, the Employer Trustees present at the meeting may vote on behalf of the absent Trustee and if the Employer Trustees cannot agree as to how the vote of the absent Employer Trustee shall be cast then it shall be cast as the majority of them shall determine or, in the absence of a majority the Board shall determine. In the event of the absence of any Employer Trustee Chairman or Co-Chairman of the Board shall determine. In the event of the absence of any Employee Trustee from a meeting of the Board, the Employee Trustees present at the meeting may vote on behalf of the absent Trustee pursuant to the same method and in the same manner as provided for Employer Trustees to cast the vote of any absent Employer Trustee.

At the request of any Trustee, made either before or after the taking of a vote on any

17

Exh. A - Part 2

matter coming before the Board, the action or decision of the Board shall be by unit vote, that is, the vote of the Employer Trustees on the action or decision shall be determined by the majority of all Employer Trustees and the vote of the Employee Trustees on the action or decision shall be determined by the majority of all Employee Trustees.

Section 4. All meetings of the Board shall be held at the principal office of the Fund unless another place is designated by the Board.

Section 5. Upon any matter which may properly come before the Board of Trustees, the Board may act in writing without a meeting, provided the action has the concurrence of all of the Trustees.

## ARTICLE VI

## Corporate Co-Trustee or Custodian

Section 1. The Corporate Co-Trustee or Custodian may be appointed by the Board of Trustees.

Section 2. The Corporate Co-Trustee or Custodian may not be a representative of either the Employers or the Union.

Section 3. The duties, responsibilities, rights and powers of the Corporate Co-Trustee or Custodian shall be those delegated to it by the Board of Trustees, and shall be set forth in a contract between the Board and the Corporate Co-Trustee or Custodian. If so designated, the Corporate Co-Trustee or Custodian shall act as a fiduciary.

## ARTICLE VII

## General Provisions Applicable to Trustees

Section 1. The provisions of this Article are subject to and qualified by the provisions of ERISA to the extent those provisions are constitutionally applicable. In order to induce experienced, competent and qualified persons and entities to serve as fiduciaries, to deal with and the Board of Trustees and to participate in other ways in the administration and operation of the Fund and Plan and to further the interests of the Participants and Beneficiaries of the Plan, it is the intent and purpose of the parties to provide for the maximum permissible protection and indemnification of those persons or entities from and against personal liability, loss, cost or expense as a result of any service, dealing or participation, and the provisions of this Article shall be liberally construed and applied to accomplish this objective.

Section 2. No party who has verified that he or it is dealing with the duly appointed Trustees, shall be obligated to see to the application of any money or property of the Fund, or to see that the terms of this Trust Agreement have been complied with, or to inquire as to the necessity or expedience of any act of the Trustees. Every instrument executed by the Board of Trustees or by its direction shall be conclusive in favor of every person who relies on it, that (a) at the time of the delivery of the instrument this Trust Agreement was in full force and effect, (b) the instrument was executed in accordance with the terms and conditions of this Trust Agreement, and (c) the Board was duly authorized to execute the instrument or direct its execution.

Section 3. The duties, responsibilities, liabilities and limitations of any Trustee under this Trust Agreement shall be determined solely by the express provisions of the Trust Agreement and no further duties, responsibilities, liabilities or limitations shall be implied or imposed.

Section 4. The Trustees shall incur no liability, either collectively or individually, in acting upon any papers, documents, data or information believed by them to be genuine and accurate and to have been made, executed, delivered or assembled by the proper parties. The Trustees may delegate any of their ministerial powers or duties to any of their agents or

– 18 –

employees. No Trustee shall incur any liability for simple negligence, oversight or carelessness in connection with the performance of his duties as a Trustee. No Trustee shall be liable for the act or omission of any other Trustee. The Fund shall exonerate, reimburse and save harmless the Trustees, individually and collectively, against any and all liabilities and reasonable expenses arising out of their trusteeship, except (as to the individual Trustee or Trustees directly involved) for expenses and liabilities arising out of willful misconduct or gross negligence. No expense shall be deemed reasonable under this Section unless and until approved by the Board of Trustees.

Section 5.

(A) Except as otherwise provided in Subsection (B) of this Section, upon request of a Trustee or former Trustee, or the legal representative of a deceased Trustee or former Trustee, the Board of Trustees shall provide for the defense of any civil action or proceeding brought against the Trustee, former Trustee or estate of a deceased Trustee or former Trustee, in his capacity as a Trustee or former Trustee or in his individual capacity or in both, on account of any act or omission in the scope of his service or duties as a Trustee of the Fund. For the purposes of this Section, a cross-action, counterclaim, cross-complaint or administrative or arbitration proceeding against a Trustee or former Trustee or estate shall be deemed to be a civil action or proceeding brought against him or it.

(B) The Board of Trustees may refuse to provide for the defense of a civil action or proceeding brought against a Trustee or former Trustee or estate if the Board determines that:

(1) The act or omission was not within the scope of his service as a Trustee of the Fund; or

(2) He acted or failed to act in breach of his fiduciary duty because of willful misconduct or gross negligence; or

(3) The defense of the action or proceeding by the Board would create a conflict of interest between the Board or Fund and the Trustee, former Trustee or estate.

(C) The Board of Trustees may provide for the defense of a criminal action brought against a Trustee or former Trustee if:

(1) The criminal action or proceeding is brought on account of an act or omission in the scope of his service or duties as a Trustee or former Trustee; and

(2) The Board determines that a defense would be in the best interests of the Fund and its Participants and Beneficiaries and that the Trustee or former Trustee acted, or failed to act, in good faith, without actual malice and in the apparent interest of the Fund and its Participants and Beneficiaries.

(D) The Board may provide for a defense pursuant to this Section by Fund counsel or co-counsel or by employing other counsel or by purchasing insurance which requires that the insurer provide the defense. All of the expenses of providing a defense pursuant to this Section are proper charges against the Fund. The Fund shall have no right to recover these expenses from the Trustee, former Trustee or estate.

(E) If the Board fails or refuses to provide a Trustee, former Trustee or estate with a defense against a civil action or proceeding brought against him or it and the Trustee or former Trustee or legal representative retains his own counsel to defend the action or proceeding, he shall be entitled to recover from the Fund reasonable attorney's fees, costs and expenses incurred by him in defending the action or proceeding if the action or proceeding arose out of an act or omission in the scope of his service or duties as a Trustee of the Fund, unless the Board establishes that the Trustee or former Trustee acted or failed to act in breach of his fiduciary duty because of willful misconduct or gross negligence.

Section 6. Neither the Employers, any Signatory Association, the Individual Employers, the Union, any Local Union, any District Council nor any of the Trustees shall be responsible or liable for

19

(A) the validity of this Trust Agreement or the Pension Plan;

(B) the form, validity, sufficiency, or effect of any contract or policy for pension benefits which may be entered into;

(C) Any delay occasioned by any restriction or provision in this Trust Agreement, the Pension Plan, the rules and procedures of the Board of Trustees, any contract or policy procured in the course of the administration of the Fund or Plan, or by any other proper procedure in the administration. However, this clause shall not excuse any violation of the Collective Bargaining Agreement; or

(D) The making or retention of any deposit or investment of the Fund or the disposition of any investment, or the failure to make any deposit or investment of the Fund, or any loss or diminution of the Fund, except any loss due to the gross neglect or willful misconduct of a particular person.

Section 7. Neither the Employers, any Signatory Association, any Individual Employer, the Union, any Local Union nor any District Council shall be liable in any respect for any of the obligations or acts of the Trustees because the Trustees are in any way associated with Employers, Signatory Association, Individual Employer, Union, Local Unions, or District Councils.

Section 8. Subject to and within the limitations of law and any applicable government regulations, each Trustee shall be reimbursed by the Fund for all expenses reasonably, properly and actually incurred by him in attending a meeting of the Board of Trustees or of a committee meeting of the Board, or in the performance of any other of his duties with the Plan, including attendance at educational or training conferences, institutes or other meetings relevant to the duties authorized by the Board, in accordance with rules and regulations adopted by the Board.

Section 9. Any Trustee who resigns or is removed from office shall turn over to the Chairman or Co-Chairman of the Board of Trustees at the principal office of the Fund any and all records, books, documents, monies and other property in his possession or under his control which belong to the Fund or which were received by him in his capacity as a Trustee.

Section 10. The name of the Fund may be used to designate the Trustees collectively and all instruments may be effected by the Board of Trustees in the name of the Fund.

## ARTICLE VIII
## Arbitration

Section 1. In the event that the Trustees deadlock on any matter arising in connection with the administration of the Fund or the Pension Plan, they shall agree upon a neutral person to serve as an impartial umpire to decide the dispute. The Employer Trustees and the Employee Trustees may, by mutual agreement, select an equal number of representatives from their respective Trustee groups to sit with the umpire to constitute a Board of Arbitration. The decision of a majority of this board shall be final and binding upon the Trustees and the parties to and the Participants and Beneficiaries of this Trust Agreement and of the Pension Plan. Otherwise, the decision of the impartial umpire shall be final and binding upon the Trustees, the parties to and the Participants and Beneficiaries of this Trust Agreement and of the Pension Plan. Any matter in dispute and to be arbitrated shall be submitted to the Board of Arbitration or the impartial umpire, in writing and in making its or his decision, the board or umpire shall be bound by the provisions of this Trust Agreement, the Pension Plan and the Collective Bargaining Agreement and shall have no authority to alter or amend any of the terms of those agreements. If the Trustees cannot jointly agree upon a statement submitting the matter to arbitration, each Trustee group shall prepare and state in writing its version of the dispute and the question or questions involved. The decision of the Board of Arbitration or the impartial umpire, shall be available in writing within 10 days after the submission of the dispute.

- 20 -

Section 2. If no agreement on an impartial umpire is reached within 10 days, or within the time the Trustees may allow for this purpose, an umpire shall, on petition of either the Employer Trustees or the Employee Trustees, be appointed by the United States District Court for the Northern District of California.

Section 3. The reasonable expenses of the arbitration, including any necessary court proceeding to secure the appointment of an umpire or the enforcement of the arbitration award (excluding the fees and expenses of witnesses called by the parties and the cost of any attorneys other than the Fund attorneys selected pursuant to Article IV, Section 4(D)) shall be a proper charge against the Fund. No expense shall be deemed reasonable under this Section unless and until approved by the Board of Trustees.

Section 4. No matter in connection with the interpretation or enforcement of any collective bargaining agreement shall be subject to arbitration under this Article. No matter which is subject to arbitration under this Article shall be subject to the grievance procedure or any other arbitration procedure provided in any of the collective bargaining agreements.

## ARTICLE IX
## General Provisions

Section 1. Subject to the provisions of the Collective Bargaining Agreement, the rights and duties of all parties, including the Employers, the Signatory Associations, the Individual Employers, the Union, the Local Unions, the District Councils, the Employers, Retired Employees and their Beneficiaries, and the Trustees, shall be governed by the provisions of this Trust Agreement and the Pension Plan and any insurance policies or contracts procured or executed pursuant to this Trust Agreement.

Section 2. No Employee, Retired Employee or other Beneficiary or person shall have any right or claim to benefits under the Plan other than as specified in the Plan. Any claim to benefits from the Fund, and any claim or right asserted under the Plan or against the Fund, regardless of the basis asserted for the claim and regardless of when the act or omission upon which the claim is based occurred, shall be resolved by the Board of Trustees under and pursuant to the Plan and its decision with regard to the claim or right shall be final and binding upon all persons affected by the decision. The Board of Trustees shall establish a procedure for presentation, consideration and determination of any claim or right, which shall comply with ERISA. No action may be brought for benefits under the Plan or to enforce any right or claim under the Plan or against the Fund until after the claim for benefits or other claim has been submitted to and determined by the Board in accordance with the established procedures. The only action which may be brought is one to enforce the decision of the Board or to clarify the rights of the claimant under that decision.

Section 3. Any notice required to be given under the terms of this Trust Agreement or the Pension Plan shall be deemed to have been duly served if delivered personally to the person to be notified in writing, or if mailed in a sealed envelope, postage prepaid, to that person at his last known address as shown in the records of the Fund, or if sent by wire to that person at his last known address

Section 4. This Trust Agreement shall be binding upon and inure to the benefit of all Individual Employers who are now or may become members of an employer association or any Signatory Association or who become in any other way a party to the Collective Bargaining Agreement and the heirs, executors, administrators, successors, purchasers and assigns of the Employers, any Signatory Association, any Individual Employer, the Union, any Local Union, any District Council and the Trustees

21

Section 5. All questions pertaining to this Trust Fund or the Pension Plan, and their validity, administration or construction, shall be determined in accordance with the laws of the United States and any applicable laws of the State of California.

Section 6. If any provision of this Trust Agreement, the Pension Plan, the rules and procedures, or any step in the administration of the Pension Plan, are held to be illegal or invalid for any reason, or taxable to or render payments by the Individual Employers into this Trust non-deductible for tax purposes or taxable to the Individual Employer, or to prevent or defeat any other objectives, that holding shall not affect the remaining portion of this Trust Agreement, the Pension Plan or the rules and procedures, unless that holding prevents accomplishment of the objectives and purposes of the Trust Agreement and Pension Plan. In the event this occurs, the necessary steps to remedy any defect shall be taken immediately.

Section 7. Except to the extent necessary for the proper administration of the Fund or the Pension Plan, all books, records, papers, reports, documents or other information obtained with respect to the Fund or the Plan shall be confidential and shall not be made public or used for any other purpose. Nothing in this Section shall prohibit the preparation and publication of statistical data and summary reports with respect to the operations of the Fund and the Plan nor the cooperation with benefit funds or plans authorized by other provisions of this Trust Agreement.

Section 8. In the establishment and implementation of this Trust Agreement, the Union acts for and on behalf of the Employees and as their collective bargaining representative and agent, and every agreement or act of the Union in connection with the establishment, maintenance and operation of the Fund or the Plan shall be deemed to be and is the agreement or act of the Employees, or Employees, concerned or affected by that agreement or action.

Section 9. In the establishment and maintenance of the Pension Plan, and in the execution, amendment and implementation of this Trust Agreement, the Employers act for and on behalf of the Individual Employers who, at the time of the execution of this Trust Agreement are, or during the term become members of any of the Employers, or of any Signatory Association, or for and on behalf of any Individual Employer who is required by the Collective Bargaining Agreement to make Contributions to the Fund. Every agreement or act of the Employers in connection with the establishment, maintenance and operation of the Fund or the Plan shall be deemed to be and is the agreement or act of the Individual Employers, or Employers in connection with the establishment, maintenance and operation of the Fund or the Plan shall be deemed to be and is the agreement or act of the Individual Employers, or the Plan shall be deemed to be and is the agreement or action.

Section 10. It is the intent and purpose of the parties that Contributions to the Fund shall be at all times deductible by the Individual Employers for income tax purposes in the taxable year when paid, that benefits to Employees, Retired Employees or other Beneficiaries shall be at all times taxable to them, if at all, only in the year such benefits are distributed or made available to the Employees, Retired Employees or their Beneficiaries and that the Trust created hereby shall be at all times tax exempt. Application for the qualification of this Trust Agreement under the Internal Revenue Code has been made and the parties and the Board of Trustees have done whatever was necessary to secure the qualification. If any administrative or judicial ruling holds that any provision of this Trust Agreement prevents or defeats the qualification of the Trust or any other objective stated in this Section, either under existing laws or regulations subsequently enacted or adopted, or if for any reason it or under any laws or regulations subsequently enacted or adopted, or if for any reason it shall be necessary or desirable to amend this Trust Agreement or the Pension Plan to accomplish these objectives, the parties will immediately enter into regulations with regard to the amendment of this Trust Agreement or the Pension Plan to accomplish the qualification or to the amendment of this Trust Agreement or of the Pension Plan, insofar as practicable, as of the effective date of this Trust Agreement or of the Pension Plan or as of the effective date of any law or regulation enacted or adopted.

- 22 -

Section 11. Any payment required by a decision of the Board shall be due and payable in the City and County of San Francisco, California, and any action or proceeding to enforce or clarify that decision shall be brought in a court of competent jurisdiction in that City and County. Any action or proceeding affecting the Fund, the Plan or the Trust shall be brought solely against the Fund as an entity, and Solely by or on behalf of the claimant in the claims procedure established pursuant to Section 2 of this Article. Neither the Employers nor any Signatory Association or Individual Employer, the Union, any Local Union or District Council, any Employee, Retired Employee, any Beneficiary or other person shall be included in any action or proceeding or to a service of process. Any final judgment entered in any action or proceeding shall be binding upon all of the parties so long as the judgment does not incorporate or purport to impose any personal liability upon or against any party not joined or not so served in the action or proceeding.

## ARTICLE X
## Non-Member Employers

Section 1. Any Individual Employer who is not a member of or represented by Employers or a Signatory Association but who is performing work coming within the jurisdiction of the Union, may become a party to this Trust Agreement by executing in writing and depositing with the administrative office of the Board of Trustees his or its acceptance of this Trust Agreement, in a form acceptable to the Board.

Section 2. Any Individual Employer who executes and deposits a written acceptance, or who in fact makes one or more Contributions to the Fund, assumes and shall be bound by all of the obligations imposed by this Trust Agreement upon the Individual Employer, is entitled to all rights under this Trust Agreement and is otherwise subject to it in all respects.

## ARTICLE XI
## Amendment and Termination

Section 1. The provisions of this Trust Agreement may be amended or modified at any time, by mutual agreement of the Employers and the Union subject to the terms and conditions of the Collective Bargaining Agreement, and any applicable law or regulation. Any amendment or modification may be executed in counterpart.

Section 2. Subject to the provisions of this Article and Article IX, Section 6 of this Trust Agreement, this Trust is irrevocable and the provisions of this Trust Agreement shall continue in effect during the term of the Collective Bargaining Agreement, and any amendments, renewals or extensions, which provide for the continuation of payments into the Fund and of the Pension Plan, for a period of 6 months following the termination of the last of the collective bargaining agreements which provides for the continuation of payments into the Fund and the Plan.

Section 3. This Trust Agreement and the Trust may be terminated by the Employers and the Union by an instrument in writing executed by mutual consent at any time, subject to the provisions of Section 4 of this Article. Upon the termination of the Trust, any monies remaining in the Fund after the payment of all expenses and obligations of the Trust shall be paid or used for the continuance of one or more pension benefits in accordance with the provisions of the Pension Plan, until the Fund is exhausted.

Section 4. In no event shall any amendment or modification of this Trust Agreement, or the termination of this Trust Agreement, result in any portion of the Fund reverting to, or being recoverable by, any of the Employers, any Signatory Association, any Individual Employer, the Union, any Local Union or District Council, or result in the diversion of any portion of the Fund to any purpose other than the exclusive benefit of Employees, Retired Employees or their Beneficiaries under the Plan and the payment of the administrative expenses of the Fund and the Plan.

- 23 -

Section 5. In no event shall the Trust established by this Trust Agreement continue for a longer period than is permitted by law.

Executed as of May 20, 1997.

FOR THE EMPLOYERS:

ASSOCIATED GENERAL CONTRACTORS OF CALIFORNIA, INC.

By    (Signed)    Thomas Holsman

CONSTRUCTION EMPLOYERS ASSOCIATION

By:   (Signed)    Michael Walton

HOME BUILDERS ASSOCIATION OF NORTHERN CALIFORNIA

By:   (Signed)    Paul Baldacci, Jr.

FOR THE UNION:

CARPENTERS 46 NORTHERN CALIFORNIA COUNTIES CONFERENCE BOARD

By:   (Signed)    Jim R. Green

By:   (Signed)    John Casey

## ACCEPTANCE OF OFFICE BY TRUSTEES

The undersigned accept office as Trustees appointed pursuant to the Trust Agreement and agree to act under and be subject to all of the terms and conditions of this Agreement. The undersigned declare that they hold the Fund created by this Agreement in trust for the uses and purposes set forth in this Agreement.

Dated: August 19, 1958

| Initial Employer Trustees | Initial Employee Trustees |
| --- | --- |
| Richard E. Doyle | C. R. Bartalini |
| J.I. Hennessy | E.A. Brown |
| Carroll T. Morton | Michael P. Dowdall |
| Walter L. Olsen | Gail Gordon |
| Gordon Pollock | Earl Honerlah |
| Roy R. Poulton | O.J. Lindell |
| Joseph A. Stinson | Carl Powell |

## SUBSTITUTION OF TRUSTEES

Changes in the composition of the Board of Trustees can be obtained from the Carpenter Funds Administrative Office.

## SUBSTITUTION OF CORPORATE CO-TRUSTEE

Changes in the named Corporate Co-Trustees can be obtained from the Carpenter Funds Administrative Office.

## CHANGES IN CONTRIBUTION RATE

The changes in the Contribution rate schedule since the inception of the Trust are available at the Carpenter Funds Administrative Office.

– 24 –

# CARPENTERS VACATION AND HOLIDAY TRUST FUND

# CARPENTERS VACATION AND HOLIDAY TRUST FUND FOR NORTHERN CALIFORNIA

## PLAN ADMINISTRATOR
### BOARD OF TRUSTEES

**Employer Trustees**
Gary W. Hamby
David Higgins, Sr.
David Lee
Burke Nicholson

**Employee Trustees**
John Casey
Eldon Clymer
Curtis Kelly
Michael Leong

## FUND MANAGER
Carpenter Funds Administrative Office
of Northern California, Inc.
Houston D. Kemper, Secretary

## LEGAL COUNSEL
Stanton, Kay & Watson
and
Van Bourg, Weinberg, Roger & Rosenfeld

## CERTIFIED PUBLIC ACCOUNTANTS
Henning Morse, Inc.

## INVESTMENT MANAGER
McMorgan & Company

## CORPORATE CO-TRUSTEE
Wells Fargo Bank, N.A.

- 2 -

# INDEX

| SUBJECT | PAGE |
| --- | --- |
| Parties to Agreement | 6 |
| Recitals of Agreement | 6 |

**ARTICLE I – DEFINITIONS**

| | | PAGE |
| --- | --- | --- |
| Section 1 | Collective Bargaining Agreement | 7 |
| Section 2 | Individual Employer | 7 |
| Section 3 | Employee | 7 |
| Section 4 | District Council | 7 |
| Section 5 | Local Union | 7 |
| Section 6 | Signatory Association | 7 |
| Section 7 | Trust Agreement | 7 |
| Section 8 | Trustee | 7 |
| Section 9 | Board of Trustees | 8 |
| Section 10 | Vacation Fund | 8 |
| Section 11 | Vacation Plan | 8 |
| Section 12 | Contribution | 8 |
| Section 13 | Participant | 8 |
| Section 14 | Beneficiary | 8 |
| Section 15 | Predecessor Fund | 8 |
| Section 16 | Predecessor Plan | 8 |
| Section 17 | ERISA | 8 |

**ARTICLE II – TRUST FUND**

| | | |
| --- | --- | --- |
| Section 1 | Establishment of Fund | 8 |
| Section 2 | Principal Office of Fund | 9 |
| Section 3 | Employer Rights Limited to Benefits | 9 |
| Section 4 | Administration of Fund - Exclusive Purpose | 9 |
| Section 5 | Rights of the Parties | 9 |
| Section 6 | Prohibition Against Assignment or Alienation | 9 |
| Section 7 | Limitation of Liability | 9 |
| Section 8 | Non-Liability for Debts | 10 |
| Section 9 | Manner of Contribution - Due Date | 10 |
| Section 10 | Delinquent Contribution - Liquidated Damages | 10 |
| Section 11 | Weekly Contributions | 11 |
| Section 12 | Contributions Deemed Wages | 11 |
| Section 13 | Records of Contributions, Ascertainability of Individual Interest, Investment and Distribution | 11 |

**ARTICLE III – BOARD OF TRUSTEES**

| | | |
| --- | --- | --- |
| Section 1 | Designation of Trustees | 12 |
| Section 2 | Selection of Chairman and Co-Chairman | 12 |
| Section 3 | Tenure of Office of Trustee | 13 |
| Section 4 | Trustee Resignation | 13 |
| Section 5 | Removal of Trustee from Office | 13 |
| Section 6 | Successor Trustee | 13 |

**ARTICLE IV – FUNCTIONS AND POWERS OF THE BOARD OF TRUSTEES**

| | | |
| --- | --- | --- |
| Section 1 | Authority of Trustees | 13 |
| Section 1(A) | Appointment of Investment Manager | 13 |
| Section 1(B) | Allocation of Responsibilities | 14 |

Section 1(E)  Designation of Persons to Carry Out Fiduciary Responsibilities ... 14
Section 1(F)  Employ Persons to Render Advice ... 14
Section 2     Contributions Due and Payable ... 14
Section 1     Demand and Enforce Payment of Contributions ... 14
Section 4     No Limitation of Power ... 14
Section 4(A)  Pay Expenses to Establish Fund and Plan ... 15
Section 4(A)  Accumulate Reserve Funds ... 15
Section 4(B)  Establish Funding Policy Consistent with ERISA ... 15
Section 4(C)  Employ or Engage Personnel Consistent with ERISA ... 15
Section 4(D)  Maintain Bank Accounts ... 15
Section 4(E)  Incur Reasonable Expense Incidental to Administration of Fund or Plan ... 15
Section 4(F)  Pay Obligations, Debts and Liabilities ... 15
Section 4(G)  Compromise, Settle or Release Claims ... 15
Section 4(H)  Invest and Reinvest Assets of the Fund ... 15
Section 4(I)  Adopt Rules and Procedures for Administration ... 15
Section 4(J)  Prepare and Furnish Periodic Reports ... 16
Section 4(K)  Exercise Powers Specified in Trust Agreement ... 16
Section 4(L)  Maintain Records, Audit Employer Reports ... 16
Section 5     Insurance and Bonding Protection ... 16
Section 6     Annual Audit of Fund ... 16
Section 7     Reciprocity ... 16
Section 8     Authority to Merge With Other Funds ... 16
Section 9     ... 17

ARTICLE V – PROCEDURE OF THE BOARD OF TRUSTEES
Section 1     Time of Regular and Special Meetings ... 17
Section 2     Appointment of Secretary to Board ... 17
Section 3     Manner of Voting ... 17
Section 4     Place of Meetings ... 18
Section 5     Board Action Without Meeting ... 18

ARTICLE VI – CORPORATE CO-TRUSTEE OR CUSTODIAN
Section 1     Appointment of Corporate Co-Trustee or Custodian ... 18
Section 2     Corporate Co-Trustee or Custodian Neither Employer Nor Union Affiliation ... 18
Section 3     Duties, Responsibilities, Rights and Powers of Corporate Co-Trustee or Custodian, Act as Fiduciary ... 18

ARTICLE VII – GENERAL PROVISIONS APPLICABLE TO TRUSTEES
Section 1     Provisions Subject to and Qualified by ERISA ... 18
Section 2     Efficacy of Instruments Executed by Trustees ... 18
Section 3     Duties, Responsibilities, Liabilities and Limitations of Trustees ... 18
Section 4     Liability of Trustees in Performance of Duty ... 18
Section 5(A)  Defense of any Civil Action or Proceeding ... 19
Section 5(B)  Refuse Defense of a Civil Action or Proceeding ... 19
Section 5(C)  Defense of Criminal Action or Proceeding ... 19
Section 5(D)  Defense by Fund Counsel, Co-counsel, Other Counsel or Insurer ... 19
Section 5(E)  Recover Reasonable Expenses to Retain Own Counsel for Defense ... 19
Section 6     Liability of Signatories to Agreement or Plan ... 19
Section 7     Liability of Signatories for Actions of Trustees ... 20
Section 8     Reimbursement of Trustee Expense ... 20

Section 9     Surrender of Trust Property by Trustee on Resignation or Removal ... 20
Section 10    Use of Name of Plan ... 20

ARTICLE VIII – VACATION AND HOLIDAY BENEFITS
Section 1     Purpose of Vacation Plan ... 20
Section 2     Right to Receive Vacation Benefits ... 20
Section 3     Period of Vacation and Distribution Date for Vacation Benefit ... 20
Section 4     Provisions for Compulsory Vacation ... 21
Section 5     Modification or Waiver of Compulsory Vacation ... 21
Section 6     Notice to Employer of Date of Vacation ... 21
Section 7     Completion of Vacation Forms by Employee ... 21
Section 8     Consideration for Making Payments ... 21
Section 9     Vacation Monies Non-Accumulative Year to Year, Four-Year Limitation ... 22
Section 10    Designation of Vacation Benefits in Case of Death ... 22
Section 11    Policy of Employers to Reinstate Employee ... 22
Section 12    Voluntary Dues Authorization ... 22

ARTICLE IX – ARBITRATION
Section 1     Action in Event of Deadlock ... 23
Section 2     Appointment of Umpire in Event of Non-Agreement of Trustees ... 23
Section 3     Expenses of Arbitration ... 23
Section 4     Matters Subject to Arbitration ... 23

ARTICLE X – GENERAL PROVISIONS
Section 1     Effect of Agreement on Parties ... 24
Section 2     Decision of the Board of Trustees Final and Binding as to Disputes ... 24
Section 3     Manner of Delivering Notices ... 24
Section 4     Parties Bound by Trust Agreement ... 24
Section 5     Determination of Questions Regarding Vacation Plan or Trust Agreement ... 24
Section 6     Severability ... 24
Section 7     Records Shall be Confidential ... 24
Section 8     Union Acts on Behalf of Employees ... 25
Section 9     Employers Act on Behalf of Individual Employers ... 25
Section 10    Venue in City and County of San Francisco ... 25

ARTICLE XI – NON-MEMBER EMPLOYERS
Section 1     Acceptance of Individual Employer ... 25
Section 2     Rights and Obligations of Individual Employers ... 25

ARTICLE XII – AMENDMENT AND TERMINATION
Section 1     Amendment or Modification of Agreement ... 26
Section 2     Term of Agreement ... 26
Section 3     Termination of Agreement ... 26
Section 4     Disposition of Monies in Fund on Termination ... 26
Section 5     Life of Trust ... 26

Signatory Parties ... 
Section 6     Acceptance of Office by Trustees ... 27
Section 7     Substitution of Trustees ... 27
Section 8     Substitution of Corporate Co-Trustee ... 27
              Changes in Contribution Rate ... 27

# AMENDED AND RESTATED TRUST AGREEMENT ESTABLISHING THE
# CARPENTERS VACATION AND HOLIDAY
# TRUST FUND FOR NORTHERN CALIFORNIA

## April, 1997

This TRUST AGREEMENT, was entered into on May 1, 1972, by and between the Northern California Home Builders Conference, the Associated General Contractors of California, Inc., and the Engineering and Grading Contractors Association, referred to collectively as the "EMPLOYERS", and the 41 County Conference, the Five Bay Counties District Council of Carpenters and the United Brotherhood of Carpenters and Joiners of America, referred to collectively as the "UNION," recites and provides as follows:

RECITALS:

1. The Employers and Union entered into the 46 Northern California Counties Carpenters Agreement, 1971-1974, providing, in Section 18, that each individual Employer covered by the Agreement shall contribute $.50 per hour for each hour paid for or worked by each carpenter under that agreement to the Northern California Carpenters Vacation and Holiday Plan and that effective August 1, 1972, the employer contributions shall be increased to $.75 per hour.

2. The 46 Northern California Counties Carpenters Agreement, 1971-1974, is the successor to the collective bargaining agreements pursuant to which the five Bay Counties Carpenters Vacation and Holiday Trust Fund and the 41 Northern California Counties Carpenters Vacation Trust were established and maintained, and the Employers and the Union desire to merge those Funds into a single trust fund, to be known as the Carpenters Vacation and Holiday Trust Fund for Northern California, which merged Fund shall comply with the provisions of Section 302* of the Labor Management Relations Act, as amended, and all other provisions of law.

3. The Employers and the Union negotiated the following terms and provisions of the Trust Agreement governing the establishment and administration of the Carpenters Vacation and Holiday Trust Fund for Northern California and the Northern California Carpenters Vacation and Holiday Plan.

4. Since the establishment of the Vacation and Holiday Fund:

(A) The "Employers" have been succeeded through historical collective bargaining procedures in the area by Associated General Contractors of California, Inc., Construction Employers Association and Home Builders Association of Northern California, which now constitute the entity referred to collectively as the "Employers"; and

(B) The "Union" has been succeeded through historical collective bargaining procedures in the area by the Carpenters 46 Northern California Counties Conference Board, which now constitutes the entity referred to as the "Union."

5. The Employers and the Union agree that this Trust Agreement shall be and is amended, modified and restated to conform with all of the requirements of the Employee Retirement Income Security Act of 1974, as amended, and any valid regulations issued consistent with ERISA.

PROVISIONS:

In consideration of the foregoing, and of the mutual promises stated, the parties agree as follows:

## ARTICLE I
## Definitions

Unless the context or subject matter otherwise requires, the following definitions shall govern in this Agreement:

Section 1. The term "Collective Bargaining Agreement" includes (a) the Carpenters 46 Northern California Counties Master Agreement dated June 16, 1971; and, (b) any other collective bargaining agreement other than the Collective Bargaining Agreement referred to above which is approved by the Carpenters 46 Northern California Counties Conference Board to be defined as a Collective Bargaining Agreement for the purposes of contributions to the Vacation and Holiday Plan or Vacation and Holiday Plan established by this Agreement.

Section 2. The term "Individual Employer" means any individual employer who is required by the Collective Bargaining Agreement to make Contributions to the Vacation and Holiday Fund or Plan, or any Predecessor Fund or Plan, for the purpose one or more Contributions to the Vacation and Holiday Fund or Plan. The term "Individual Employer" shall also include any Local Union or District Council, any labor council or other labor organization with which a Local Union or District Council is affiliated or other labor organization, trust or other entity which provides services to the Fund or in the enforcement or administration of contracts requiring Contributions to the Fund, or in the training of apprentice or journeymen carpenters, which makes Contributions to the Fund with respect to the work of its employees pursuant to a Subscriber's Agreement approved by the Board of Trustees; provided the inclusion of any Local Union, District Council, labor council, other labor organization, corporation, trust or other entity shall be an Individual Employer solely for the purpose of making Contributions with respect to the work of its respective employees and shall have no other rights or privileges under this Trust Agreement as an Individual Employer.

Section 3. The term "Employee" means any employee of an Individual Employer who performs or is paid for one or more hours of work covered by the Collective Bargaining Agreement. The term "Employee" shall also include employees of Local Unions and District Councils, and employees of labor councils or other labor organizations with which a Local Union or District Council is affiliated, or of any corporation, trust or other entity described in Section 2, with respect to whose work Contributions are made to the Fund pursuant to regulations adopted by the Board of Trustees; provided the inclusion of any of those employees is not a violation of any existing law or regulation.

Section 4. The term "District Council" means any district council or any district council in the 46 Northern California Counties affiliated with the United Brotherhood of Carpenters and Joiners of America AFL-CIO, and the Carpenters 46 Northern California Counties Conference Board.

Section 5. The term "Local Union" means any local union in the 46 Northern California Counties affiliated with the United Brotherhood of Carpenters and Joiners of America AFL-CIO, and the Carpenters 46 Northern California Counties Conference Board.

Section 6. The term "Signatory Association" means any employer association, other

than one of the Employers, which signs this Trust Agreement on behalf of its members or executes on behalf of those members an agreement to be bound by the terms of this Trust Agreement.

Section 7. The term "Trust Agreement" means this agreement and any modification, amendment, extension or renewal of the agreement.

Section 8. The term "Trustee" means any natural person designated as Trustee pursuant to Article III.

Section 9. The terms "Board of Trustees" or "Board" means the Board of Trustees established by this Trust Agreement.

Section 10. The term "Fund" means the Vacation and Holiday Trust Fund created and established by this Trust Agreement.

Section 11. The term "Plan" means the Northern California Carpenters Vacation and Holiday Plan established by the Collective Bargaining Agreement and this Trust Agreement and any modification, amendment, extension or renewal of the Plan.

Section 12. The term "Contribution" means any contribution made to the Fund by an Individual Employer under the provisions of the Collective Bargaining Agreement or Subscriber's Agreement.

Section 13. The terms "Plan Participant" or "Participant" means any Employee who is eligible to receive a benefit from the Fund.

Section 14. The term "Beneficiary" means a person designated by a Participant pursuant to the Plan or by the terms of the Plan who is or who may become entitled to a benefit under the terms of the Plan.

Section 15. The term "Predecessor Fund" means the 5 Bay Counties Carpenters Vacation and Holiday Trust Fund and the 41 Northern California Counties Carpenters Vacation Trust Fund or both.

Section 16. The term "Predecessor Plan" means the Plan maintained by a Predecessor Fund.

Section 17. The term "ERISA" means the Employee Retirement Income Security Act of 1974, 29 U.S.C. Section 1001 et seq., as amended, and any valid regulation issued consistent with that Act.

## ARTICLE II
## Trust Fund

Section 1. The Carpenters Vacation and Holiday Trust Fund for Northern California shall consist of all Contributions required by the Collective Bargaining Agreement or Subscriber's Agreement to be made for the establishment and maintenance of the Plan, and all interest, income and other returns of any kind and any other property received or held by reason of or pursuant to this Trust, specifically including any money, accounts or other assets transferred to the Fund from a Predecessor Fund.

The trust agreements establishing the Predecessor Funds and the Predecessor Plans are terminated. The Board of Trustees established by this Trust Agreement is the successor to the boards of trustees which administered the Predecessor Funds and Plans and exercise and perform all of the powers and duties of those boards.

The administrative account maintained by each of those boards, and all the accounts, records, contracts, and other rights and obligations of the Predecessor Funds and Plans, have been transferred to the Board of Trustees, Fund and Plan

established by this Trust Agreement, and the Board of Trustees and Fund have assumed full and complete accountability.

The individual accounts maintained pursuant to the Predecessor Plans which were subject to withdrawal during the calendar year 1972 were paid out to the persons entitled to benefits in accordance with the provisions of the applicable Predecessor Plan. Any sums in the accounts deemed contributed to the cost of maintaining the Predecessor Plan in effect were transferred and paid to the Board of Trustees and used in maintaining in effect the Plan provided by this Trust Agreement.

The Board of Trustees established by this Trust Agreement, as the successor to the boards of trustees of the Predecessor Funds and as Trustees for the Employees and their beneficiaries, have all right, title and interest in and to all monies and assets of the Predecessor Funds or accounts maintained by those funds.

Upon the transfer of the monies and other assets, records, rights and obligations to the Fund, the boards of trustees of the Predecessor Funds, and each trustee of either, have been released and discharged from any further liability or responsibility with regard to those funds, and the trustees, individually and collectively, have been exonerated, reimbursed and saved harmless out of the Fund against any and all liabilities and reasonable expenses arising out of their service as trustees, except (as to the individual trustee or trustees directly involved) for expenses and liabilities arising out of willful misconduct or gross negligence.

**Section 2.** The Fund shall have its principal office in San Francisco, California, or any other place designated by the Board of Trustees.

**Section 3.** No Employer shall be entitled to receive any part of the Contributions made or required to be made to the Fund in lieu of the benefits provided by the Plan.

**Section 4.** The Fund shall be administered by the Board of Trustees for the exclusive benefit of Employees and their beneficiaries pursuant to the provisions of this Trust and Holiday Plan. Notwithstanding anything to the contrary contained in this Trust Agreement or in the Plan, or any modification, amendment, extension or renewal of the Agreement or of the Fund shall at any time revert to, or be recoverable by, any of the Employers, no portion of the Fund and all the Plan, the Union, any Local Union, or District Council, or be used for, or diverted to, purposes other than for the exclusive benefit of Employees and their Beneficiaries under the Plan, and the payment of administration expenses of the Fund and the Plan except for Contributions which may be returned to an Individual Employer under applicable law.

**Section 5.** Neither the Employers, any Signatory Association, any Individual Employer, the Union, any Local Union, any District Council, any Employee, or Beneficiary under the Plan nor any other person shall have any right, title or interest in or to the Fund or the Plan or any portion thereof except as specifically provided in this Trust Agreement or in the Plan. Neither the Fund nor any Contributions to any of the Employers, any Signatory Association, any debts, contracts or liabilities of any of the Employers, any Signatory Association, any Individual Employer, the Union, any Local Union or District Council or any Employee, or Beneficiary

**Section 6.** Each Employee or Beneficiary under the Plan is restrained from selling, transferring, assigning, alienating, hypothecating or otherwise disposing of his right or interest under the Plan, and the Board of Trustees shall not recognize, or be required to recognize, any sale, transfer, anticipation, assignment, alienation, hypothecation or other disposition. Any right or interest under the Plan shall not be subject in any manner to voluntary transfer or transfer by operation of law or otherwise, and shall be exempt from the claims of creditors or other claimants and from all orders, decrees,

garnishments, executions or other legal or equitable process or proceeding to the fullest extent permissible by law. However, the Board of Trustees shall have authority to continue, maintain and from time to time modify or revoke, in whole or in part, a policy and procedure for the recognition and payment, from the vacation and holiday account, of any order, decree, warrant, garnishment, execution or other legal or equitable process for the enforcement of any liability to any governmental agency, or in connection with any domestic relations or child support proceeding, to the extent the Board in the exercise of its sole discretion determines is for the best interest of all Participants and Beneficiaries of the Plan. In the event that through mistake or any other circumstance, an Employee has been paid more than he is entitled to under the Plan or the law or has become obligated to the Fund under an indemnity agreement or in any other way, the Board of Trustees may set-off, recoup and recover the amount of the overpayment or obligation from vacation and holiday benefits accrued or accruing to the Employee or his Beneficiary and not yet distributed.

**Section 7.** Neither the Employers or any Signatory Association, nor any officer, agent, employee or committee member of the Employers or any Signatory Association shall be liable to make Contributions to the Fund or be under any other liability to the Fund or with respect to the Plan, except to the extent that he or it may be an Individual Employer required to make Contributions to the Fund with respect to his or its own individual or joint venture operations, or to the extent he may incur liability as a Trustee. No liability of any Individual Employer to the Fund, or with respect to the Plan, shall be limited to the payments required by the Collective Bargaining Agreement with respect to his or its individual or joint venture operations, and in no event shall he or it be liable or responsible for any portion of the Contributions due from other Individual Employers with respect to the operations of those Individual Employers. The basis on which payments are made to the Fund shall be as specified in the Collective Bargaining Agreement, Subscriber's Agreement and in this Trust Agreement and the Individual Employers shall not be required to make any further payments or Contributions to the cost of the operation of the Fund or of the Plan, except as may be provided in those agreements.

**Section 8.** Neither the Employers, any Signatory Association, any Individual Employer, the Union, any Local Union, any District Council nor any Employee shall be liable or responsible for any debts, liabilities or obligations of the Fund or the Trustees.

**Section 9.** Contributions to the Fund shall be due commencing May 1, 1972, for work on and after that date shall be payable in San Francisco, California, in regular monthly installments commencing on or before June 15, 1972, and continuing from month to month subject to the provisions of the applicable collective bargaining agreement. The Contribution payable on or before June 15, 1972, shall include all amounts which accrued for work performed during the period from the payroll period ending closest to the last day of April, 1972, up to the payroll period ending closest to the last day of May, 1972. Each subsequent monthly Contribution shall include all amounts which accrued in the interim for work performed up to the close of the Individual Employer's payroll period ending closest to the last day of the preceding calendar month. Each monthly Contribution shall be accompanied by a report in a form prescribed by the Board of Trustees. The rate of contribution made by a Local Union, District Council or other entity pursuant to regulations adopted by the Board of Trustees shall be not less than the rate of contribution called for by the Collective Bargaining Agreement subject to the further provisions of this Section and of the provisions of the applicable collective bargaining agreement. The Board of Trustees shall have authority to prescribe and adopt rules and procedures pursuant to Article IV, Section 4, of this Trust Agreement

- 9 -

10

permitting Individual Employers to make Contributions to the Fund on a quarterly instead of a monthly basis subject to any conditions or requirements the Board deems necessary or desirable.

Section 10. Each Contribution to the Fund shall be made promptly, but in no event later than the 25th day of the calendar month in which it becomes payable, on which date the Contribution, if not paid in full, shall be delinquent. If any Individual Employer fails to make his or its monthly Contribution in full on or before the 25th day of the month on four occasions within any 12-month period, the Board of Trustees may provide by resolution that during the 12-month period immediately following the resolution the 15th of the month shall be the delinquency date for that Individual Employer.

The parties recognize and acknowledge that the regular and prompt payment of Employer Contributions to the Fund is essential to the maintenance in effect of the Fund and the Plan, and that provision at the times stipulated of the paid vacations and holidays contemplated by the Plan, and that it would be extremely difficult, if not impracticable, to fix the actual expense and damage to the Fund and the Plan, and to the Beneficiaries, which would result from the failure of an Individual Employer to pay the monthly Contributions in full within the time above provided. Therefore, the amount of damages to the Fund and the Plan and the Beneficiaries resulting from any failure to promptly pay shall be presumed to be the sum of $20.00 per delinquency or 10% of the amount of the Contribution or Contributions due, whichever is greater. This amount shall be due and payable to the Fund as liquidated damages and not as a penalty, in San Francisco, California, upon the day immediately following the date on which the Contribution or Contributions become delinquent and shall be in addition to the delinquent Contribution or Contributions due. The Contributions, as increased, shall be the payments required to be made to the Fund.

Section 11. The Board of Trustees may adopt and from time to time amend, revise or repeal rules and regulations establishing a procedure for an Individual Employer who is delinquent in making Contributions as provided in Article II, Sections 9 and 10, and may require that Contributions to the Fund be made on a weekly rather than a monthly basis and to remit each weekly Contribution to the Fund accompanied by a report of contributions to the Fund, not later than midnight on Friday of the week for which the Contribution is due. In the event these rules and regulations are adopted, the Individual Employer to whom the rules and regulations apply shall make Contributions to the Fund in accordance with the rules and regulations and the provisions of Article II, Section 10, with regard to liquidated damages shall apply with respect to any weekly Contribution which is not paid within the time provided in the rules and regulations, except that the amount of the liquidated damages shall be $5.00 per delinquency or 20% of the amount of the Contribution or Contributions due, whichever is greater.

Section 12. Contributions to the Fund shall be deemed to be, and shall be, a part of the wages due to the Employees with respect to whose work the payments are made. No Individual Employer shall have any right, title or interest in the payments, and no portion shall revert to any Individual Employer except to the extent permitted by applicable law. Insofar as is consistent with the other provisions of this Agreement, the Contributions shall be treated and reported as a part of the compensation earned at the time the work to which the Contributions pertain is performed, subject to withholding tax and Social Security and Unemployment taxes as a part of the total compensation payable at the end of the Individual Employer's payroll period during which the work is performed. The Contributions are payable on an "hours worked or paid" basis in the same manner as health and welfare contributions. They shall not be a part of the hourly wage rates for the purpose of computing overtime

-11-

or reporting time for any other purpose of the Collective Bargaining Agreement, or part of the "regular rate" or "basic hourly rate" for the purpose of the Federal Fair Labor Standards Act, Walsh-Healey Act or any other law, ordinance or regulation. If the Contributions can be considered and treated as part of the wages prevailing in the area for the purpose of the Federal Davis-Bacon Act and similar federal, state or local laws, ordinance or regulations, they shall be so considered and treated. If any administrative or judicial ruling holds that any provision of this Agreement prevents or defeats any of the objectives stated in this Section, the parties will immediately enter into negotiations with regard to the amendment of this Agreement to accomplish the stated objectives, consistent with the other objectives and purposes of this Agreement, and any amendment shall be effective, insofar as practicable, as of the date of execution of this Agreement.

Section 13. The Board of Trustees shall establish and maintain records of the Contributions received with respect to the work performed by each Employee and shall credit those Contributions to a vacation and holiday account for the Employee. The account of each Employee shall be reflected in the records of the Fund but notwithstanding the records, the Board of Trustees shall have the right and authority to commingle the Contributions with any or all other Contributions received with respect to the work performed by other Employees and any or all other payments into the Fund, to deposit all or any part of the commingled Contributions and payments in one or more bank accounts, to invest and reinvest all or any portion of the Contributions and payments as provided in Article IV, Subsection 4 (J), of this Trust Agreement, and to pay and distribute the Contributions and payments in accordance with the provisions of this Trust Agreement. The Board may deduct from the account of each Employee an administrative charge not to exceed $2.00 annually for defraying the cost of administering the Fund and Plan. The portion of the Contributions representing liquidated damages or expenses of collection and any interest or other return on the Contributions may also be used by the Board and if not so used, shall be distributed equitably to the Employers and their Beneficiaries at the times, upon the terms and in proportions, without regard to any specific account or accounts, as the Board of Trustees may determine.

## ARTICLE III
## Board of Trustees

Section 1. The Fund shall be administered by a Board of Trustees which shall consist of four Trustees representing the Individual Employers and four Trustees representing the Employees. The Trustees representing the Individual Employer shall be appointed in writing by the Employers, who are irrevocably designated by each Individual Employer as his or its attorneys-in-fact for the purpose of appointing and removing Employer Trustees.

No employer association or its successor shall continue to have appointing authority pursuant to this Section unless the association or its successor is signatory to the Collective Bargaining Agreement with the Union on behalf of its members or a multi-employer unit which it represents for purposes of collective bargaining with the Union.

If an employer association or its successor ceases to be bound to the Collective Bargaining Agreement with the Union, any Trustee appointed by that association or its successor shall be deemed to have resigned and a successor Trustee shall be appointed by the remaining employer associations or their successors, who are signatory to the Collective Bargaining Agreement with the Union.

The Trustees representing the Employees shall be appointed by the Union by an

12

instrument in writing signed by the Executive Officer of the Union.

The Employers can thus expressly designate the Trustees jointly as named fiduciaries, who shall have exclusive authority and discretion acting as the Board of Trustees to control and manage the operation and administration of the Fund and the Plan. Each of the Trustees expressly accepts designation as a fiduciary and as Trustee by written acceptance and signature of this Trust Agreement and assumes the duties, responsibilities and obligations of the Trustees as created and established by this Trust Agreement and under applicable law. Any successor Trustee shall do likewise by signing the Trust Agreement or a written acceptance, in a form approved by and filed with the Board of Trustees.

**Section 2.** The Board of Trustees shall select one Trustee to act as Chairman of the Board and one Trustee to act as Co-Chairman, each to serve for a period of time determined by the Trustees. When the Chairman is selected from among the Employer Trustees, the Co-Chairman shall be selected from among the Employee Trustees, and vice versa. Neither the Chairman nor the Co-Chairman shall succeed himself.

**Section 3.** Each Trustee shall serve until his death, resignation or removal from office.

**Section 4.** An Employer Trustee shall be deemed to have resigned under the circumstances specified in Section 1 of this Article. Any other Trustee may resign at any time by serving written notice of his resignation upon the Secretary of the Board of Trustees at least 30 days prior to the date on which his resignation is to be effective. The Secretary shall promptly notify, in writing, the Chairman and Co-Chairman of the Board and the Employers and Union of the resignation of a Trustee.

**Section 5.** Any Employer Trustee may be removed from office at any time, for any reason, by a writing signed by the employer association having appointing authority with respect to that Trustee and served on the Secretary of the Board of Trustees. Any Employee Trustee may be removed from office at any time, for any reason, by a writing signed by the Executive Officer of the Union and served on the Secretary of the Board of Trustees. The Secretary shall promptly notify in writing the Chairman and Co-Chairman of the Board, the Trustee being removed, and the Union or Employers, as the case may be, of the removal.

**Section 6.** If any Employer Trustee dies, resigns or is removed from office, a successor Trustee shall be promptly appointed by an instrument in writing signed by the employer association having appointing authority with respect to that Trustee. If any Employee Trustee dies, resigns or is removed from office, a successor Trustee shall be promptly appointed by an instrument in writing signed by the Executive Officer of the Union.

13

## ARTICLE IV

## Functions and Powers of Board of Trustees

**Section 1.** The Board of Trustees acting jointly shall have the power to control and manage the assets, operation and administration of the Fund and the Plan as a fiduciary and shall exercise that authority with the care, skill, prudence and diligence under the prevailing circumstances that a prudent person acting in a like capacity and familiar with these matters would use in the conduct of an enterprise of like character and with like aims, provided, however, that the Board may

(A) Appoint an investment manager or managers (as defined in ERISA) to manage (including the power to acquire and dispose of) any assets of the Fund.

(B) To enter into an agreement allocating among Trustees the responsibilities, obligations, or duties as the Board shall determine;

(C) Designate persons other than named fiduciaries to carry out fiduciary responsibilities (other than Trustee responsibilities) under this Trust Agreement or the Plan; and

(D) Employ one or more persons to render advice with regard to any responsibility the Board has under this Trust Agreement or Plan.

Any person or entity appointed, designated or employed shall act solely in the interests of the Participants and Beneficiaries of the Fund and the Plan.

**Section 2.** All Contributions to the Fund established by this Trust Agreement are due and payable in San Francisco, California, and shall be paid to, received and held by the Fund subject to the terms and provisions of this Trust Agreement. The acceptance and cashing of any checks for Contributions, and the disposition of the monies covered in accordance with this Trust Agreement, shall not release or discharge the Individual Employer from his or its obligation under the Collective Bargaining Agreement for hours worked under that agreement for which no Contribution has actually been received, notwithstanding any statement, restriction or qualification appearing on the check or any attachment. The Board of Trustees may direct that any check may be a single check covering monies payable to one or more other funds and may join with the boards of trustees of other funds in instructing the bank or banks with regard to the allocation of the monies covered by that check among the funds. In the event those instructions are given, they shall be binding upon the bank or banks, the Individual Employer, the Employees, the Employers, the Union, and all other parties.

**Section 3.** The Board of Trustees shall have the right, authority and duty, in the name of the Fund or otherwise, as in its discretion may be deemed necessary or desirable, to demand and enforce, by suit in court, the prompt payment of Contributions to the Fund, including payments due to delinquencies as provided in Article II, Section 10, without being limited or restricted by any grievance or arbitration procedures provided in a collective bargaining agreement. If any Individual Employer defaults in the making of any Contributions or payments and if the Board consults legal counsel, or files any suit or claim, there shall be added to the obligation of the Individual Employer who is in default, reasonable attorney's fees, court costs and all other reasonable expenses incurred in connection with the suit or claim, including any and all appellate proceedings.

Effective upon any default or delinquency, the Employees, individually and collectively, assign to the Board for collection purposes, all their rights, title and interest in and to the Contributions and other payments, and confer upon and grant to the Board all rights of action, liens, rights, preferences, priorities or other security or rights they may have in connection with or relating to the Contributions and payments, including the right and authority to file claims in bankruptcy, mechanics' liens and any and all other kinds of claims, demands or actions. All delinquent Contributions collected by the Board shall be credited to the respective vacation and holiday accounts of the Employees to whom the Contributions pertain and all liquidated damages and reimbursement for attorney's fees and costs shall be credited to the administrative account of the Plan. No provision of this Section, or any Section of this Agreement, shall interfere with or qualify the right of the Union and its representatives to enforce compliance with the terms and provisions of the Collective Bargaining Agreement or to assist in the processing of claims before the Labor Commissioner or any other claims for the payment of sums due the Plan.

**Section 4.** Without limitation of the provisions of Section 1 of this Article, the Board of Trustees shall have power

14

(A) To pay out of the Fund the reasonable expenses incurred in the establishment of the Fund and the Plan;

(B) To establish and accumulate reserve funds as may be adequate to provide for administration expenses and other obligations of ERISA, including the maintenance of the Plan;

(C) To provide a procedure for establishing and carrying out a funding policy consistent with the objectives of the Plan and the requirements of ERISA;

(D) To employ or engage executive, consultant, actuarial, accounting, administrative, clerical, secretarial, legal or other employees, assistants or advisers, as may be necessary in connection with the administration of the Fund and the Plan and to pay out of the Fund the compensation and expenses of these employees, assistants or advisers and the cost of office space, furnishings and supplies and other essentials required in the administration. If the Board is unable to agree upon the employment of either a consultant or an attorney pursuant to this clause, the Employer Trustees and the Employee Trustees may each select either a consultant or an attorney, or both, as the case may require, who shall be directed to act jointly in connection with the administration of the Fund, and the reasonable cost of the advice or services shall be paid from the Fund. The Board shall engage pursuant to this clause an independent qualified public accountant on behalf of all Plan participants as required by ERISA;

(E) To maintain a bank account or bank accounts as may be necessary or advisable in the administration of the Fund or Plan and to designate the person or persons authorized to sign checks and withdrawal orders on those accounts. If necessary, the Board may establish and maintain with a depository bank any administrative accounts necessary for disbursements solely for the benefit of the Plan Participants and Beneficiaries;

(F) To incur and pay out of the Fund any other expense reasonably incidental to the administration of the Fund or the Plan;

(G) To incur and pay out of the Fund the obligations, debts and liabilities that are reasonably necessary to maintain and operate the Plan to accomplish its objectives;

(H) To compromise, settle, or release claims or demands in favor of or against the Fund on any terms and conditions as the Board may deem desirable, including the power to continue, maintain and from time to time modify or revoke, in whole or in part, a policy or procedure for the waiver of the liquidated damages portion of any Contribution to the Fund and its Participants and Beneficiaries. However, this clause shall not excuse a violation of any of the collective bargaining agreements.

(I) If no investment manager is designated and appointed by the Board of Trustees, to invest and reinvest the assets of the Fund in accordance with all applicable laws. Investments may be made with a bank or other fiduciary to the fullest extent permitted by law. No indicia of ownership shall be maintained outside the jurisdiction of the district courts of the United States, except to the extent permitted by law;

(J) To adopt rules and regulations for the administration of the Plan which are not inconsistent with the terms or intent of this Agreement or of the Plan;

(K) To prepare reports, descriptions, summaries and other information that are required by law or as the Board of Trustees in its discretion deems necessary or advisable and to file and furnish these reports, descriptions, summaries and information to Participants and their Beneficiaries, the Union, the Employers, Signatory Associations, the Trustees, or other persons or entities, including government agencies;

- 15 -

(L) To perform any and all of the functions and duties conferred upon the Board by other provisions of this Agreement.

Section 5. The Board of Trustees shall provide at the expense of the Fund, where and to the extent permissible by applicable law, insurance and bonding protection for the Fund and for each Trustee, former Trustee or estate of deceased Trustee or former Trustee, and all other persons who handle funds or other property of the Fund. The protection shall be from companies and with limits determined by the Board.

Section 6. The Board of Trustees shall maintain suitable and adequate records of and for the administration of the Fund and the Plan. The Board may require the Employers, any Signatory Association, any Individual Employer, the Union, any Local Union or any District Council, any Employee, or any other Beneficiary under the Plan to submit to it any information, data, reports or documents reasonably relevant to and suitable for the purposes of administration. However, the Union, Local Unions and District Councils shall not be required to submit membership lists. The parties agree that they will use their best efforts to secure compliance with any reasonable request of the Board for any information, data, report or documents. Upon a written request from the Board, each Individual Employer shall permit a certified public accountant selected by the Board to enter upon the premises of the Individual Employer during business hours, at a reasonable time or times, and to examine and copy books, records, papers or reports of the Individual Employer to determine whether the Individual Employer is making full and prompt payment of all sums required to be paid by him or it to the Fund. In addition, each Individual Employer will comply with all of the terms and conditions of the 46 Counties Agreement with regard to audits.

Any action to secure compliance with the provisions of this Section or any other provision of the Trust Agreement, to enforce the prompt payment of Contributions or any other sums owed to the Fund, or arising out of any dispute concerning the interpretation or application or enforcement of this Section or of any other provision of the Trust Agreement, shall be brought and tried in a court of competent jurisdiction located in the City and County of San Francisco, and each party to that action expressly waives any right to change the venue of that action to any other county or to any other place.

Section 7. The books of account and records of the Board of Trustees, including the books of account and records pertaining to the Fund shall be audited at least once a year by an independent qualified public accountant engaged by the Board on behalf of all Plan Participants who shall conduct an examination of any financial statements of the Fund and Plan, and of other books and records of the Fund and Plan, required by ERISA. A statement of the results of the annual audit shall be available for inspection by interested persons at the principal office of the Fund and at any other suitable place the Board may designate. Copies of the statement shall be delivered to the Employers, the Union and each Trustee within 10 days after the statement is prepared. The Board shall also prepare all other reports required by law.

Section 8. Compatible with equitable principles and to the extent that sound accounting principles permit, the Board of Trustees may coordinate its activities in the administration of the Fund and the Plan with the administrative activities of the governing board or boards of any other fund or funds, or plan or plans, established for employees in the building and construction industry in California to the extent and upon terms as may be deemed necessary or desirable by the Board, including the entering into and performance of agreements or arrangements with any board or boards providing for reciprocity or the transfer or exchange of credits or of Contributions between or among the funds or plans and upon the terms the Board may determine are for the best interests of the Beneficiaries of the Plan.

16

**Section 9.**

(A) The Board of Trustees may enter into an agreement with the board of trustees of any other vacation and holiday trust fund, which is established or maintained pursuant to a collective bargaining agreement, providing for the consolidation, merger, or amalgamation of the Fund with the other fund, upon any terms and conditions the Board shall determine, subject to the prior written approval of the agreement by the Employers and the Union, and may accept the transfer of monies, accounts, contracts, liabilities, property and any other investments or rights, provide for the payment of benefits and otherwise execute and carry out the terms of the agreement.

(B) In the event the Board of Trustees approves the consolidation, merger or amalgamation of the Fund, the Board of Trustees shall have the power to appoint an equal number of employer trustees and employee trustees from the existing board of trustees of the merging fund to the Board of Trustees. These trustees shall serve at the discretion of the Board of Trustees and for so long as the Board of Trustees may deem desirable.

## ARTICLE V
## Procedure of Board of Trustees

**Section 1.** The Board of Trustees shall determine the time and place of regular periodic meetings of the Board. Either the Chairman or Co-Chairman, or any two members of the Board, may call a special meeting of the Board by giving written notice to all other Trustees of the time and place of the meeting at least 5 days before the date set for the meeting. Any notice of a special meeting shall be sufficient if sent by ordinary mail or by wire addressed to the Trustee at his address shown in the records of the Board. Any meeting at which all Trustees are present, or concerning which all Trustees have waived notice in writing, shall be a valid meeting without the giving of any notice.

**Section 2.** The Board shall appoint a secretary who shall keep minutes or records of all meetings, proceedings and acts of the Board. The minutes need not be verbatim.

**Section 3.** The Board shall not take any action or make any action on any matter coming before it or presented to it for consideration or exercise any power or right given or reserved to it or conferred upon it by this Agreement except upon the vote of a majority of all 8 Trustees at a meeting of the Board duly and regularly called or except by the signed concurrence of all 8 Trustees without a meeting, as provided in Section 5 of this Article.

In the event of the absence of any Employer Trustee from a meeting of the Board, the Employer Trustees present at the meeting may vote on behalf of the absent Trustee and if the Employer Trustees cannot all agree how the vote of the absent Employer Trustee shall be cast then it shall be cast as the majority of them shall determine; or in the absence of a majority determination, it shall be cast as the Employer Trustee Chairman or Co-Chairman of the Board shall determine. In the event of the absence of any Employee Trustee from a meeting of the Board the Employee Trustees present at the meeting may vote on behalf of the absent Trustee in the same method and manner as provided for Employer Trustees to cast the vote of any absent Employer Trustee.

At the request of any Trustee, made either before or after the taking of a vote on any matter coming before the Board, the action or decision of the Board on the matter shall be by unit vote, that is, the vote of the Employer Trustees and the vote of the Employee Trustees to be determined by the majority of all Employer Trustees on the action or decision shall be determined by the majority of all Employee Trustees

- 17 -

## ARTICLE VI
## Corporate Co-Trustee or Custodian

**Section 1.** The Corporate Co-Trustee or Custodian and any successor may be appointed by the Board of Trustees.

**Section 2.** The Corporate Co-Trustee or Custodian shall not be a representative of either the Employers or the Unions.

**Section 3.** The duties, responsibilities, rights, and powers of the Corporate Co-Trustee or Custodian shall be those delegated to it by the Board of Trustees and shall be set forth in a contract between the Board and the Corporate Co-Trustee or Custodian. If so designated, the Corporate Co-Trustee or Custodian shall act as a fiduciary.

## ARTICLE VII
## General Provisions Applicable to Trustees

**Section 1.** The provisions of this Article are subject to and qualified by the provisions of ERISA to the extent those provisions are constitutionally applicable. In order to induce experienced, competent and qualified persons and entities to serve as fiduciaries, to deal with the Fund and the Board of Trustees and to participate in other ways in the administration and operation of the Fund and Plan and to further the interest of the Participants and Beneficiaries of the Plan, it is the intent and purpose of the parties to provide the maximum permissible protection and indemnification of those persons or entities from and against personal liability, loss, costs or expense as a result of the service, dealing or participation, and the provisions of this Article shall be liberally construed and applied to accomplish this objective.

**Section 2.** No party who has verified that he or it is dealing with the duly appointed Trustees shall be obligated to see to the application of any money or property of the Fund, or to see that the terms of this Trust Agreement have been complied with, or to inquire as to the necessity or expediency of any act or instruction of the Trustees. Every instrument executed by the Board of Trustees or by its direction shall be conclusive in favor of every person who relies on it, that (a) at the time of the delivery of the instrument this Trust Agreement was in full force and effect, (b) the instrument was executed in accordance with the terms and conditions of this Trust Agreement, and (c) the Board of Trustees was duly authorized to execute the instrument or direct its execution.

**Section 3.** The duties, responsibilities, liabilities and limitations of any Trustee under the Trust Agreement shall be determined solely by the express provisions of this Agreement and no further duties, responsibilities, liabilities or limitations shall be implied or imposed.

**Section 4.** The Trustees shall incur no liability, either collectively or individually, in acting upon any papers, documents, data or information they believe to be genuine and accurate and to have been made, executed, delivered or assembled by the proper parties. The Trustees may delegate any of their ministerial powers or duties to their agents or employees. No Trustee shall incur any liability for simple negligence, oversight or carelessness in connection with the performance of his duties as a Trustee. No Trustee shall

**Section 4.** All meetings of the Board shall be held at the principal office of the Fund unless another place is designated by the Board.

**Section 5.** Upon any matter which may properly come before it, the Board may act in writing without a meeting, provided the action has the concurrence of all the Trustees.

18

be liable for the act or omission of any other Trustee. The Trustees, individually and collectively, shall be exonerated, reimbursed and saved harmless out of the Fund against any and all liabilities and reasonable expenses arising out of their service as Trustees, except (as to the Individual Trustee or Trustees directly involved) for expenses and liabilities arising out of willful misconduct or gross negligence. No expense shall be deemed reasonable under this Section unless and until approved by the Board.

Section 5.

(A) Except as provided in Subsection (B) of this Section, upon request of a Trustee, or former Trustee, or the legal representatives of a deceased Trustee or former Trustee, the Board of Trustees shall provide for the defense of any civil action or proceeding brought against a Trustee, former Trustee or former Trustee or in his individual capacity or Trustee, in his capacity as a Trustee or former Trustee or in his service or duties as a Trustee, in both, on account of any act or omission in the scope of his service or duties as a Trustee or former Trustee. For the purposes of this Section, a cross-action, counterclaim, cross-complaint or administrative or arbitration proceeding brought against a Trustee or former Trustee or estate shall be deemed to be a civil action or proceeding brought against him or it.

(B) The Board of Trustees may refuse to provide for the defense of a civil action or proceeding brought against a Trustee or former Trustee or estate if the Board determines that:

(1) The act or omission was not within the scope of his service as a Trustee of the Fund; or

(2) He acted or failed to act in breach of his fiduciary duty because of willful misconduct or gross negligence; or

(3) The defense of the action or proceeding by the Board would create a conflict of interest between the Board or Fund and the Trustee, former Trustee or estate.

(C) The Board may provide for the defense of a criminal action brought against a Trustee or former Trustee if:

(i) The criminal action or proceeding is brought on account of an act or omission in the scope of his services or duties as a Trustee or former Trustee, and

(2) The Board determines that the defense would be in the best interests of the Fund and its Participants and Beneficiaries and that the Trustee or former Trustee acted, or failed to act, in good faith, without actual malice and in the apparent interests of the Fund and its Participants and Beneficiaries.

(3) The Board may provide for a defense pursuant to this Section by Fund counsel or co-counsel or by employing other counsel or by purchasing insurance which requires that the insurer provide the defense. All of the expenses of providing a defense pursuant to this Section are proper charges against the Fund. The Fund shall have no right to recover these expenses from the Trustee, former Trustee or estate.

(E) If the Board fails or refuses to provide a Trustee, former Trustee or estate with a defense against a civil action or proceeding brought against him or it and the Trustee or former Trustee or legal representative retains his own counsel to defend the action or proceeding, he shall be entitled to recover from the Fund reasonable attorney' fees, costs and expenses incurred by him in defending the action or proceeding if the action or proceeding arose out of an act or omission in the scope of his service or duties as a proceeding against the Fund, unless the Board establishes that the Trustee or former Trustee acted or failed to act in breach of his fiduciary duty because of willful misconduct or gross negligence.

Section 6. Neither the Employers, any Signatory Association, the Individual

Employers, the Union, any Local Union, any District Council, nor any of the Trustees shall be responsible or liable for:

(A) The validity of this Trust Agreement or the Plan;

(B) Any delay occasioned by any restriction or provision in this Trust Agreement, the Plan, the rules and regulations of the Board, any contract entered into in the course of the administration of the Plan, or by any other proper procedure in the administration. However, this clause shall not excuse any violation of the Collective Bargaining Agreement; or

(C) Any loss or diminution of the vacation and holiday accounts or the Fund, except, any loss due to the gross neglect or willful misconduct of a particular person.

Section 7. Neither the Employers, any Signatory Association, any Individual Employer, any District Council nor the Union shall be liable in any respect for any of the obligations or acts of the Trustees because the Trustees are in any way associated with any Employers, Signatory Association, Individual Employer, District Council or the Union.

Section 8. Subject to and within the limitations of law and any applicable government regulations, each Trustee shall be reimbursed by the Fund for all expenses reasonably, properly and actually incurred by him in attending a meeting of the Board of Trustees or a committee meeting of the Board, or in the performance of any other of his duties on behalf of the Plan, including attendance at educational or training conferences, institutes or other meetings relevant to those duties as is authorized by the Board, in accordance with rules and regulations adopted by the Board.

Section 9. Any Trustee who resigns or is removed from office shall turn over to the Chairman or Co-Chairman of the Board at the principal office of the Fund any and all records, books, documents, monies and other property in his possession or under his control which belong to the Fund or which were received by him in his capacity as a Trustee.

Section 10. The name of the Fund or the Plan may be used to designate the Trustees collectively and all instruments may be effected by the Board of Trustees in name of the Fund.

ARTICLE VIII
Vacation and Holiday Benefits

Section 1. The Plan is established for the benefit of the Employees and the objective of the Plan is to provide the Employees with paid vacations and paid holidays from work, allowing the Employee to return to his work refreshed and reinvigorated and securing to the Individual Employer the performance of better and more efficient work. The restrictions imposed by the Plan upon the use and enjoyment by the Employees of the monies contributed by the Individual Employers are for the purpose of accomplishing this objective, and are voluntarily assumed and agreed to by the Employees for this purpose.

Section 2. On and after January 1, 1973, the Employees entitled to vacation and holiday benefits shall have the right to be paid the sums credited to their respective accounts subject to the terms and conditions specified in this Article and subject to any further terms and conditions as may be provided by regulation or resolution of the Board of Trustees pursuant to the authority given by this Agreement.

Section 3. The period during which vacations must be taken shall be from February 1 in each calendar year through January 31 of the succeeding calendar year (the "vacation year"). The sums credited to each account for work performed during the period from July 1 of each calendar year to June 30 of the succeeding calendar year shall

be distributed immediately before the start of the vacation year commencing with February 1 of the following calendar year. The distribution of benefits for each vacation shall be made by checks mailed to Employees in a single mailing as directed by the Board of Trustees not later than the January 31 immediately preceding the vacation year. With respect to the benefits payable for each vacation year and subject to other provisions of this Trust Agreement, and to any rules, regulations and policies of the Board, the sums so credited shall be all of the sums received for work performed during the preceding work period from August 1 to the succeeding July 31.

Section 4. Subject to the provisions of this Article, each Employee who has a sum equal to or in excess of 40 times the current journeyman carpenter wage rate specified in the Collective Bargaining Agreement for the work period but less than 80 times that rate credited to his vacation and holiday account for work performed during any work period as specified in Section 3 of this Article shall be compelled to take a vacation from work for at least one week of consecutive days during the immediately succeeding vacation year. Subject to the provisions of this Article, each Employee who has a sum equal to or in excess of 80 times any rate credited to his vacation and holiday account for work performed during any work period shall be compelled to take a vacation from work for at least two weeks of consecutive days during the immediately succeeding vacation year. Each Employee who has a sum which is less than 40 times any rate credited to his vacation and holiday account for work performed during any work period shall be paid the amount so credited before the start of the immediately succeeding vacation year but he shall not be compelled to take a vacation during the vacation year.

Section 5. If an Employee subject to the compulsory vacation requirement of Section 4 of this Article considers that the requirement will cause him undue hardship, he may appeal in writing from the requirement of the Board of Trustees. If the Board finds that the requirement will cause the Employee undue hardship, the Board may modify or waive the requirement to the extent it is proper.

Section 6. Each Employee who is currently his employer at least 30 days' notice of the time at which he desires to go on vacation, unless the employer waives the notice or agrees to a shorter period of notice. The starting time and, subject to the compulsory requirement of Section 4 of this Article, the duration of a vacation shall be fixed by mutual agreement between the Individual Employer and the Employee. In fixing the starting time and duration of a vacation, due consideration shall be given to prevailing conditions at the individual job site but, unless the Individual Employer agrees to the contrary, not more than 20% of the employer's Employees who are subject to the compulsory vacation requirement shall be on vacation at the same time.

Section 7. Each Employee who desires to go on a vacation shall complete the forms and comply with the procedures prescribed by the Board of Trustees.

Section 8. It is the intent and purpose of the Plan, and of this Article, and a material part of the consideration for the making of Contributions to the Fund by Individual Employers, that the money in each vacation and holiday account shall be received by the Employee personally and shall in fact be used by him personally to enable him to take a bonafide vacation and holiday from work, and for no other purpose. Accordingly, no Contributions due the Fund, and no money in the vacation and holiday accounts established pursuant to the Plan, shall be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge by any Employee or any other person, except as specifically provided in this Trust Agreement, and any anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge shall be exempt from the claims of creditors or other claimants and from all orders, decrees, garnishments, executions or other legal or equitable process or proceedings to the fullest

extent permissible by law. The money credited to a vacation and holiday account shall only be subject to withdrawal at the times, in the manner and for the purposes specified in this Agreement.

Section 9. The amount credited to a vacation and holiday account shall not be accumulative from one year to another. If the Fund is unable to distribute to an Employee pursuant to Section 3 of this Article the amount credited to his account due to the lack of a correct address or for any other reason, that amount shall be paid to the Employee or to the person entitled under Section 10 of this Article upon written application submitted to the Board of Trustees within a period of 4 years after the expiration of the vacation year. The application shall be in a form prescribed by the Board and payment shall be in accordance with the rules and regulations of the Board. If the amount is not withdrawn by an Employee within the specified period, or if an Employee fails to cash his check during that period, the amount shall be forfeited to the Fund and the Employee shall be deemed to have contributed that amount to the Fund for the exclusive purpose of (a) providing benefits to Employees and their beneficiaries, including Employees who would otherwise be deprived of benefits because of the delinquency of their employers in making Contributions to the Fund, and subject to the terms and conditions as the Board of Trustees shall determine, and (b) defraying reasonable expenses of administering the Plan. Any check issued to the Employee for the applicable vacation year which is not cashed shall be void and ineffective. All unclaimed amounts shall be transferred promptly to the administrative account of the Plan.

Section 10. Each Employee entitled to benefits under the Plan shall file with the Board of Trustees a designation of the person to whom benefits shall be paid in the event of the Employee's death. The Employee may change a beneficiary at any time by signing and filing a new designation. If an Employee dies, the amount credited to his vacation and holiday account shall be paid to the Beneficiary named by the Employee, or if no Beneficiary is named, or the named Beneficiary is dead, to the person or persons entitled by law. Payment to that person or persons shall be a complete discharge from liabilities to the extent of the payment. The person or persons claiming the payment shall file with the Board a signed application for the payment and proof of death of the Employee, and of the right of the applicant or applicants to receive the payment, in a form as the Board shall prescribe. If the application and proof is not filed within the time specified in Section 9 of the Article, the amount credited to the Employee's vacation and holiday account shall be forfeited to the Fund and the person or persons, if any, entitled to payment of that amount shall be deemed to have contributed the amount to the Fund for the exclusive purpose of (a) providing benefit to Employees and their beneficiaries, including Employees who would otherwise be deprived of benefits because of the delinquency of their employers in making Contributions to the Fund, in the amount and subject to the terms and conditions as the Board of Trustees shall determine, and (b) defraying reasonable expenses of administering the Plan.

Section 11. It shall not be a contractual obligation, but it shall be the policy of the Individual Employers, that any Employee who has been compelled to take a vacation under the terms of this Agreement and who has returned to work on the first regular working day succeeding the end of his vacation as previously designated to his employer shall be reinstated on the payroll to perform the same duties he performed prior to his vacation, unless the reinstatement is impracticable due to conditions beyond the Individual Employer's reasonable control, such as weather conditions, completion of the work or other similar circumstances.

Section 12. Notwithstanding any other provision of this Trust Agreement to the contrary, the Board of Trustees is authorized, and is expressly directed by the parties, to

– 21 –

22

decline the amount specified in Section 43(A) of the Carpenters 46 Northern California Counties Master Agreements or the like section of the Drywall Master Agreement (or the like section of the 46 Counties Piledrivers Master Agreement for the same or similar provisions in other agreements to which the Union is a party, if so authorized by law, for all hours paid for or Employee) from the undisbursed vacation and holiday benefits of each Employee who executes a voluntary dues authorization as required by law, for all hours paid for or worked by that Employee on and after January 1, 1978, and of the agreements, and to remit that amount directly to the Union, or to the appropriate District Council or Local Union as the Union may direct, not less than 12 times per year commencing on and after June 1, 1978, as supplemental membership dues of the Employee. The Union shall pro- vide the Board of Trustees with a receipt for each remittance signed by its Executive Officer, and the Fund shall send each Employee from whose benefits a deduction has been made a quarterly statement specifying the amount of the deduction. The Union shall exonerate, reimburse and save harmless the Fund, the Board of Trustees and the Trustees, individually and collectively, against any and all liabilities and reasonable expenses arising out of any deduction or remittance.

## ARTICLE IX
## Arbitration

**Section 1.** In the event that the Trustees deadlock on any matter arising in connection with the administration of the Fund or the Plan, they shall agree upon a neutral person to serve as an impartial umpire to decide the dispute. The Employer Trustees and the Employee Trustees may, by mutual agreement, select an equal number of representatives from their respective Trustee groups to sit with the umpire to constitute a Board of Arbitration. The decision of a majority of this board shall be final and binding upon the Trustees and the parties to and the Participants and Beneficiaries of this Trust Agreement and the Plan. Otherwise, the decision of the impartial umpire shall be final and binding upon the Trustees, the parties to and the Participants and Beneficiaries of this Trust Agreement and the Plan. Any matter in dispute and to be arbitrated shall be submitted to the Board of Arbitration or the impartial umpire in writing, and in making it is or his decision, the board or umpire shall be bound by the provisions of this Trust Agreement, the Plan, and the Collective Bargaining Agreement and shall have no authority to alter or amend any of the terms of those agreements. If the Trustees cannot jointly agree upon a statement submitting the matter to arbitration, each group shall prepare and state in writing its version of the dispute and the question or questions involved. The decision of the Board of Arbitration or of the impartial umpire shall be available in writing within 10 days after the submission of the dispute.

**Section 2.** If no agreement on an impartial umpire is reached within 10 days, or within the time the Trustees may allow for this purpose, the umpire shall, on petition of either the Employer Trustees or the Employee Trustees, be appointed by the United States District Court for the Northern District of California.

**Section 3.** The reasonable expenses of any arbitration, including any necessary court proceedings to secure the appointment of an umpire or the enforcement of the arbitration award (excluding the fees and expenses of witnesses called by the parties and the cost of any attorneys other than Fund attorneys selected pursuant to Article IV, Section 4 (D)), shall be a proper charge against the Fund. No expense shall be deemed reasonable under this Section unless and until approved by the Board of Trustees.

**Section 4.** No matter in connection with the interpretation or enforcement of any collective bargaining agreement shall be subject to arbitration under this Article. No

- 23 -

matter which is subject to arbitration under this Article shall be subject to the grievance procedure or any other arbitration procedure provided in any of the collective bargaining agreements.

## ARTICLE X
## General Provisions

**Section 1.** Subject to the provisions of the Collective Bargaining Agreement, the rights and duties of all parties including the Employers, the Signatory Associations, the Individual Employers, the Union, the Local Unions, the District Councils, the Employees and the Trustees, shall be governed by the provisions of this Trust Agreement, and any contracts entered into, or any rules and regulations adopted, pursuant to this Trust Agreement.

**Section 2.** No Employee, or other Beneficiary or person shall have any right or claim to benefits under the Plan other than as specified in the Plan. Any claim or right asserted under the Plan or against the Fund, regardless of the basis asserted for the claim and regardless of when the act or omission upon which the claim is based occurred, shall be resolved by the Board of Trustees consistent with the Plan and its decision with regard to the claim or right shall be final and binding upon all persons affected by the decision. The Board of Trustees shall establish a procedure for the presentation, consideration and determination of any claim or right, which shall comply with ERISA. No action may be brought for benefits under the Plan or to enforce any right or claim under the Plan or action which may be brought is one to enforce the decision of the Board to clarify the and determined by the Board consistent with the established procedure and the only rights of the claimant under the decision. Neither the Employers, any Signatory Association, any Individual Employer, the Union, any Local Union, any District Council, nor any of the Trustees shall be liable for the failure for any reason to pay any benefits under the Plan.

**Section 3.** Any notice required to be given under the terms of this Trust Agreement shall be deemed to have been duly served if delivered personally to the person to be noti- fied in writing or if mailed in a sealed envelope, postage prepaid, to that person at his last known address as shown in the records of the Fund, or if sent by wire to that person at his last known address.

**Section 4.** This Trust Agreement shall be binding upon and inure to the benefit of all Individual Employers who are now or may become members of an employer association or any Signatory Association, or who become in any other way a party to the Collective Bargaining Agreement and the heirs, executors, administrators, successors, purchasers, and assigns of the Employers, any Signatory Association and Individual Employer, the Union, any Employer or any Trustee.

**Section 5.** All questions pertaining to this Trust Agreement, the Plan, the rules and proce- dures, and their validity, administration or construction, shall be determined in accordance with the laws of the United States and any applicable laws of the State of California.

**Section 6.** If any provision of this Trust Agreement, the Plan, the rules and proce- dures, or any step in the administration of the Plan are held to be illegal or invalid for any reason, or to render payments to the Individual Employers into this Trust non-deductible for tax purposes or taxable to the Individual Employer, or to prevent or to defeat any other objective, that holding shall not affect the remaining portion of this Trust Agreement, the Plan or the rules and procedures, unless that holding prevents accomplishment of the

24

effectives and purposes of the Trust Agreement and Plan. In the event this occurs the necessary steps to remedy any defect shall be taken immediately.

Section 7. Except to the extent necessary for the proper administration of the Fund and the Plan, all books, records, papers, reports, documents or other information obtained with respect to the Fund or the Plan shall be confidential and shall not be made public or used for any other purposes. Nothing in this Section shall prohibit or interfere with the preparation and publication of statistical data and summary reports with respect to the operation of the Fund or the Plan nor the cooperation with benefit funds or plans authorized by other provisions of this Agreement.

Section 8. In the establishment and maintenance of the Plan, and in the execution of this Agreement, the Union acts for and on behalf of the Employers and as their collective bargaining representatives and agents, and every agreement or act of the Union in connection with the establishment, maintenance and operation of the Plan shall be deemed to be and is the agreement or act of the Employers, or Employee, concerned or affected by the agreement or action.

Section 9. In the establishment and maintenance of the Plan, and in the execution of this Agreement, the Employers act for and on behalf of the Individual Employers who, at the time of the execution of this Agreement are, or during the term become members of any of the Employers, and for and on behalf of any other Individual Employers who have agreed or during the term agree to comply with the wages, hours and working conditions of the Collective Bargaining Agreement. Every agreement or act of the Employers in connection with the establishment, maintenance and operation of the Plan shall be deemed to be and is the agreement or act of Individual Employers, or Individual Employer, concerned or affected by the agreement or action.

Section 10. Any payment required by a decision of the Board shall be due and payable in the City and County of San Francisco, California and any action or proceeding to enforce or clarify that decision shall be brought in a court of competent jurisdiction in that City and County. Any action or proceeding affecting the Fund, the Plan or the Trust shall be brought solely against the Fund as an entity, and solely by or on behalf of the claimant in the claims procedure established pursuant to Section 2 of this Article. Neither the Employers nor any Signatory Association or Individual Employer, the Union, any Local Union or District Council, any Beneficiary or other person shall be entitled to notice of any action or of proceeding or to service of process. Any final judgment entered in any action or proceeding shall be binding upon all of the parties so long as the judgment does not attempt or purport to impose any personal liability upon or against any party not joined or not served in any the action or proceeding.

## ARTICLE XI
## Non-Member Employers

Section 1. Any Individual Employer who is not a member of or represented by Employers or a Signatory Association but who is performing work coming within the jurisdiction of the Union, may become a party to this Agreement by executing in writing and depositing with the administrative office of the Board of Trustees his or its acceptance of this Trust Agreement, in a form acceptable to the Board.

Section 2. Any Individual Employer who executes and deposits a written acceptance, or who in fact makes one or more Contributions to the Fund, assumes and shall be bound by all of the obligations imposed by this Trust Agreement upon the Individual Employer, and is entitled to all rights under this Agreement and is otherwise subject to it in all respects

- 25 -

## ARTICLE XII
## Amendment and Termination

Section 1. The provisions of this Trust Agreement may be amended or modified at any time by mutual agreement of the Employers and the Union subject to the terms and conditions of the Collective Bargaining Agreement and any applicable law or regulation. Any amendment or modification may be executed in counterpart.

Section 2. Subject to the provisions of this Article and Article X, Section 6, of this Trust Agreement, this Trust is irrevocable and the provisions of this Trust Agreement shall continue in effect during the term of the Collective Bargaining Agreement, and any amendments, renewals or extensions which provide for the continuation of payments into the Fund, and for a period of 6 months following the termination of the last of the collective bargaining agreements which provides for the continuation of payments into the Fund.

Section 3. This Trust Agreement and the Trust may be terminated by the Employers and the Union by an instrument in writing executed by mutual consent at any time, subject to the provisions of Section 4 of this Article. Upon the termination of the Trust, any monies remaining in the Fund after the payment of all expenses and obligations of the Trust shall be paid or used for the continuance of one or more benefits in accordance with the provisions of the Plan, until the Fund is exhausted.

Section 4. In no event shall any amendment or modification of this Trust Agreement, or the termination of this Trust Agreement, result in any portion of the Fund reverting to, or being recoverable by, any of the Employers, any Signatory Association, any Individual Employer, the Union, any Local Union or District Council, or result in the diversion of any portion of the Fund to any purpose other than the exclusive benefit of Employees or their Beneficiaries under the Plan and the payment of the administrative expenses of the Fund and the Plan.

Section 5. In no event shall the Trust established by this Trust Agreement continue for a longer period than is permitted by law.

Executed as of May 20, 1997.

FOR THE EMPLOYERS:

ASSOCIATED GENERAL CONTRACTORS OF CALIFORNIA, INC.

By:   (Signed)    Thomas Holsman

CONSTRUCTION EMPLOYERS ASSOCIATION

By:   (Signed)    Michael Walton

HOME BUILDERS ASSOCIATION OF NORTHERN CALIFORNIA

By:   (Signed)    Paul Baldacci, Jr.

FOR THE UNIONS:

CARPENTERS 46 NORTHERN CALIFORNIA COUNTIES CONFERENCE BOARD

By:   (Signed)    Jim R. Green

By:   (Signed)    John Casey

26 -

## ACCEPTANCE OF OFFICE BY TRUSTEES

The undersigned accept office as Trustees appointed pursuant to this Agreement and agree to act under and be subject to all of the terms and conditions of this Agreement. The undersigned declare that they hold the Fund created by this Agreement in trust for the uses and purposes set forth in this Agreement.

Dated: May 1, 1972

| Initial Employer Trustees | Initial Employee Trustees |
|---|---|
| Paul R. Baldacci | Clement A. Clancy |
| Gordon W. Hanson | Phil Gillis |
| Budd O. Stevenson | Hoyle Haskins |
| R. Rothschild | A. A. Figone |

### SUBSTITUTION OF TRUSTEES
Changes in the composition of the Board of Trustees is available from the Carpenter Funds Administrative Office.

### SUBSTITUTION OF CORPORATE CO-TRUSTEE
Changes in the named Corporate Co-Trustees can be obtained from the Carpenter Funds Administrative Office.

### CHANGES IN CONTRIBUTION RATE
Changes in Contribution rate are available from the Carpenter Funds Administrative Office.

- 27 -

# CARPENTERS TRAINING TRUST FUND

# CARPENTERS TRAINING TRUST FUND
# FOR NORTHERN CALIFORNIA

## PLAN ADMINISTRATOR

### BOARD OF TRUSTEES

| Employer Trustees | Employee Trustees |
|---|---|
| Paul Baldacci, Jr. | John P. Casey |
| Donald F. Galino | John Crockett |
| Gary Kaian | Tom Eates |
| William Mohler | Jim R. Green |
| Dale Siudnam | William Napier |
| Howard Verrinder | Gary Pruit |
| Michael Walton | Leon Waggoner |

### FUND MANAGER
Carpenter Funds Administrative Office
of Northern California, Inc.
Houston D. Kemper, Secretary

### LEGAL COUNSEL
Stanton, Kay & Watson
and
Van Bourg, Weinberg, Roger & Rosenfeld

### CERTIFIED PUBLIC ACCOUNTANTS
Hemming Morse, Inc.

### INVESTMENT MANAGER
McMorgan & Company

### CORPORATE CO-TRUSTEE
Wells Fargo Bank, N.A.

- 2 -

# INDEX

| SUBJECT | PAGE |
|---|---|
| Parties to Agreement | 6 |
| Recitals of Agreement | 6 |

**ARTICLE I – DEFINITIONS**

| | SUBJECT | PAGE |
|---|---|---|
| Section 1 | Collective Bargaining Agreement | 6 |
| Section 2 | Individual Employer | 8 |
| Section 3 | Employee | 8 |
| Section 4 | District Council | 8 |
| Section 5 | Local Union | 8 |
| Section 6 | Signatory Association | 8 |
| Section 7 | Trust Agreement | 8 |
| Section 8 | Trustee | 8 |
| Section 9 | Board of Trustees | 8 |
| Section 10 | Training Fund | 8 |
| Section 11 | Program | 8 |
| Section 12 | Contribution | 9 |
| Section 13 | ERISA | 9 |

**ARTICLE II – TRUST FUND**

| | SUBJECT | PAGE |
|---|---|---|
| Section 1 | Establishment of Fund | 9 |
| Section 2 | Principal Office of Fund | 9 |
| Section 3 | Employee Rights Limited to Benefits | 9 |
| Section 4 | Administration of Fund - Exclusive Purpose | 9 |
| Section 5 | Rights of the Parties | 9 |
| Section 6 | Limitation of Liability | 9 |
| Section 7 | Non-Liability for Debts | 10 |
| Section 8 | Manner of Contributions - Due Dates | 10 |
| Section 9 | Delinquent Contributions - Liquidated Damages | 10 |
| Section 10 | Weekly Contributions | 10 |

**ARTICLE III – BOARD OF TRUSTEES**

| | SUBJECT | PAGE |
|---|---|---|
| Section 1 | Designation of Trustees | 11 |
| Section 2 | Selection of Chairman and Co-Chairman | 11 |
| Section 3 | Tenure of Office of Trustees | 11 |
| Section 4 | Trustee Resignation | 11 |
| Section 5 | Removal of Trustee from Office | 11 |
| Section 6 | Successor Trustees | 12 |

**ARTICLE IV – FUNCTIONS AND POWERS OF BOARD OF TRUSTEES**

| | SUBJECT | PAGE |
|---|---|---|
| Section 1 | Authority of Trustees | 12 |
| Section 1(A) | Appointment of Investment Manager | 12 |
| Section 1(B) | Allocation of Responsibilities | 12 |
| Section 1(C) | Designation of Persons to Carry Out Fiduciary Responsibilities | 12 |
| Section 1(D) | Employ Persons to Render Advice | 12 |
| Section 2 | Contributions Due and Payable | 12 |
| Section 3 | Demand and Enforce Payment of Contributions | 12 |
| Section 4 | No Limitation of Power | 13 |
| Section 4(A) | Pay Expenses to Establish Fund and Program | 13 |

1

Section 4(B)   Accumulate Reserve Funds .......... 13
Section 4(C)   Establish Funding Policy Consistent with ERISA .......... 13
Section 4(D)   Employ or Engage Personnel Consistent with ERISA .......... 13
Section 4(E)   Incur Reasonable Expense Incidental to Administration of Fund .......... 13
Section 4(F)   Compromise, Settle or Release Claims .......... 13
Section 4(G)   Invest and Reinvest Assets of the Fund .......... 14
Section 4(H)   Enter Into Contracts .......... 14
Section 4(I)   Sell, Exchange, Lease, Convey or Dispose of Property of the Fund .......... 14
Section 4(J)   Construe Provisions of Trust Agreement .......... 14
Section 4(K)   Pay Taxes .......... 14
Section 4(L)   Prepare and Furnish Periodic Reports .......... 14
Section 4(M)   Maintain Bank Accounts .......... 14
Section 4(N)   Adopt Rules and Procedures for Administration .......... 14
Section 4(O)   Borrow Money .......... 14
Section 4(P)   Exercise Powers Specified in Trust Agreement .......... 14
Section 5   Insurance and Bonding Protection .......... 14
Section 6   Maintain Records, Audit Employer Reports .......... 15
Section 7   Annual Audit of Fund .......... 15
Section 8   Reciprocity .......... 15
Section 9   Authority To Merge With Other Funds .......... 15

ARTICLE V – PROCEDURE OF BOARD OF TRUSTEES .......... 16
Section 1   Time of Regular and Special Meetings .......... 16
Section 2   Appointment of Secretary of Board .......... 16
Section 3   Manner of Voting .......... 16
Section 4   Place of Meeting .......... 16
Section 5   Board Action Without Meeting .......... 16

ARTICLE VI – CORPORATE CO-TRUSTEE OR CUSTODIAN .......... 17
Section 1   Appointment of Corporate Co-Trustee or Custodian .......... 17
Section 2   Corporate Co-Trustee or Custodian Neither Employer Nor Union Affiliation .......... 17
Section 3   Duties, Responsibilities, Rights and Powers of Corporate Co-Trustee or Custodian .......... 17

ARTICLE VII – GENERAL PROVISIONS APPLICABLE TO TRUSTEES .......... 17
Section 1   Provisions Subject to and Qualified by ERISA .......... 17
Section 2   Efficacy of Instruments Executed by Trustees .......... 17
Section 3   Duties, Responsibilities, Liabilities and Limitations of Trustees .......... 17
Section 4   Liability of Trustees in Performance of Duty .......... 18
Section 5(A)   Defense of any Civil Action or Proceeding .......... 18
Section 5(B)   Refuse Defense of a Civil Action or Proceeding .......... 18
Section 5(C)   Defense of Criminal Action or Proceeding .......... 18
Section 5(D)   Defense by Fund Counsel, Co-counsel, Other Counsel or Insurer .......... 18
Section 5(E)   Recover Reasonable Expenses to Retain Own Counsel for Defense .......... 18
Section 6   Liability of Signatories to Agreement or Program .......... 19
Section 7   Liability of Signatories for Actions of Trustees .......... 19

Section 8   Reimbursement of Trustee Expense .......... 19
Section 9   Surrender of Trust Property by Trustee on Resignation or Removal .......... 19
Section 10   Discriminatory Decisions of Trustees .......... 19
Section 11   Use of Name of Fund .......... 19

ARTICLE VIII – ARBITRATION .......... 19
Section 1   Action in Event of Deadlock .......... 19
Section 2   Appointment of Umpire in Event of Non-Agreement of Trustees .......... 20
Section 3   Expenses of Arbitration .......... 20
Section 4   Matters Subject to Arbitration .......... 20

ARTICLE IX – GENERAL PROVISIONS
Section 1   Effect of Agreement on Parties .......... 20
Section 2   Manner of Delivering Notices .......... 20
Section 3   Parties Bound by Trust Agreement .......... 20
Section 4   Decision of the Board of Trustees Final and Binding as to Disputes .......... 20
Section 5   Severability .......... 20
Section 6   Records Shall be Confidential .......... 20
Section 7   Union Acts on Behalf of Employees .......... 21
Section 8   Employers Act on Behalf of Individual Employers .......... 21
Section 9   Tax Exemption .......... 21
Section 10   Venue in City and County of San Francisco .......... 21

ARTICLE X – NON-MEMBER EMPLOYER .......... 21
Section 1   Acceptance of Individual Employer .......... 22
Section 2   Rights and Obligations of Individual Employers .......... 22

ARTICLE XI – AMENDMENT AND TERMINATION .......... 22
Section 1   Amendment or Modification of Trust Agreement .......... 22
Section 2   Term of Trust Agreement .......... 22
Section 3   Termination of Trust Agreement .......... 22
Section 4   Disposition of Monies in Fund on Termination .......... 22
Section 5   Life of Trust .......... 22

Signatory Parties .......... 23
Acceptance of Office by Trustees .......... 23
Substitution of Trustees .......... 24
Substitution of Corporate Co-Trustee .......... 24
Changes in Contribution Rate .......... 24

AMENDED AND RESTATED TRUST AGREEMENT
ESTABLISHING THE
CARPENTERS TRAINING TRUST FUND
FOR NORTHERN CALIFORNIA
April, 1997

This TRUST AGREEMENT, was entered into on March 4, 1963, by and between the Eight Employer Associations, consisting of Peninsula General Contractors and Builders Association, Inc., Marin Builders Association, Inc., General Building Contractors Association of San Francisco, Associated Home Builders, Inc. (San Francisco), Associated Home Builders of the Greater East Bay, Inc., General Contractors and Builders Association of the East Bay and Northern and Central California Chapter, the Associated General Contractors of America, Inc., acting for the bargaining unit covered by the Carpenters 4 Bay Counties Master Agreement, Northern and Central California Chapter, the Associated General Contractors of America, Inc., and Piledriving Contractors Association, acting for the bargaining unit covered by the Piledrivers Master Agreement and Central California Chapter, the Associated General Contractors of America, Inc., acting for the bargaining unit covered by the Carpenters 42 Northern California Counties District Council of Carpenters, A.F.L.-C.I.O., act-ing for the bargaining unit covered by the Carpenters 4 Bay Counties Master Agreement, the Piledrivers, Bridge, Wharf and Dock Builders Local Union No. 34 and The United Brotherhood of Carpenters and Joiners of America, acting for the bargaining unit covered by the Piledrivers Master Agreement, and The United Brotherhood of Carpenters and Joiners of America acting for the bargaining unit covered by the Carpenters 42 Northern California Counties Master Agreement, referred to collectively as the "UNION," recites and provides as follows:

RECITALS:

1. Since the establishment of the Training Trust Fund for Northern California:

(A) The "Employers" have been succeeded through historical collective bargaining procedures in the area by Associated General Contractors of California, Inc., Construction Employers Association and Home Builders Association of Northern California which now constitute the entity referred to collectively as the "Employers";

(B) The 46 Northern California Counties Carpenters Agreement, 1971-1974, and the succeeding Agreement for 1974/1977 is the successor to the collective bargaining agreements previously referred to as the Carpenters 4-Bay Counties Master Agreement and the Carpenters 42 Northern California Counties Master Agreement;

(C) The Union has been succeeded through historical collective bargaining proce-dures in the area by the Carpenters 46 Northern California Counties Conference Board which now constitutes the entity referred to as the Union.

2. The Piledriving Contractors are parties to a collective bargaining agreement with the Piledrivers Union Local No. 34 and the United Brotherhood known as the Piledrivers Master Agreement dated June 28, 1962, which provided in Section VII-D as follows:

"For all work performed on or after June 16, 1962 each individual employer covered by this Agreement shall contribute one-half (1/2) cent per hour worked by employees in the classification covered by this Agreement and

- 6 -

employed by such individual employer, to the Carpenters 4 Bay Counties Apprenticeship Trust Fund. On shift work the employer contribution shall be based on hours paid instead of hours worked."

3. In addition, various Individual Employers performing work within the area covered by one or more of the Master Agreements are now or will become parties to collective bargaining agreements with one or more of the unions providing that the Individual Employers will comply with the wages, hours and working conditions as set forth in one or more of the Master Agreements, or providing for payments to the apprenticeship train-ing programs for Employers covered by collective bargaining agreements.

4. Pursuant to the Master Agreement and other collective bargaining agreements, sub-committees were established upon which the Employers and the Union were equally rep-resented and the subcommittees negotiated the details of the apprenticeship and training programs referred to in those agreements which include the details of the Trust.

5. Upon completion of the negotiations the Joint Employer-Union Subcommittee established pursuant to the Carpenters 4 Bay Counties Master Agreement dated August 20, 1962, the Piledrivers Master Agreement dated June 28, 1962 and the Carpenters 42 Northern California Counties Master Agreement dated June 16, 1962 entered into Escrow Agreements with the Crocker-Anglo National Bank effective as of November 14, 1962 providing for the payment of the Contributions coming due under the collective bargain-ing agreements for work performed on and after June 16, 1962 as it applies to the 4 Bay Counties Master and the Piledrivers Master Agreement and for work per-formed on and after July 1, 1962 as it applies to the Carpenters 42 Northern California Counties Master Agreement into escrow accounts with the Bank, known respectively as the 4 Bay Counties Joint Industry Apprenticeship Trust Fund, Escrow Account and 42 Northern California Counties Carpenters Joint Industry Apprenticeship Trust Fund, Escrow Account pending the execution of this Trust Agreement, and under the Escrow Agreements, Contributions have been paid by Individual Employers into those accounts.

6. The subcommittees agreed that the apprenticeship and training programs specified in the agreements should be consolidated into one Apprenticeship and Training Fund in order to provide the greatest possible benefit to the participating Individual Employers and Employees and agreed to the establishment of this Fund to be known as the Carpenters Training Trust Fund for Northern California. The apprenticeship and training program and Trust designated by the Joint Employer-Union Subcommittees are declared to be the program and Trust referred to in the Escrow Agreements with the Crocker-Anglo National Bank effective as of November 14, 1962.

7. This Fund is being created and the Training Programs implemented, each of which shall at all times conform to the applicable requirements of the Labor-Management Relations Act of 1947, as amended and be qualified pursuant to the applicable provisions of the Internal Revenue Code, as amended, for all available exemptions and immunities.

8. The subcommittees referred to in the agreements negotiated the following terms and provisions of the Trust Agreement governing the establishment and administration of the Carpenters Training Trust Fund for Northern California.

9. The Employers and the Union agree that this Trust Agreement shall be and is restated and amended to conform with all of the requirements of the Employee Retirement Income Security Act of 1974, as amended, and any valid regulations issued consistent with ERISA.

7

Exh. A - Part 3

PROVISIONS:

In consideration of the foregoing, and of the mutual promises stated, the parties agree as follows:

Unless the context or subject matter otherwise requires, the following definitions shall govern in this Trust Agreement:

**Section 1.** The term "Collective Bargaining Agreement" includes: (a) the Carpenters 46 Northern California Counties Master Agreement dated June 28, 1962, and, (c) any other collective bargaining drivers Master Agreement dated June 16, 1971; (b) the Pile-agreement other than the Collective Bargaining Agreements referred to above which is approved by the Carpenters 46 Northern California Counties Conference Board to be defined as a Collective Bargaining Agreement for the purposes of contributions to the Training Program or the Training Trust Fund.

**Section 2.** The term "Individual Employer" means any individual employer who is required by the Collective Bargaining Agreement to make Contributions to the Training Trust Fund or who in fact makes one or more Contributions to the Fund.

**Section 3.** The term "Employee" means any employee of an Individual Employer who performs one or more hours of work covered by the Collective Bargaining Agreement.

**Section 4.** The term "District Council" means any district council in the 46 Northern California Counties affiliated with United Brotherhood of Carpenters and Joiners of America, AFL-CIO, and the Carpenters 46 Northern California Counties Conference Board.

**Section 5.** The term "Local Union" means any local union in the 46 Northern California Counties affiliated with the United Brotherhood of Carpenters and Joiners of America, AFL-CIO, and the Carpenters 46 Northern California Counties Conference Board.

**Section 6.** The term "Signatory Association" means any employer organization, other than one of the Employers, which signs this Trust Agreement on behalf of its members any or executes on behalf of its members any agreement to be bound by the terms of this Trust Agreement.

**Section 7.** The term "Trust Agreement" means this agreement and any modification, amendment, extension or renewal.

**Section 8.** The term "Trustee" means any natural person designated as Trustee pursuant to Article III.

**Section 9.** The terms "Board of Trustees" or "Board" mean the Board of Trustees established pursuant to Article III.

**Section 10.** The terms "Training Fund" or "Fund" mean the Trust Fund created and established by this Trust Agreement.

**Section 11.** The term "Program" means the Training Program created pursuant to the Collective Bargaining Agreement and any modification or amendment, of the program or programs. The term shall also include any arrangement, agreement or plan established, supported or maintained, by the Board @ Trustees in the accomplishment of the purposes of this Trust which provides for the education or training of persons as journeymen or apprentices in all classifications covered by any collective bargaining agreement, and any modification or amendment, of that agreement.

— 8 —

# ARTICLE I
## Definitions

**Section 12.** The term "Contribution" means the payment made or to be made to the Fund by any Individual Employer under the provisions of the Collective Bargaining Agreement.

**Section 13.** The term "ERISA" means the Employee Retirement Income Security Act of 1974, 29 U.S.C. Section 1001 et seq., as amended and any valid regulations issued consistent with that Act.

# ARTICLE II
## Trust Fund

**Section 1.** The Carpenters Training Trust Fund for Northern California shall consist of all Contributions required by the Collective Bargaining Agreement to be made for the establishment and maintenance of the programs, and any interest, income and other returns of any kind, and any other property received or held by reason of or pursuant to the Trust.

**Section 2.** The Fund shall have its principal office in San Francisco, California, or any other place designated by the Board of Trustees.

**Section 3.** No Employee or any other person shall be entitled to receive any part of the Contributions made or to be made to the Fund, except as may be lawfully provided by a Program.

**Section 4.** The Fund shall be administered by the Board of Trustees for the exclusive benefit of Employees pursuant to the provisions of the Training Program. Notwithstanding anything to the contrary contained in this Trust Agreement or in the Program, or any modification, amendment, extension or renewal, no portion of the Fund shall at any time revert to, or be recoverable by, any of the Employers, any Signatory Association, any Individual Employer, the Union, any Local Union, or District Council, or be used for, or diverted to, purposes other than for the exclusive benefit of Employees under the Program, and the payment of administration expenses of the Fund and the Program except for Contributions, which may be refunded to an Individual Employer under applicable law.

**Section 5.** Neither the Employers, any Signatory Association, any Individual Employer, the Union, any Local Union, any District Council, any Employee or any other person under the Programs nor any other person shall have any right, title or interest in or to the Fund other than as specifically provided in this Trust Agreement or in the Programs. Neither the Fund nor any Contributions to the Fund shall be in any manner liable for or subject to the debts, contracts or liabilities of any of the Employers, any Signatory Association, any Individual Employer, the Union, any Local Union, any District Council or any Employee.

**Section 6.** Neither the Employers or any Signatory Association, nor any officer, agent, employee or committee member of the Employers or any Signatory Association shall be liable to make Contributions to the Fund or be under any other liability to the Fund, except to the extent that he or it may be an Individual Employer required to make Contributions to the Fund with respect to his or its own individual or joint venture operations, or to the extent he or it may incur liability as a Trustee. The liability of any Individual Employer to the Fund, shall be limited to the payments required by the Collective Bargaining Agreement and by this Trust Agreement with respect to his or its individual or joint venture operations, and in no event shall he or it be liable or responsible for any portion of the Contributions due from other Individual Employers with respect to the operations of other Individual Employers. The basis on which payments are

made to the Fund shall be as specified in the Collective Bargaining Agreement, and in this Trust Agreement and the Individual Employers shall not be required to make any Contributions to the Fund, except as may be provided in those agreements.

Section 7. Neither the Employers, any Signatory Association, any Individual Employer, the Union, any Local Union, any District Council nor any Employee shall be liable or responsible for any debts, liabilities or obligations of the Fund or the Trustees.

Section 8. Contributions shall be paid into the Fund in a manner and with any reports the Board of Trustees may prescribe. Contributions with respect to work performed during any calendar month shall be made on or before the 15th day of the succeeding month and each monthly payment shall include all unpaid Contributions which accrued for work performed up to the close of the Individual Employer's payroll period ending closest to the last day of the preceding calendar month. Contributions shall be payable in San Francisco, California, at a place the Board of Trustees shall designate.

Section 9. Each monthly Contribution to the Fund shall be made promptly but in no event later than the 25th day of the calendar month in which it becomes payable, on which date the Contribution, if not paid in full shall be delinquent. If any Individual Employer fails to make his or its monthly Contribution in full on or before the 25th day of the month on 4 occasions within any 12-month period, the Board of Trustees may provide by resolution that during the 12-month period immediately following the resolution the 15th of the month shall be the delinquency date for that Individual Employer.

The parties recognize and acknowledge that the regular and prompt payment of monthly Contributions to the Fund is essential to the maintenance in effect of the Programs and that it would be extremely difficult, if not impracticable, to fix the actual expense and damage to the Fund and to the Programs resulting from any failure of an Individual Employer to pay Contributions in full within the time prescribed. Therefore, the amount of damage to the Fund and the Programs resulting from any failure to pay shall be presumed to be the sum of $2.00 or 10% of the amount of the Contribution or Contributions due, whichever is greater. This amount shall become due and payable to the Fund as liquidated damages and not as a penalty in San Francisco, California, upon the day immediately following the day on which the Contribution or Contributions become delinquent and shall, be in addition to the delinquent Contribution or Contributions. The Contributions, as increased, shall be the payments required to be made to the Fund.

Section 10. The Board of Trustees may adopt and from time to time amend, revise or repeal rules and regulations establishing a procedure for an Individual Employer who is delinquent in making Contributions as provided in Article II, Sections 8 and 9, and may require Contributions to be made to the Fund on a weekly rather than a monthly basis and to remit each weekly Contribution to the Fund accompanied by a report of contribution in an envelope postmarked not later than midnight on Friday of the week for which the Contribution is due. Any Individual Employer to whom these rules and regulations apply shall make Contributions to the Fund in accordance with the rules and regulations with respect to any weekly Contribution which is not paid within the time provided in the rules and regulations, except that the amount of liquidated damages shall be the $1.00 per delinquency or 20% of the amount of the Contribution or Contributions due, whichever is greater.

- 10 -

## ARTICLE III
## Board of Trustees

Section 1. The Fund shall be administered by a Board of Trustees which shall consist of seven Trustees representing the Individual Employers and seven Trustees representing the Employees. The Trustees representing the Individual Employers shall be appointed in writing by the Employers as follows: Two shall be appointed by Associated General Contractors of California, Inc., or its successor; Two shall be appointed by Construction Employers Association or its successor; and Two shall be appointed by Home Builders Association of Northern California or its successor; and, One shall be appointed by an employer association other than Associated General Contractors of California, Inc., Construction Employers Association or Home Builders Association of Northern California or shall be proposed by an independent employer. This Trustee shall be appointed only by the unanimous vote of Associated General Contractors of California, Inc., Construction Employers Association and Home Builders Association of Northern California or their respective successors.

No employer association or its successor shall continue to have appointing authority pursuant to this Section unless that association or its successor is signatory to the Collective Bargaining Agreement with the Union on behalf of its members or a multi-employer unit which it represents for the purposes of collective bargaining with the Union.

If an employer association or its successor ceases to be bound to the Collective Bargaining Agreement with the Union, any Trustee appointed by that association or its successor shall be deemed to have resigned and a successor Trustee shall be appointed by the employer associations designated above or their successors who remain signatory to the Collective Bargaining Agreement with the Union. The Employers designated pursuant to the above provisions are irrevocably designated by each Individual Employer as his or its attorney-in-fact for the purposes of appointing and removing Trustees and successor Trustees.

The Trustees representing the Employers shall be appointed by instrument in writing signed by the Executive Officer of the Union.

The Employers and the Union expressly designate the Trustees jointly as named fiduciaries, who shall have exclusive authority and discretion acting as the Board of Trustees to control and manage the operation and administration of the Fund. Each of the Trustees expressly accepts designation as a fiduciary and as Trustee by written acceptance and signifies the Trustees as created and established by this Trust Agreement and under applicable law. Any successor Trustee shall do likewise by signing the Trust Agreement or a written acceptance, in a form approved by and filed with the Board of Trustees.

Section 2. The Trustees shall select one of their number to act as Chairman of the Board of Trustees and one to act as Co-Chairman, each to serve for a period of time determined by the Trustees. When the Chairman is selected from among the Employer Trustees, the Co-Chairman shall be selected from among the Employee Trustees and vice versa. Neither the Chairman nor Co-Chairman shall succeed himself.

Section 3. Each Trustee shall serve until his death, resignation or removal from office.

Section 4. An Employer Trustee shall be deemed to have resigned under the circumstances specified in Section 1 of this Article. Any other Trustee may resign at any time by serving written notice of his resignation upon the Secretary of the Board of Trustees at

11

– 12 –

level 10 days prior to the date on which his resignation is to be effective. The Secretary shall promptly notify in writing the Chairman and Co-Chairman of the Board and the Employers and Union of the resignation of a Trustee.

**Section 5.** Any Employer Trustee may be removed from office at any time, for any reason, by a writing signed by the employer association having appointing authority with respect to that Trustee and served on the Secretary of the Board of Trustees. Any Employee Trustee may be removed from office at any time, for any reason, by a writing signed by the Executive Officer of the Union and served on the Secretary of the Board of Trustees. The Secretary shall promptly notify in writing the Chairman and Co-Chairman of the Board, the Trustee being removed, and the Union or Employers, as the case may be, of the removal.

The Board of Trustees may remove any Trustee from office who has missed 3 consecutive Board of Trustees' meetings without a sufficient reason or justification which is acceptable to the Trustees.

**Section 6.** If any Employer Trustee dies, resigns or is removed from office, a successor Trustee shall be promptly appointed by an instrument in writing signed by the employer association having appointing authority with respect to that Trustee. If any Employee Trustee dies, resigns, or is removed from office, a successor Trustee shall be promptly appointed by an instrument in writing signed by the Executive Officer of the Union.

## ARTICLE IV
## Functions and Powers of Board of Trustees

**Section 1.** The Board of Trustees shall have the power and duty to administer the Fund, to establish, support or maintain Programs, and pay out the assets of the Fund for the purpose of educating and training persons as journeymen or apprentices in all classifications covered by the Collective Bargaining Agreement, to the end that there shall be an adequate supply of educated and skilled journeymen available to man the jobs of Individual Employers.

The Board of Trustees acting jointly shall have the power to control and manage the assets, operation and administration of the Fund as a fiduciary and shall exercise that authority with the care, skill, prudence and diligence under the prevailing circumstances that a prudent board acting in a like capacity and familiar with these matters would use in the conduct of an enterprise of like character and with like aims; provided, however, that the Board may:

(A) Appoint an investment manager or managers (as defined in ERISA) to manage (including the power to acquire and dispose of) any assets of the Fund;

(B) To enter into an agreement allocating among Trustees the responsibilities, obligations, or duties as the Board shall determine;

(C) Designate persons other than named fiduciaries to carry out fiduciary responsibilities (other than Trustee responsibilities) under this Trust Agreement; and

(D) Employ one or more persons to render advice with regard to any responsibility the Board has under this Trust Agreement.

Any person or entity so appointed, designated or employed shall act solely in the interests of the journeymen and apprentices for the stated purposes.

**Section 2.** All Contributions to the Fund shall be due and payable in San Francisco, California, and shall be paid to, received and held by the Fund subject to this Trust

Agreement and all its terms and provisions. The acceptance and cashing of any checks for Contributions, and the disposition of the monies in accordance with this Trust Agreement shall not release or discharge the Individual Employer from his or its obligation under the Collective Bargaining Agreement for hours worked under that agreement for which no Contribution has actually been received, notwithstanding any statement, restriction or qualification appearing on the check or any attachment. The Board of Trustees may direct that any check may be a single check covering monies payable to one or more other Funds and may join with the boards of trustees of the other funds in instructing the bank or banks with regard to the allocation of the monies covered by the check among the funds. In the event these instructions are given, they shall be binding upon the bank or banks, the Individual Employer, the Employers, the Employees, the Union and all other parties.

**Section 3.** The Board of Trustees shall have the power in the name of the Fund or otherwise, as in its discretion may be deemed necessary or desirable, to demand and enforce, by suit in court or otherwise, the prompt payment of Contributions to the Fund, including payments due to each Individual Employer as provided in Article II, Section 9, without being limited or restricted by any grievance or arbitration procedures provided in the Collective Bargaining Agreement. In addition, the Board shall have the right to assert or enforce all priorities, lien rights, and other claims or rights with respect to any Contributions or payments belonging to the Fund, Trust or any of its participants, including the right to file priority and other claims in bankruptcy.

If any Individual Employer defaults in the making of Contributions or payments and if the Board consults legal counsel, or files any suit or claim, there shall be added to the obligation of the Individual Employer who is in default, reasonable attorney's fees, court costs and all reasonable expenses incurred in connection with the suit or claim, including any and all appellate proceedings.

**Section 4.** Without limitation of the provisions of Section 1 of this Article, the Board of Trustees shall have power:

(A) To pay out of the Fund the reasonable expenses incurred in the establishment of the Fund;

(B) To establish and accumulate reserve funds as may be adequate to provide for administration expenses and other obligations of the Fund;

(C) To provide a procedure for establishing and carrying out a funding policy consistent with the objectives of the Training Program and the requirements of ERISA;

(D) To employ or engage executive, consultant, actuarial, accounting, administrative, clerical, secretarial, legal or other employees, assistants or advisers, as may be necessary in connection with the administration of the Fund and to pay out of the Fund the compensation and necessary expenses of those employees, assistants or advisers and the cost of office space, furnishings and supplies and other essentials required in the administration. If the Board is unable to agree upon the employment of either a consultant or an attorney pursuant to this clause, the Employer Trustees and the Employee Trustees may each select either a consultant or an attorney, or both, as the case may require, who shall be directed to act jointly in connection with the administration of the Fund and the reasonable cost of the advice or services shall be paid from the Fund;

(E) To incur and pay out of the Fund any and other expense reasonably incidental to the administration of the Fund;

(F) To compromise, settle, or release claims or demands in favor of or against the Fund on any terms and conditions the Board may deem desirable, including the power to continue, maintain and from time to time modify or revoke, in whole or in part, a policy

and procedure for the waiver of all or any part of the liquidated damages portion of any Contribution or Contributions upon terms and conditions the Board determines would be in the interest of the Fund and its participants. However, this clause shall not excuse a violation of any of the collective bargaining agreements;

(ii) If no investment manager is designated and appointed by the Board of Trustees, to invest and reinvest the assets of the Fund in accordance with all applicable laws. Investments may be made with a bank or other fiduciary to the fullest extent permitted by law. No indicia of ownership shall be maintained outside the jurisdiction of the district courts of the United States, except to the extent permitted by law;

(ii) To enter into contracts in its own name or in the name of the Fund to provide any or all of the administrative requirements specified in this Trust Agreement, to terminate, modify or renew any contracts subject to the provisions of the Trust and to exercise and claim all rights and benefits granted to the Board or the Fund by those contracts;

(J) To construe the provisions of this Trust Agreement and the Program and any construction adopted by the Board in good faith shall be binding upon any and all parties or persons;

(K) To pay any and all real or personal property taxes, income taxes, or other taxes or assessments of any kind levied or assessed upon or with respect to the Fund.

(L) To prepare reports, descriptions, summaries and other information required by law or as the Board of Trustees in its discretion deems necessary or advisable and to file and furnish these reports, descriptions, summaries and information to the Employers, the Union, Individual Employers, the Trustees, the Employees or other persons or entities, including government agencies;

(M) To maintain a bank account or bank accounts as may be necessary or advisable in the administration of the Fund and to designate the person or persons authorized to sign checks and withdrawal orders on any accounts;

(N) To prescribe and adopt reasonable rules and procedures, which shall not be inconsistent with the provisions of this Trust Agreement or of the Programs, governing the reporting of Contributions, the entitlement to program benefits and any and all other matters in connection with the Fund;

(O) To borrow money and to encumber or hypothecate real or personal property by mortgage, deed of trust (with power of sale), contract of sale, security agreement, pledge or otherwise; to borrow money on the credit of the trust estate; and to purchase real or personal property subject to and assume the obligation secured by a mortgage, deed of trust (with power of sale), contract of sale, security agreement, pledge or otherwise; and

(P) To exercise and perform any and all the other powers and duties specified in this Trust Agreement.

Section 5. The Board of Trustees shall provide at the expense of the Fund, where applicable law, insurance and bonding protection for the Fund and for each Trustee, former Trustee or estate of a deceased Trustee or former Trustee, and for each Trustee, former Trustee or estate of deceased Trustee or former Trustee, and all other persons who handle funds or other property of the Fund for any purpose whatsoever. The protection shall be from companies and with limits determined by the Board

- 14 -

Section 6. The Board of Trustees shall maintain suitable and adequate records of and for the administration of the Fund and Program. The Board may require the Employers, any Signatory Association, any Individual Employer, the Union, any Local Union or District Council or any Employee to submit to it any information, data, reports or documents reasonably relevant to and suitable for the purposes of administration. However, the Union, Local Unions and District Council shall not be required to submit membership lists. The parties agree that they will use their best efforts to secure compliance with any reasonable request of the Board for any information, data, report or documents. Upon a written request from the Board, each Individual Employer will permit a certified public accountant selected by the Board to enter upon the premises of the Individual Employer during business hours, at a reasonable time or times, and to examine and copy books, records, papers or reports of the Individual Employer as necessary to determine whether the Individual Employer is making full and prompt payment of all sums required to be paid by him or it to the Fund. In addition, each Individual Employer shall comply with all of the terms and conditions of the 46 Counties Agreement with regard to audits.

Any action to secure compliance with the provisions of this Section or any other provision of the Trust Agreement, to enforce the prompt payment of Contributions or any other sums owed to the Fund, or arising out of any dispute concerning the interpretation, application or enforcement of this Section or or of any other provision of the Trust Agreement, shall be brought and tried in a court of competent jurisdiction located in the City and County of San Francisco, and each party to the action expressly waives any right to change the venue of the action to any other county or to any other place.

Section 7. The books of account and records of the Board of Trustees, including the books of account and records pertaining to the Fund shall be audited at least once a year by an independent qualified public accountant engaged by the Board on behalf of all Program participants who shall conduct an examination of any financial statements of the Fund and Program, and of other books and records of the Fund and Program required by ERISA. A statement of the results of the annual audit shall be available for inspection by interested persons at the principal office of the Fund and at any other suitable place the Board may designate. Copies of the statement shall be delivered to the Employer, the Union and each Trustee within 10 days after the statement is prepared. The Board shall also prepare all other reports required by law.

Section 8. Compatible with equitable principles and to the extent that sound accounting principles permit, the Board of Trustees may coordinate its activities in the administration of the Fund with the administrative activities of the governing board or boards of any other fund or funds, established for employees in the building and construction industry in California to the extent and upon any terms as may be deemed necessary or desirable by the Board, including the entering into and performance of agreements or arrangements with any board or boards providing for reciprocity or transfer or exchange of Contributions between or among the funds or upon any terms as the Board may determine are for the best interests of the administration of the Fund and the participants.

Section 9.

(A) The Board of Trustees may enter into an agreement with the board of trustees of any other apprenticeship and training trust fund, which is established or maintained pursuant to a collective bargaining agreement, providing for the consolidation, merger, or amalgamation of the Fund with any other funds, upon terms and conditions the Board shall determine, subject to the prior written approval of the agreement by the Employers and the Union, and may accept the transfer of monies, accounts, contracts, liabilities, property and any other investments or rights, provide for the continuation of programs and otherwise execute and carry out the terms of the agreement.

15

(ii) In the event the Board of Trustees approves the consolidation, merger or amalgamation of the Fund, the Board of Trustees shall have the power to appoint an equal number of employer trustees and employee trustees from the existing board of trustees of the merging fund to the Board of Trustees. These trustees shall serve at the discretion of the Board of Trustees and for as long as the Board of Trustees may deem desirable.

## ARTICLE V
## Procedure of Board of Trustees

**Section 1.** The Board of Trustees shall determine the time and place for regular periodic meetings of the Board. Either the Chairman or the Co-Chairman, or any four members of the Board, may call a special meeting of the Board by giving written notice to all other Trustees of the time and place of the meeting at least five days before the date set for the meeting. Any notice of a special meeting shall be sufficient if sent by ordinary mail to the Trustee at his address shown in the records of the Board. Any meeting at which all Trustees are present, or concerning which all Trustees have waived notice, in writing, shall be a valid meeting without the giving of any notice.

**Section 2.** The Board shall appoint a secretary who shall keep minutes or records of all meetings, proceedings and acts of the Board. The minutes need not be verbatim.

**Section 3.** The Board shall not take any action or make any decision on any matter coming before it or presented to it for consideration or exercise any power or right given or reserved to it or conferred upon it by this Trust Agreement except upon a vote of a majority of all 14 of the Trustees at a meeting of the Board duly and regularly called or except by the signed concurrence of all 14 Trustees without a meeting, as provided in Section 5 of this Article.

In the event of the absence of any Employer Trustee from a meeting of the Board, the Employer Trustees present at the meeting may vote on behalf of the absent Trustee and if the Employer Trustees cannot all agree as to how the vote of the absent Employer Trustee shall be cast, then it shall be cast as a majority of them shall determine or, in the absence of a majority determination, as it is cast as the Employer Trustee Chairman or Co-Chairman of the Board shall determine. In the event of the absence of any Employee Trustee from a meeting of the Board, the Employee Trustees present at the meeting may vote on behalf of the absent Trustee pursuant to the same method and in the same manner as provided for Employer Trustees to cast the vote of any absent Employer Trustee.

At the request of any Trustee, made either before or after the taking of a vote on any matter coming before the Board, the action or decision of the Board on the matter shall be by unit vote, that is, the vote of the Employer Trustees on the action or decision shall be determined by the majority of all Employer Trustees and the vote of the Employee Trustees on the action or decision shall be determined by the majority of all Employee Trustees.

**Section 4.** All meetings of the Board shall be held at the principal office of the Fund unless another place is designated from time to time by the Board.

**Section 5.** Upon any matter which may properly come before the Board of Trustees, the Board may act in writing without a meeting, provided the action has the concurrence of all of the Trustees.

– 16 –

## ARTICLE VI
## Corporate Co-Trustee or Custodian

**Section 1.** The Corporate Co-Trustee or Custodian and any successor may be appointed by the Board of Trustees.

**Section 2.** The Corporate Co-Trustee or Custodian shall not be a representative of either the Employers or the Unions.

**Section 3.** The duties, responsibilities, rights, and powers of the Corporate Co-Trustee or Custodian shall be those delegated to it by the Board of Trustees and shall be set forth in a contract between the Board and the Corporate Co-Trustee or Custodian. If so designated, the Corporate Co-Trustee or Custodian shall act as a fiduciary.

## ARTICLE VII
## General Provisions Applicable to Trustees

**Section 1.** The provisions of the Article are subject to and qualified by the provisions of ERISA to the extent that those provisions are constitutionally applicable. In order to induce experienced, competent and qualified persons and entities to serve as fiduciaries, to deal with the Fund and the Board of Trustees and to participate in other ways in the administration and operation of the Fund and Program and to further the interests of the participants in the Program, it is the intent and purpose of the parties to provide the maximum permissible protection and indemnification of the persons or entities from and against personal liability, loss, cost or expense as a result of service, dealing or participation, and the provisions of this Article shall be liberally construed and applied to accomplish this objective.

**Section 2.** No party who has verified that he or it is dealing with the duly appointed Trustees shall be obligated to see to the application of any money or property of the Fund, or to see that the terms of this Trust Agreement have been complied with, or to inquire as to the necessity or expedience of any act of the Trustees. Every instrument executed by the Board of Trustees or by its direction shall be conclusive in favor of every person who relies on it, that (a) at the time of the delivery of the instrument this Trust Agreement was in full force and effect, (b) the instrument was executed in accordance with the terms and conditions of this Trust Agreement, and (c) the Board was duly authorized to execute the instrument or direct its execution.

**Section 3.** The duties, responsibilities, liabilities and limitations of any Trustee under this Trust Agreement shall be determined solely by the express provisions of this Trust Agreement and no further duties, responsibilities, liabilities or limitations shall be implied or imposed.

**Section 4.** The Trustees shall incur no liability, either collectively or individually, in acting upon any papers, documents, data or information believed by them to be genuine and accurate and to have been made, executed, delivered or assembled by the proper parties. The Trustees may delegate any of their ministerial powers or duties to any of their agents or employees. No Trustee shall incur any liability for simple negligence, oversight or carelessness in connection with the performance of his duties as a Trustee. No Trustee shall be liable for the act or omission of any other Trustee. The Fund shall exonerate, reimburse and save harmless the Trustees, individually and collectively, against any and all liabilities and reasonable expenses arising out of their trusteeship, except (as in the case of an individual Trustee or Trustees directly involved) for their trusteeship, except as to any individual Trustee or Trustees directly involved) for expenses and liabilities arising out of willful misconduct or gross negligence. No expense shall be deemed reasonable under this Section unless and until approved by the Board of Trustees.

17

Section 5.

(A) Except as otherwise provided in Subsection (B) of this Section, upon request of a Trustee or former Trustee, or the legal representative of a deceased Trustee or former Trustee, the Board of Trustees shall provide for the defense of any civil action or proceeding brought against the Trustee, or former Trustee or estate of a deceased Trustee or former Trustee, in his capacity as a Trustee or former Trustee or in his individual capacity or in both, on account of any act or omission in the scope of his service or duties as a Trustee of the Fund. For the purposes of this Section, a cross-action, counterclaim, cross-complaint or administrative or arbitration proceeding against a Trustee or former Trustee or estate shall be deemed to be a civil action or proceeding brought against him or it.

(B) The Board of Trustees may refuse to provide for the defense of a civil action or proceeding brought against a Trustee or former Trustee or estate if the Board determines that:

(1) The act or omission was not within the scope of his service as a Trustee of the Fund; or

(2) He acted or failed to act in breach of his fiduciary duty because of willful misconduct or gross negligence; or

(3) The defense of the action or proceeding by the Board would create a conflict of interest between the Board or Fund and the Trustee, former Trustee or estate.

(C) The Board may provide for the defense of a criminal action brought against a Trustee or former Trustee if:

(1) The criminal action or proceeding is brought on account of an act or omission in the scope of his services or duties as a Trustee or former Trustee; and

(2) The Board determines that the defense would be in the best interests of the Fund and its participants and beneficiaries and that the Trustee or former Trustee acted, or failed to act, in good faith, without actual malice and in the apparent interests of the Fund and its participants and beneficiaries.

(D) The Board may provide for a defense pursuant to this Section by Fund counsel or co-counsel or by employing other counsel or by purchasing insurance which requires that the insurer provide the defense. All of the expenses of providing a defense pursuant to this Section are proper charges against the Fund. The Fund shall have no right to recover these expenses from the Trustee, former Trustee or estate.

(E) If after request the Board fails or refuses to provide a Trustee, former Trustee or estate with a defense against a civil action or proceeding brought against him or it and the Trustee or former Trustee or legal representative retains his own counsel to defend the action or proceeding, he shall be entitled to recover from the Fund reasonable attorney's fees, costs and expenses incurred by him in defending the action or proceeding if the action or proceeding arose out of an act or omission in the scope of his service or duties as a Trustee of the Fund, unless the Board establishes that the Trustee or former Trustee acted or failed to act in breach of his fiduciary duty because of willful misconduct or gross negligence.

Section 6. Neither the Employers, any Signatory Association, the Individual Employers, the Union, any Local Union, any District Council nor any of the Trustees shall be responsible or liable for:

(A) The validity of this Trust Agreement or of a Program;

(B) The form, validity, sufficiency, or effect of any contract or policy for program benefits which may be entered into;

– 18 –

(C) Any delay occasioned by any restriction or provision in this Trust Agreement, a Program, the rules and procedures of the Board of Trustees, any contract or policy procedure in such administration. However, this clause shall not excuse any violation of the Collective Bargaining Agreement; or

(D) The making or retention of any deposit or investment of the Fund, or the disposition of any such investment, or the failure to make any deposit or investment of the Fund, or any loss or diminution of the Fund, except any loss due to the gross neglect or willful misconduct of a particular person.

Section 7. Neither the Employers, any Signatory Association, any Individual Employer, the Union, any Local Union nor any District Council shall be liable in any respect for any of the obligations or acts of the Trustees because the Trustees are in any way associated with any Employers, Signatory Association, Individual Employer, the Union, Local Union or District Council.

Section 8. Subject to and within the limitations of law and any applicable government regulation:

(A) Each Trustee shall be reimbursed by the Fund for the expenses reasonably, properly and actually incurred by him in attending a meeting of the Board of Trustees or a committee meeting of the Board; and,

(B) The Board of Trustees may provide for reimbursement to the Trustees for other expenses incurred in the performance of their duties as Trustees, including attendance at educational or training conferences, institutes or other meetings relevant to those duties as authorized by the Board, and for a reasonable payment to Trustees for attendance at meetings or other services rendered to the Fund at the request or direction of the Board.

Section 9. Any Trustee who resigns or is removed from office shall turn over to the Chairman or Co-Chairman of the Board of Trustees at the principal office of the Fund any and all records, books, documents, monies and other property in his possession or under his control which belong to the Fund or which were received by him in his capacity as a Trustee.

Section 10. No decision shall be made by the Board of Trustees in the administration of the Fund which is unreasonably discriminatory under the provisions of the Internal Revenue Code, or under any other applicable law or regulation.

Section 11. The name of the Fund or the Program may be used to designate the Board of Trustees collectively and all instruments may be affected by the Board in the name of the Fund.

## ARTICLE VIII
## Arbitration

Section 1. In the event that the Trustees deadlock on any matter arising in connection with the administration of the Fund, they shall agree upon a neutral person to serve as an impartial umpire to decide the dispute. The Employer Trustees and the Employee Trustees may, by mutual agreement, select an equal number of representatives from their respective Trustee groups to sit with the umpire to constitute a Board of Arbitration. The decision of a majority of this board shall be final and binding upon the Trustees and the parties to and beneficiaries of this Trust Agreement. Otherwise, the decision of the impartial umpire shall be final and binding upon the Trustees, the parties to and the beneficiaries of this Trust Agreement. Any matter in dispute and to be arbitrated shall be submitted to the

19

Board of Arbitrators or the impartial umpire in writing, and in making its or his decision, the board or impartial umpire shall be bound by the provisions of this Trust Agreement and the Collective Bargaining Agreement and shall have no authority to alter or amend any of the terms of those agreements. If the Trustees cannot jointly agree upon a statement submitting the matter to arbitration, each Trustee group shall prepare and state in writing its version of the dispute and the question or questions involved. The decision of the Board of Arbitration or the impartial umpire shall be available in writing within 10 days after the submission of the dispute.

Section 2. If no agreement on an impartial umpire is reached within 10 days, or within the time the Trustees may allow for this purpose, the umpire shall, on petition of either the Employer Trustees or the Employer Trustees, be appointed by the United States District Court for the Northern District of California.

Section 3. The reasonable expenses of any arbitration, including any necessary court proceedings to secure the appointment of an umpire or the enforcement of the arbitration award (excluding the fees and expenses of witnesses called by the parties and the cost of any attorneys other than the Fund attorneys selected pursuant to Article IV, Section 4 (I)), shall be a proper charge against the Fund. No expense shall be deemed reasonable under this Section unless and until approved by the Board of Trustees.

Section 4. No matter in connection with the interpretation or enforcement of any collective bargaining agreement shall be subject to arbitration under this Article. No matter which is subject to arbitration under this Article shall be subject to the grievance procedure or any other arbitration procedure provided in any of the collective bargaining agreements.

## ARTICLE IX
## General Provisions

Section 1. Subject to the provisions of the Collective Bargaining Agreement, the rights and duties of all parties, including the Employers, the Signatory Associations, the Individual Employers, the Union, the Local Unions, the District Councils, the Employees and the Trustees, shall be governed by the provisions of this Trust Agreement and any contracts procured or executed pursuant to this Trust Agreement.

Section 2. Any notice required to be given under the terms of this Trust Agreement shall be deemed to have been duly served if delivered personally to the person to be notified in writing, or if mailed in a sealed envelope, postage prepaid, to that person at his last known address as shown in the records of the Fund, or if sent by wire to that person at his last known address.

Section 3. This Trust Agreement shall be binding upon and inure to the benefit of all Individual Employers who are now or may become members of an employer association or any Signatory Association who will become in any other way party to a collective bargaining agreement and the heirs, executors, administrators, successors, purchasers and assigns of the Employers, any Signatory Association, any Individual Employer, the Union, any Local Union, any District Council and the Trustees.

Section 4. All questions pertaining to this Trust Agreement, the Trust Fund, and their validity, administration and construction shall be determined in accordance with the laws of the State of California and with any pertinent laws of the United States.

Section 5. If any provision of this Trust Agreement, the rules and regulations or any step in the administration of this Trust is held to be illegal or invalid for any reason, or

- 20 -

to render payments by the Individual Employers into this Trust non-deductible for tax purposes or taxable to the Individual Employer or to prevent or defeat any other objective that holding shall not affect the remaining portion of this Trust Agreement or the rules and regulations, unless that holding prevents accomplishment of the objectives and purposes of this Trust Agreement. In the event this occurs, the necessary steps to remedy any defect shall be taken immediately.

Section 6. Except to the extent necessary for the proper administration of the Fund, all books, records, papers, reports, documents or other information obtained with respect to the Fund shall be confidential and shall not be made public or used for any other purpose. Nothing in this Section shall prohibit the preparation and publication of statistical data and summary reports with respect to the operations of the Fund nor the cooperation with benefit funds authorized by other provisions of this Trust Agreement.

Section 7. In the establishment and maintenance of the Fund, and in the execution, amendment and implementation of this Trust Agreement, the Union acts for and on behalf of the Employees and as their collective bargaining representatives and agents, and every agreement or act of the Union in connection with the establishment, maintenance and operation of the Fund or the Program shall be deemed to be and is the agreement or act of the Employee, or Employees, concerned or affected by that agreement or action.

Section 8. In the establishment and maintenance of the Fund and in the execution, amendment and implementation of this Trust Agreement, the Employers act for and on behalf of the Individual Employers who, at the time of the execution of this Trust Agreement are, or become members of any of the Employers, or, or any Signatory Association, and for and on behalf of any other Individual Employer who is required by the Collective Bargaining Agreement to make Contributions to the Fund or who in fact makes one or more Contributions to the Fund. Every agreement or act of the Employers in connection with the establishment, maintenance and operation the Fund or the Programs shall be deemed to be and is the agreement or act of the Individual Employer, or Individual Employer, concerned or affected by that agreement or action.

Section 9. Contributions to the Fund shall not constitute nor be deemed to be wages due to the Employee with respect to whose work the Contributions are made. It is the intent and purpose of the parties that these Contributions shall at all times be deductible by the Individual Employer under all applicable tax laws, that the Contributions shall not at any time be taxable as part of the compensation of the Employee whose hours of work are the measure of the Contributions and the Contributions shall not be considered part of the hourly wage rates for the purpose of computing overtime, either under the Collective Bargaining Agreement or under the Fair Labor Standards Act, the Walsh-Healey Act, the Davis-Bacon Act, the Contract Work Standards Act, or any other law or regulation.

Section 10. Any payment required by a decision of the Board shall be due and payable in the City and County of San Francisco, California and any action or proceeding to enforce or clarify that decision shall be brought in a court of competent jurisdiction in that City and County. Any action or proceeding affecting the Fund or the Trust shall be brought solely against the Fund as an entity, and solely by or on behalf of the participant pursuant to the procedures established by the Program. Neither the Employers nor any Signatory Association or Individual Employer, the Union, any Local Union or District Council, any Employee, any beneficiary or other person shall be entitled to notice of any action or proceeding or to service of process. Any final judgment entered in any action or proceeding shall be binding upon all of the parties so long as the judgment does not attempt or purport to impose any personal liability upon or against any party not joined or not served in the action or proceeding

21

## ARTICLE X
## Non-Member Employers

Section 1. Any Individual Employer who is not a member of or represented by Employers or a Signatory Association but who is performing work coming within the jurisdiction of the Union, may become a party to this Trust Agreement by executing in writing and depositing with the Board of Trustees his or its acceptance of this Trust Agreement, in a form acceptable to the Board.

Section 2. Any Individual Employer who executes and deposits any written acceptance, or who in fact makes one or more Contributions to the Fund, assumes and shall be bound by all of the obligations imposed by this Trust Agreement upon the Individual Employer, is entitled to all rights under this Trust Agreement and is otherwise subject to it in all respects.

## ARTICLE XI
## Amendment and Termination

Section 1. The provisions of this Trust Agreement may be amended or modified at any time, and from time to time, by mutual agreement of the Employers and the Union subject to the terms and conditions of the Collective Bargaining Agreement, any applicable law or regulation. Any amendment or modification may be executed in counterpart.

Section 2. Subject to the provisions of this Article and Article IX, Section 5, of this Trust Agreement, this Trust is irrevocable and the provisions of this Trust Agreement shall continue in effect during the term of the Collective Bargaining Agreement, and any amendments, renewals or extensions which provide for the continuation of payments into the Fund and for a period of 6 months following the termination of the last of the collective bargaining agreements which provide for the continuation of payments into the Fund.

Section 3. This Trust Agreement and the Trust may be terminated by the Employers and the Union by an instrument in writing executed by mutual consent at any time, subject to the provisions of Section 4 of this Article. Upon the termination of the Trust, any monies remaining in the Fund after the payment of all expenses and obligations of the Trust shall be paid or used for the continuance of one or more program benefits in accordance with the provisions of the Program, until the Fund is exhausted.

Section 4. In no event shall any amendment or modification of this Trust Agreement, or the termination of this Trust Agreement, result in any portion of the Fund reverting to, or being recoverable by, any of the Employers, any Signatory Association, any Individual Employer, the Union, any Local Union or District Council or result in the diversion of any portion of the Fund to any purpose other than the exclusive benefit of Employees, under the Programs and the payment of the administrative expenses of the Fund.

Section 5. In no event shall the Trust established by this Trust Agreement continue for a longer period than is permitted by law.

22

Executed as of May 27, 1997.

**FOR THE EMPLOYERS:**

ASSOCIATED GENERAL CONTRACTORS OF CALIFORNIA, INC.

By:      (Signed)      Thomas Holsman

CONSTRUCTION EMPLOYERS ASSOCIATION

By:      (Signed)      Michael Walton

HOME BUILDERS ASSOCIATION OF NORTHERN CALIFORNIA

By:      (Signed)      Paul Baldacci, Jr.

**FOR THE UNION:**

CARPENTERS 46 NORTHERN CALIFORNIA COUNTIES CONFERENCE BOARD

By:      (Signed)      Jim R. Green
By:      (Signed)      John P. Casey

21

## ACCEPTANCE OF OFFICE BY TRUSTEES

The undersigned accept office as Trustees appointed pursuant to this Agreement and agree to act under and be subject to all of the terms and conditions of this Agreement. The undersigned declare that they hold the Fund created by this Agreement in trust for the uses and purposes set forth in this Agreement.

DATED: May 24, 1963.

| Initial Employer Trustees | Initial Employee Trustees |
|---|---|
| O. E. Christensen | Gunnar Benonys |
| L. D. Clemens | E. A. Brown |
| John I. Mullen | M. B. Bryant |
| Bertram Rude | N. B. Campbell |
| L.F. Walters | F. O. Jorgensen |

## SUBSTITUTION OF TRUSTEES

Changes in the composition of the Board of Trustees can be obtained from the Carpenter Funds Administrative Office.

## SUBSTITUTION OF CORPORATE CO-TRUSTEE

Changes in the named Corporate Co-Trustees can be obtained from the Carpenter Funds Administrative Office.

## CHANGES IN CONTRIBUTION RATE

Changes in the Contribution rates since the inception of the Trust Fund can be obtained from the Carpenter Funds Administrative Office.

- 24 -

# CARPENTERS ANNUITY TRUST FUND

**CARPENTERS ANNUITY**
**TRUST FUND FOR NORTHERN CALIFORNIA**

**PLAN ADMINISTRATOR**

**BOARD OF TRUSTEES**

**Employer Trustees**
Paul Baldacci, Jr.
Dave Higgins, Sr.
Mark Lindquist
Larry Nibbi
Burke Nicholson
Gerald D. Overaa
Bruce Smith
Richard Hamilton
Thomas Kelly
Stephen Lyons

**Employee Trustees**
Robert Alvarado
John Casey
Phillip Hennessy
Mike Knab
Wm. Gary Martin
Ronnell Spikes
Richard Wright
Angelo Baistreri
Darrel Thacker
Edward Vincent

**FUND MANAGER**
Carpenter Funds Administrative Office
of Northern California, Inc.
Houston D. Kemper, Secretary

**LEGAL COUNSEL**
Stanton, Kay & Watson
and
Van Bourg, Weinberg, Roger & Rosenfeld

**CONSULTANTS**
The Segal Company
and
Sedgwick Noble Lowndes

**CERTIFIED PUBLIC ACCOUNTANTS**
Hemming Morse, Inc.

**INVESTMENT MANAGER**
McMorgan & Company

**CORPORATE CO-TRUSTEE**
Wells Fargo Bank, N.A.

- 2 -

# INDEX

| SUBJECT | PAGE |
|---|---|
| Parties to Agreement | 6 |
| Recitals of Agreement | 6 |

**ARTICLE I – DEFINITIONS**

| | | |
|---|---|---|
| Section 1 | Collective Bargaining Agreement | 7 |
| Section 2 | Individual Employer | 7 |
| Section 3 | Employer | 7 |
| Section 4 | District Council | 8 |
| Section 5 | Local Union | 8 |
| Section 6 | Signatory Association | 8 |
| Section 7 | Trust Agreement | 8 |
| Section 8 | Trustee | 8 |
| Section 9 | Board of Trustees | 8 |
| Section 10 | Annuity Fund | 8 |
| Section 11 | Annuity Plan | 8 |
| Section 12 | Contribution | 8 |
| Section 13 | Participant | 8 |
| Section 14 | Beneficiary | 8 |
| Section 15 | ERISA | 8 |

**ARTICLE II – TRUST FUND**

| | | |
|---|---|---|
| Section 1 | Establishment of Fund | 9 |
| Section 2 | Principal Office of Fund | 9 |
| Section 3 | Employer Rights Limited to Benefits | 9 |
| Section 4 | Administration of Fund - Exclusive Purpose | 9 |
| Section 5 | Rights of the Parties | 9 |
| Section 6 | Prohibition Against Assignment or Alienation | 9 |
| Section 7 | Limitations of Liability | 10 |
| Section 8 | Non-Liability for Debts | 10 |
| Section 9 | Manner of Contribution - Due Date | 10 |
| Section 10 | Delinquent Contributions - Liquidated Damages | 10 |
| Section 11 | Weekly Contributions | 11 |

**ARTICLE III – BOARD OF TRUSTEES**

| | | |
|---|---|---|
| Section 1 | Designation of Trustees | 11 |
| Section 2 | Selection of Chairman and Co-Chairman | 12 |
| Section 3 | Tenure of Office of Trustees | 12 |
| Section 4 | Trustee Resignation | 12 |
| Section 5 | Removal of Trustee from Office | 12 |
| Section 6 | Successor Trustee | 12 |

**ARTICLE IV – FUNCTIONS AND POWERS OF BOARD OF TRUSTEES**

| | | |
|---|---|---|
| Section 1 | Authority of Trustees | 12 |
| Section 1(A) | Appointment of Investment Manager | 12 |
| Section 1(B) | Allocation of Responsibilities | 12 |
| Section 1(C) | Designation of Persons to Carry Out Fiduciary Responsibilities | 13 |
| Section 1(D) | Employ Persons to Render Advice | 13 |
| Section 2 | Contributions Due and Payable | 13 |
| Section 3 | Demand and Enforce Payment of Contributions | 13 |

Section 4        No Limitation of Power ................................................. 13
Section 4(A)   Pay Expenses to Establish Fund and Plan ......................... 13
Section 4(B)   Accumulate Reserve Funds ........................................... 13
Section 4(C)   Establish Funding Policy Consistent with ERISA ............... 13
Section 4(D)   Employ or Engage Personnel Consistent with ERISA ......... 13
Section 4(E)   Incur Reasonable Expense Incidental to Administration
                 of the Fund or Plan ................................................... 14
Section 4(F)   Compromise, Settle or Release Claims ............................. 14
Section 4(G)   Invest and Reinvest Assets ........................................... 14
Section 4(H)   Enter Into Contracts and Procure Insurance ..................... 14
Section 4(I)   Pay Benefits ............................................................. 14
Section 4(J)   Sell, Exchange, Lease, or Convey Property ...................... 14
Section 4(K)   Construe Provisions of Trust Agreement and Plan ............. 14
Section 4(L)   Pay Taxes ................................................................ 14
Section 4(M)   Maintain Actuarial Data .............................................. 14
Section 4(N)   Prepare and Furnish Periodic Reports ............................ 14
Section 4(O)   Maintain Bank Accounts .............................................. 14
Section 4(P)   Adopt Rules and Procedures for Administration ................ 15
Section 4(Q)   Borrow Money ......................................................... 15
Section 4(R)   Exercise Powers Specified in Trust Agreement ................ 15
Section 5        Insurance and Bonding Protection ................................. 15
Section 6        Maintain Records, Audit Employer Reports ..................... 15
Section 7        Annual Audit of Fund ................................................ 15
Section 8        Reciprocity .............................................................. 15
Section 9        Authority to Merge with Other Funds. ........................... 16

ARTICLE V – PROCEDURE OF BOARD OF TRUSTEES
Section 1        Time of Regular and Special Meetings ........................... 16
Section 2        Appointment of Secretary to Board ............................... 16
Section 3        Manner of Voting ..................................................... 16
Section 4        Place of Meetings ..................................................... 16
Section 5        Board Action Without Meeting ..................................... 17

ARTICLE VI – CORPORATE CO-TRUSTEE OR CUSTODIAN
Section 1        Appointment of Corporate Co-Trustee or Custodian. ........ 17
Section 2        Corporate Co-Trustee or Custodian Neither Employer
                 Nor Union Affiliation ................................................. 17
Section 3        Duties, Responsibilities, Rights and Powers of Corporate
                 Co-Trustee or Custodian, Act as Fiduciary ...................... 17

ARTICLE VII – GENERAL PROVISIONS APPLICABLE TO TRUSTEES
Section 1        Provisions Subject to and Qualified by ERISA ................ 17
Section 2        Efficacy of Instruments Executed by Trustees. ................ 17
Section 3        Duties, Responsibilities, Liabilities and Limitations
                 of Trustees .............................................................. 18
Section 4        Liability of Trustee in Performance of Duty .................... 18
Section 5(A)   Defense of any Civil Action or Proceeding ..................... 18
Section 5(B)   Refuse Defense of Civil Action or Proceeding ................ 18
Section 5(C)   Defense of Criminal Action or Proceeding ..................... 18
Section 5(D)   Defense Expenses ..................................................... 18

Section 5(E)   Recover Reasonable Expenses to Retain Own Counsel
                 for Defense ............................................................. 19
Section 6        Liability of Signatories to Agreement or Plan .................. 19
Section 7        Liability of Signatories for Actions of Trustees ................ 19
Section 8        Reimbursement of Trustee Expense. .............................. 19
Section 9        Surrender of Trust Property by Trustee on Resignation
                 or Removal .............................................................. 19
Section 10      Use of Name of Fund ................................................. 19

ARTICLE VIII – ARBITRATION
Section 1        Action in Event of Deadlock ....................................... 20
Section 2        Appointment of Umpire in Event of Non-Agreement
                 of Trustees .............................................................. 20
Section 3        Expenses of Arbitration ............................................. 20
Section 4        Matters Subject to Arbitration ..................................... 20

ARTICLE IX – GENERAL PROVISIONS
Section 1        Effect of Agreement on Parties. ................................... 20
Section 2        Decision of Board Final and Binding as to Disputes. ........ 20
Section 3        Manner of Delivering Notices ..................................... 21
Section 4        Parties Bound by Trust Agreement ............................... 21
Section 5        Determination of Questions Regarding Agreement,
                 Fund or Plan ........................................................... 21
Section 6        Severability ............................................................ 21
Section 7        Records Shall be Confidential ..................................... 21
Section 8        Union Acts on Behalf of Employees .............................. 21
Section 9        Employers Act on Behalf of Individual Employers. .......... 21
Section 10      Tax Exemption ........................................................ 22
Section 11      Venue in City and County of San Francisco. ................... 22

ARTICLE X – NON-MEMBER EMPLOYERS
Section 1        Acceptance of Individual Employer ............................... 22
Section 2        Rights and Obligations of Individual Employers ............... 22

ARTICLE XI – AMENDMENT AND TERMINATION
Section 1        Amendment or Modification of Trust Agreement. ............. 23
Section 2        Term of Trust Agreement. .......................................... 23
Section 3        Termination of Trust Agreement. .................................. 23
Section 4        Disposition of Monies in Fund on Termination ................ 23
Section 5        Life of Trust ........................................................... 23

Signatory Parties ....................................................................... 24
Acceptance of Office by Trustees ................................................... 24
Substitution of Trustees ............................................................... 24
Substitution of Corporate Co-Trustee .............................................. 24
Changes in Contribution Rate ....................................................... 24

- 4 -

# AMENDED AND RESTATED TRUST AGREEMENT ESTABLISHING THE

# CARPENTERS ANNUITY ANNUITY TRUST FUND

# FOR NORTHERN CALIFORNIA

## April, 1997

This TRUST AGREEMENT, was entered into on August 1, 1981, by and between the Associated General Contractors of California, Inc., and the Northern California Home Builders Conference referred to as the "EMPLOYERS"; and the Carpenters 46 Northern California Counties Conference Board, referred to as the "UNION," recites and provides as follows:

RECITALS:

1. The Associated General Contractors of California, Inc., and Northern California Home Builders Conference are parties to collective bargaining agreements with the Carpenters 46 Northern California Counties Conference Board known as the 46 Northern California Counties Carpenters Agreement, effective June 16, 1980, as revised, which provided as follows:

Effective for work performed on and after November 1, 1981, each individual employer covered by this agreement will contribute the sum of One Dollar ($1.00) per hour for each hour paid for or worked by carpenters employed by such individual employer under this agreement, to an annuity plan to be established pursuant to this agreement. The details of such plan shall be negotiated by a subcommittee on which the Employer and the Union shall be equally represented in conjunction with persons skilled in actuarial and other problems involved in the establishment of such plans, costs to be borne from annuity contributions. Said annuity plan shall comply with all pertinent legal requirements and shall qualify for all applicable tax exemptions.

2. In addition, various Individual Employers employing carpenters within the area covered by the 46 Counties Agreement are now or will become parties to collective bargaining agreements with the Union providing that Individual Employers comply with the wages, hours and working conditions of the 46 Counties Agreement or providing for contributions to the Carpenters Annuity Trust Fund for Northern California.

3. Pursuant to the 46 Counties Agreement, a Joint Employer-Union Subcommittee negotiating the Carpenters Annuity Trust Fund for Northern California ("Subcommittee") was established upon which Employers and Union were equally represented and the Subcommittee negotiated the details of this Trust Agreement and the rules and regulations of the Fund.

4. Pending the completion of the negotiations the Subcommittee entered into an Escrow Agreement with Lloyds Bank California dated August 7, 1981, providing for the payment of the contributions coming due under the collective bargaining agreement for work on or after November 1, 1981 (August 1, 1981, in the case of the Drywall/Lathers Master Agreement) into an escrow account with the Bank, known as the Carpenters Annuity Trust Fund for Northern California-Escrow Account, pending the execution of the Trust Agreement, and under the Escrow Agreement contributions have been paid by Individual Employers into the account.

5. The Subcommittee agreed to the establishment of this Trust, to be known as the Carpenters Annuity Trust Fund for Northern California, which is designated by the Subcommittee as the Trust Fund and Annuity Plan referred to in the Escrow Agreement

6. This Trust is being created and the Annuity Plan implemented, each of which shall conform to the applicable requirements of the Labor-Management Relations Act of 1947 and the Employee Retirement Income Security Act of 1974, and be qualified pursuant to the applicable provisions of the Internal Revenue Code, as amended, for all available exemptions and immunities.

7. The Subcommittee negotiated the following terms and provisions of the Trust Agreement governing the establishment and administration of the Carpenters Annuity Trust Fund for Northern California.

8. Since the establishment of the Annuity Trust Fund:

(A) The "Employers" have been succeeded through historical collective bargaining procedures in the area by Associated General Contractors of California, Inc., Construction Employers Association, Home Builders Association of Northern California and Millwrights Employer Association which now constitute the entity referred to collectively as the "Employers".

9. The Employers and the Union agree that this Trust Agreement shall be and is amended, modified, and restated to conform with the requirements of Employee Retirement Income Security Act of 1974, as amended, and any valid regulations issued consistent with ERISA.

PROVISIONS:

In consideration of the foregoing, and of the mutual promises stated, the parties agree as follows:

## ARTICLE I

## Definitions

Unless the context or subject matter otherwise requires, the following definitions shall govern in this Agreement:

Section 1. The term "Collective Bargaining Agreement" includes (a) the Carpenters 46 Northern California Counties Master Agreement effective June 16, 1971; (b) the Drywall/Lathing Master Agreement effective August 1, 1980; and, (c) any other collective bargaining agreement other than the Collective Bargaining Agreements referred to above which is approved by the Carpenters 46 Northern California Counties Conference Board to be defined as a Collective Bargaining Agreement for the purposes of contributions to the Annuity Plan or Annuity Fund established by this Trust Agreement.

Section 2. The term "Individual Employer" means any individual employer who is required by the Collective Bargaining Agreement to make Contributions to the Annuity Fund or who in fact makes one or more Contributions to the Fund. The term "Individual Employer" also includes any Local Union or District Council, any labor council or other labor organization with which a Local Union or District Council is affiliated, and any one or more Contributions to the Fund, in the enforcement or administration of contracts requiring Contributions to the Fund, or in the training of apprentice or journeymen carpenters, which makes Contributions to the Annuity Fund with respect to the work of its employees pursuant to a Subscriber's Agreement approved by the Board of Trustees; provided that the inclusion of any Local Union, District Council, labor council, other labor organization, corporation, trust or other entity, as an Individual Employer is not a violation of any applicable law or regulation. Any Local Union, District Council, labor council, other labor organization, corporation, trust or other entity shall be an Individual Employer solely for the purpose of making Contributions with respect to the work of its respective employees and shall have no other rights or privileges under this Trust Agreement as an Individual Employer

Section 1. The term "Employee" means any employee of any Individual Employer who performs one or more hours of work as an employee covered by the Collective Bargaining Agreement. The term "Employee" shall also include employees of Local Unions and District Councils, and employees of labor councils or other labor organizations with which a Local Union, or District Council is affiliated, or of any corporation, trust or other entity described in Section 2, with respect to whose work Contributions are made to the Annuity Fund pursuant to regulations adopted by the Board of Trustees; provided the inclusion of any of these employees is not a violation of any applicable law or regulation. The term "Employee" as used in this Section shall exclude clerical employees and employees covered by any other collective bargaining agreement.

Section 4. The term "District Council" means any district council in the 46 Northern California Counties affiliated with the United Brotherhood of Carpenters and Joiners of America, AFL-CIO, and the Carpenters 46 Northern California Counties Conference Board.

Section 5. The term "Local Union" means any local union in the 46 Northern California Counties affiliated with the United Brotherhood of Carpenters and Joiners of America, AFL-CIO, and the Carpenters 46 Northern California Counties Conference Board.

Section 6. The term "Signatory Association" means any employer association, other than the Employers, which signs this Trust Agreement on behalf of its members or executes on behalf of those members, any agreement to be bound by the terms of this Trust Agreement.

Section 7. The term "Trust Agreement" means this agreement and any modification, amendment, extension or renewal.

Section 8. The term "Trustee" means any natural person designated as Trustee pursuant to Article III.

Section 9. The terms "Board of Trustees" or "Board" means the Board of Trustees established by this Trust Agreement.

Section 10. The term "Annuity Fund" or "Fund" means the Trust Fund created and established by this Trust Agreement.

Section 11. The term "Annuity Plan" or "Plan" means the Annuity Plan established pursuant to the Collective Bargaining Agreement and this Trust Agreement and any modification, or amendment of the Plan.

Section 12. The term "Contribution" means the payment made to the Fund by any Individual Employer under the provisions of the Collective Bargaining Agreement or Subscriber's Agreement.

Section 13. The term "Plan Participant" or "Participant" means any Employee or former Employee who is or who may become eligible to receive a benefit of any type from the Fund or whose Beneficiaries may be or become eligible to receive benefits.

Section 14. The term "Beneficiary" means a person designated by a Participant pursuant to the Plan or by the terms of the Plan who is or who may become entitled to a benefit under the terms of the Plan.

Section 15. The term "ERISA" means the Employee Retirement Income Security Act of 1974, 29 U.S.C. Section 1001, et seq., as amended, and any valid regulation issued consistent with that Act.

8

# ARTICLE II
# Trust Fund

Section 1. The Carpenters Annuity Trust Fund for Northern California shall consist of all Contributions required by the Collective Bargaining Agreement or Subscriber's Agreement to be made for the establishment and maintenance of the Annuity Plan, and all interest, income or other returns of any kind, and any other money or property received or held by reason of or pursuant to this Trust.

Section 2. The Fund shall have its principal office in San Francisco, California, or any other place designated by the Board of Trustees.

Section 3. No Employer shall be entitled to receive any part of the Contributions made or required to be made to the Fund in lieu of the benefits provided by the Annuity Plan.

Section 4. The Fund shall be administered by the Board of Trustees solely in the interest of the Employees and Beneficiaries pursuant to the provisions of the Annuity Plan. Notwithstanding anything to the contrary contained in this Trust Agreement or in the Plan, or any modification, amendment, extension or renewal of the Plan, no portion of the Fund shall at any time revert to, or be recoverable by, any of the Employers, any Signatory Association, any Individual Employer, any Union, any Local Union, or District Council, or be used for, or diverted to, purposes other than for the exclusive purpose of providing benefits to Employees and their Beneficiaries and defraying reasonable expenses of administering the Plan, except for Contributions, which may be refunded to an Individual Employer under applicable law.

Section 5. Neither the Employers, any Signatory Association, any Individual Employer, the Union, any Local Union, any District Council, any Employee, or Beneficiary nor any other person shall have any right, title or interest in or to the Fund other than as specifically provided in this Trust Agreement or in the Annuity Plan. Neither the Fund nor any Contributions to the Fund shall be in any manner liable for or subject to the debts, contracts or liabilities of any of the Employers, any Signatory Association, any Individual Employer, the Union, any Local Union, any District Council or any Employee or Beneficiary.

Section 6. Each Employee or Beneficiary under the Annuity Plan is restrained from selling, transferring, anticipating, assigning, alienating, hypothecating or otherwise disposing of his annuity, prospective annuity, individual account, accumulated share, or any other right or interest under the Plan, and the Board of Trustees shall not recognize, or be required to recognize, any sale, transfer, anticipation, assignment, alienation, hypothecation or other disposition. Any annuity, prospective annuity, individual account, accumulated share, right or interest shall not be subject in any manner to voluntary transfer or transfer by operation of law or otherwise, and shall be exempt from the claims of creditors or other claimants and from all orders, decrees, garnishments, executions or other legal or equitable process or proceedings to the fullest extent permissible by the laws of the United States or any regulation. In the event that through mistake or any other circumstance, an Employee or Beneficiary has been paid or credited with more than he is entitled to under the Plan or the law or has become obligated to the Fund in any way, the Board of Trustees may set off, recoup and recover the amount of the overpayment, excess credit or obligation from benefits accrued or accruing to the Participant or his Beneficiary, and not yet distributed.

The Board shall prescribe and adopt reasonable rules and regulations for the implementation of the qualified domestic relations order provisions of ERISA, the Internal Revenue Code, and the Retirement Equity Act.

Section 7. Neither the Employers or any Signatory Association, nor any other agent

9

employee or continue member of the Employers or any Signatory Association shall be liable to make Contributions to the Fund or be under any other liability to the Fund, or with respect to the Annuity Plan, except to the extent that he or it may be an Individual Employer required to make Contributions to the Fund with respect to his or its own individual or joint venture operations, or to the extent he or it may incur liability as a Trustee. The liability of any Individual Employer to the Fund, or with respect to the Annuity Plan, shall be limited to the payments required by the Collective Bargaining Agreement with respect to his or its individual or joint venture operations, and in no event shall he or it be liable or responsible for any portion of the Contributions due from other Individual Employers with respect to the operations of those Individual Employers. The basis on which payments are made in the Trust shall be as specified in the Collective Bargaining Agreement, Subscriber's Agreement and this Trust Agreement and the Individual Employers shall not be required to make any further payments or Contributions to the cost of operation of the Individual Employer to the Fund, or to the Plan, except as may be provided in those agreements. The Plan is and shall continue to be a Defined Contribution Plan within the meaning of ERISA.

Section 8. Neither the Union, any Signatory Association, any Individual Employer, the Union, any Local Union, any District Council nor any Participant or Beneficiary, shall be liable or responsible for any debts, liabilities or obligations of the Fund or the Trustees.

Section 9. Contributions to the Fund shall be due for work commencing November 1, 1981 (August 1, 1981, in the case of the Drywall/Lathing Master Agreement), and shall be payable in San Francisco, California, in regular monthly installments starting on or before December 15, 1981 (September 15, 1981 in the case of Drywall/Lathing Master Agreement) and continuing from month to month subject to the provisions of the applicable collective bargaining agreement. The Contributions payable on or before December 15, 1981, or September 15, 1981, shall include all amounts which accrued for work performed during the period from November 1, 1981 (or August 15, 1981) up to the close of the Individual Employer's payroll period ending closest to the last day of November (or August) 1981. Each subsequent monthly Contribution shall include all amounts which accrued in the interim for work performed up to the close of the Individual Employer's payroll period ending closest to the last day of the preceding calendar month. Each monthly Contribution shall be accompanied by a report in a form prescribed by the Board of Trustees. The rate of contribution made by a Local Union, District Council or other entity pursuant to regulations adopted by the Trustees shall be not less than the rate of contribution called for by the Collective Bargaining Agreement subject to the further provisions of this Section and to the provisions of the applicable collective bargaining agreement. The Board of Trustees shall have authority to prescribe and adopt rules and procedures pursuant to Article IV, Section 4 of this Trust Agreement permitting Individual Employers to make Contributions to the Fund on a quarterly instead of a monthly basis subject to any conditions or requirements the Board deems necessary or desirable.

Section 10. Each Contribution to the Fund shall be made promptly, but in no event later than the 25th day of the calendar month in which it becomes payable, on which date the Contribution, if not paid in full, shall be delinquent. If any Individual Employer fails to pay his or its monthly Contribution in full on or before the 25th day of the month on 4 occasions within any 12-month period, the Board of Trustees may provide by resolution that during the 12-month period immediately following resolution the 15th of the month shall be the delinquency date for that Individual Employer.

The parties recognize and acknowledge that the regular and prompt payment of Contributions to the Fund is essential to the maintenance of the Annuity Plan, and that it would be extremely difficult, if not impracticable, to fix the actual expense and damage to the Fund and to the Annuity Plan which would result from the failure of an Individual

10

Employer to pay the Contributions in full within the time above prescribed. Therefore, the amount of damage to the Fund and the Annuity Plan resulting from any failure shall be presumed to be the sum of $20.00 or 10% of the amount of Contribution or Contributions due, whichever is greater. This amount shall become due and payable to the Fund as liquidated damages and not as a penalty, in San Francisco, California, upon the day immediately following the date on which the Contribution or Contributions become delinquent and shall be in addition to the delinquent Contribution or Contributions. The Contributions, as increased, shall be the amount required to be paid to the Fund.

Section 11. The Board of Trustees may adopt and from time to time amend, revise or repeal rules and regulations establishing a procedure which requires an Individual Employer who is delinquent in making Contributions as provided in Article II, Sections 9 and 10 to make Contributions to the Fund on a weekly rather than a monthly basis and to remit each weekly Contribution to the Fund accompanied by a report of Contribution in an envelope postmarked not later than midnight on Friday of the week for which the Contribution is due. In the event these rules and regulations are adopted, any Individual Employer to whom the rules and regulations apply shall make Contributions to the Fund in accordance with the rules and regulations, and the provisions of Article II, Section 10 with regard to liquidated damages shall apply with respect to any weekly Contribution which is not paid within the time provided in the rules and regulations, except that the amount of liquidated damages shall be $5.00 per delinquency or 20% of the amount of the Contribution or Contributions due, whichever is greater.

ARTICLE III

Board of Trustees

Section 1. The Fund shall be administered by a Board of Trustees which shall consist of eight Trustees representing the Individual Employers and eight Trustees representing the Employees. The Trustees representing the Individual Employers shall be appointed in writing as follows: Two shall be appointed by the Associated General Contractors of California, Inc., or its successor; Two shall be appointed by the Construction Employers' Association, or its successor; Two shall be appointed by the Home Builders Association of Northern California, or its successor; One shall be appointed by the Millwrights Employer Association, or its successor; One shall be proposed by an employers association other than the Associated General Contractors of California, Inc., Construction Employers' Association, Home Builders Association of Northern California or Millwrights Employer Association or shall be proposed by an independent employer. This Trustee shall be appointed only by the unanimous vote of the Associated General Contractors of California, Inc., Construction Employers' Association, Home Builders Association of Northern California and Millwrights Employer Association and their respective successors.

No employer association, or its successor, shall continue to have appointing authority pursuant to this Section unless the association, or its successor, is signatory to the Collective Bargaining Agreement with the Union on behalf of its members or a multi-employer unit which it represents for the purposes of collective bargaining with the Union.

If an employer association, or its successor, ceases to be bound to the Collective Bargaining Agreement with the Union, any Trustee appointed by that association, or its successor, shall be deemed to have resigned and a successor Trustee shall be appointed by the employer associations designated above, or their successors, who remain signatory to the Collective Bargaining Agreement with the Union. The Employers designated pursuant to the above provisions are irrevocably designated by each Individual Employer as his or its attorney-in-fact for the purposes of appointing and removing Trustees and successor Trustees

11

The Trustees representing the Employers shall be appointed by an instrument in writing signed by the Executive Officer of the Union.

Section 2. The Trustees shall select one Trustee to act as Chairman of the Board of Trustees and one Trustee to act as Co-Chairman, each to serve for a period of time determined by the Trustees. When the Chairman is selected from among the Employer Trustees, the Co-Chairman shall be selected from among the Employee Trustees, and vice versa. Neither the Chairman nor the Co-Chairman shall succeed himself.

Section 3. Each Trustee shall serve until his death, resignation or removal from office.

Section 4. An Employer Trustee shall be deemed to have resigned under the circumstances specified in Section 1 of this Article. Any other Trustee may resign at any time by serving written notice of his resignation upon the Secretary of the Board of Trustees at least 30 days prior to the date on which his resignation is effective. The Secretary shall promptly notify in writing the Chairman and Co-Chairman of the Board and the Employers of the Union of the resignation of a Trustee.

Section 5. Any Employer Trustee may be removed from office at any time, for any reason, by a writing signed by the employer association having appointing authority with respect to that Trustee and served on the Secretary of the Board of Trustees. Any Employee Trustee may be removed from office at any time, for any reason, by a writing signed by the Executive Officer of the Union and served on the Secretary of the Board of Trustees. The Secretary shall promptly notify in writing the Chairman and Co-Chairman of the Board, the Trustee being removed, and the Union or Employers, as the case may be, of the removal.

Section 6. If any Employer Trustee dies, resigns or is removed from office, a successor Trustee shall be promptly appointed by an instrument in writing signed by the employer association having appointing authority with respect to that Trustee. If any Employee Trustee dies, resigns or is removed from office, a successor Trustee shall be appointed promptly by an instrument in writing signed by the appropriate Executive Officer of the Union.

(A) Appoint an investment manager or managers (as defined in ERISA) to manage (including the power to acquire and dispose of) any assets of the Fund.

(B) To enter into an agreement allocating among Trustees the responsibilities, obligations or duties as the Board shall determine.

12

## ARTICLE IV
## Functions and Powers of Board of Trustees

Section 1. The Board of Trustees acting jointly shall have the power to control and manage the assets, operation and administration of the Fund and the Plan as a fiduciary and shall exercise that authority with the care, skill, prudence and diligence under the prevailing circumstances that a prudent board acting in a like capacity and familiar with these matters would use in the conduct of an enterprise of like character and with like aims; provided however, that the Board may:

(C) Designate persons other than named fiduciaries to carry out fiduciary responsibilities (other than Trustee responsibilities) under this Trust Agreement or the Plan; and

(D) Employ one or more persons to render advice with regard to any responsibilities the Board has under this Trust Agreement or the Plan.

Any person or entity appointed, designated or employed shall act solely in the interest of the Participants and Beneficiaries of the Fund and the Plan.

The detailed basis on which annuity benefits are to be paid shall be set forth in the Annuity Plan of the Carpenters Annuity Trust Fund for Northern California. The Board of Trustees may at any time, and from time to time, amend or modify the Annuity Plan, except that no amendment or modification may reduce any benefits payable to Employees who retire prior to that amendment or modification.

Section 2. All Contributions to the Annuity Fund established by this Trust Agreement are due and payable in San Francisco, California, and shall be paid to, received and held by the Fund subject to the terms and provisions of this Trust Agreement. The acceptance and cashing of any checks for Contributions, and the disposition of the monies covered in accordance with any checks for Contributions, shall not release or discharge the Individual Employer from his or its obligation under the Collective Bargaining Agreement for hours worked under that agreement for which no Contribution has actually been received, notwithstanding any statement, restriction or qualification appearing on the check or any attachment. The Board of Trustees may direct that any check may be a single check covering monies payable to one or more other funds and may join with the boards of trustees of other funds in instructing the bank or banks with regard to the allocation of the monies covered by that check among the funds. In the event these instructions are given, they shall be binding upon the bank or banks, the Individual Employer, the Employees, the Employers, the Union, and all other parties.

Section 3. The Board of Trustees shall have the power in the name of the Fund as in its discretion may be deemed necessary or desirable, to demand and enforce, by suit in court the prompt payment of Contributions to the Fund, including payments due to delinquencies as provided in Article II, Section 10, without being limited or restricted by any grievance or arbitration procedures provided in the Collective Bargaining Agreement. In addition, the Board shall have the right to assert and enforce all priorities, lien rights, and other claims or rights with respect to any Contributions or payments belonging to the Fund, this Trust or any of its Participants or Beneficiaries, including the right to file priority and other claims in bankruptcy.

If any Individual Employer defaults in the making of Contributions or payments and if the Board consults legal counsel, or files any suit or claim, there shall be added to the obligation of the Individual Employer who is in default, reasonable attorney's fees, court costs and all other reasonable expenses incurred in connection with the suit or claim, including any and all other appellate proceedings.

Section 4. Without limitation of the provisions of Section 1 of this Article, the Board of Trustees shall have power:

(A) To pay out of the Fund the reasonable expenses incurred in the establishment of the Fund and the Annuity Plan.

(B) To establish and accumulate reserve funds as may be adequate to provide for administration expenses and other obligations of the Fund, including the maintenance of the Annuity Plan.

(C) To provide a procedure for establishing and carrying out a funding policy consistent with the objectives of the Annuity Plan and the requirements of ERISA.

13

(II) Is employ or engage executive, consultant, actuarial, accounting, administrative, clerical, secretarial, legal or other employees, assistants or advisers, as may be necessary in connection with the administration of the Fund and the Annuity Plan and to pay out of the Fund the compensation and necessary expenses of those employees, assistants, or advisers and the cost of office space, furnishings and supplies and other essentials required in the administration of the Plan. If the Board is unable to agree upon the employment of either a consultant actuary or an attorney pursuant to this clause, the Employer Trustees and the Employee Trustees may each select either a consultant-actuary or an attorney, or both, as the case may require, who shall be directed to act jointly in connection with the administration of the Fund and the reasonable cost of the advice or services shall be paid from the Fund. The Board shall engage pursuant to this clause an independent qualified public accountant on behalf of all Plan Participants, also as required by ERISA;

(J) To incur and pay out of the Fund any other expense reasonably incidental to the administration of the Annuity Plan;

(J) (1) In compromise, settle, or release claims or demands in favor of or against the Fund on any terms and conditions the Board may deem desirable, including the power to continue, maintain and from time to time modify or revoke, in whole or in part, a policy and procedure for the waiver of all or any part of the liquidated damages portion of any contribution or Contributions upon terms and conditions the Board determines would be in the interests of the Fund and its Participants and Beneficiaries. However, this clause shall not excuse a violation of any of the collective bargaining agreements;

(iv) If no investment manager is designated and appointed by the Board, to invest and reinvest the assets of the Fund in any name or all of the benefits specified in the Annuity Plan, with a bank or other fiduciary to the fullest extent permitted by law. No indicia of ownership shall be maintained outside the jurisdiction of the district courts of the United States, except to the extent permitted by law;

(II) To enter into contracts and procure insurance policies in its own name or in the name of the Fund to provide any or all of the benefits provided in the Annuity Plan, to terminate, modify or renew any contracts or policies subject to the provisions of the Trust, and to exercise and claim all rights and benefits granted to the Board or the Fund by the contracts or policies;

(I) With or without any of the contracts or policies mentioned in paragraph (II) of this Section, to pay all or any part of the benefits provided in the Annuity Plan, to the persons entitled under the Plan, and in accordance with the terms and provisions of the Plan, which shall be the basis on which payments are made from the Plan;

(J) To sell, exchange, lease, convey or otherwise dispose of any property of any kind forming a part of the Fund upon terms the Board deem proper and to execute and deliver any and all instruments of conveyance or transfer;

(K) To construe the provisions of this Trust Agreement and any construction adopted by the Board in good faith shall be binding upon any and all affected parties or persons;

(L) To pay any and all real or personal property taxes, income taxes, or other taxes or assessments of any or all kinds levied or assessed upon the Fund;

(M) To maintain on a current basis, all actuarial data, records and information in connection with the administration of the Plan and to have the books and records checked and evaluated annually, or more often if the Board so determines, by the Fund consultant-actuary or consultant-actuaries, as the case may be, whose reports shall be available for inspection by interested persons at reasonable times and upon proper notice, at a place or places designated by interested persons and the Board and the Board shall have the right to rely upon all reports and records;

(N) To prepare reports, descriptions, summaries and other information required by law or as the Board in its discretion deems necessary or advisable and to file and furnish those reports, descriptions, summaries and other information to Participants and their Beneficiaries, the Union, any Local Union or District Council, the Employers and Individual Employers, the Trustees, or other persons or entities, including government agencies;

(O) To maintain a bank account or bank accounts as may be necessary or advisable in the administration of the Fund and to designate the person or persons authorized to sign checks and withdrawal orders on those accounts;

(P) To prescribe and adopt reasonable rules and procedures, which shall not be inconsistent with the provisions of this Trust Agreement or of the Plan, governing the reporting of Contributions, the entitlement to annuity benefits, the method of applying for annuity benefits, and any and all other matters in connection with the Fund and the Plan;

(Q) To borrow money and to encumber or hypothecate real or personal property by mortgage, deed of trust (with power of sale), contract of sale, security agreement, pledge or otherwise; to borrow money on the credit of the trust estate; and to purchase real or personal property subject to and assume the obligation secured by a mortgage, deed of trust (with power of sale), contract of sale, security agreement, pledge or otherwise; and

(R) To exercise and perform any and all of the other powers and duties specified in this Trust Agreement, or the Annuity Plan.

Section 5. The Board of Trustees shall provide at the expense of the Fund, where and to the extent permissible by applicable law, insurance and bonding protection for the Fund and for each Trustee, former Trustee or estate of a deceased Trustee or former Trustee, and all other persons who handle funds or other property of the Fund for any purpose whatsoever. This protection shall be from companies and within limits determined by the Board.

Section 6. The Board of Trustees shall maintain suitable and adequate records of and for the administration of the Fund and the Annuity Plan. The Board may require the Employers, any Signatory Association, any Individual Employer, the Union, any Local Union or District Council, or any Participant or Beneficiary to submit to it any information, data, reports or documents reasonably relevant to and suitable for the proper administration. However, the Union, Local Unions, and District Councils shall not be required to submit membership lists. The parties agree that they will use their best efforts to secure compliance with any reasonable request of the Board for information, data, reports or documents. Upon request in writing from the Board, each Individual Employer will permit a certified public accountant selected by the Board to enter upon the premises of the Individual Employer during business hours, at a reasonable time or times, and to examine and copy books, records, papers or reports of Individual Employer as necessary to determine whether the Individual Employer is making full and prompt payment of all sums required to be paid by him or it to the Fund. In addition, each Individual Employer will comply with all of the terms and conditions of the 46 Counties Agreement with regard to audits.

Any action to secure compliance with the provisions of this Section or any other provision of the Trust Agreement, to enforce the prompt payment of Contributions or any other sums owed to the Fund, or arising out of any dispute concerning the interpretation, application or enforcement of this Section or of any other provision of the Trust Agreement, shall be brought and tried in a court of competent jurisdiction located in the City and County of San Francisco; and each party to the action expressly waives any right to change the venue of the action to any other county or to any other place.

Section 7. The books of account and records of the Board of Trustees, including the books of account and records pertaining to the Fund, shall be audited at least once a year

14

15

by an independent qualified public accountant engaged by the Board on behalf of all Plan Participants who shall conduct an examination of any financial statements of the Fund and the Plan and of all other books and records of the Fund and Plan required by ERISA. A statement of the results of the annual audit shall be available for inspection by interested persons at the principal office of the Fund and at any other suitable place the Board may designate. Copies of the statement shall be delivered to the Employers, the Union and each Trustee within 10 days after the statement is prepared. The Board shall also prepare all other reports required by law.

Section 8. Compatible with equitable principles and to the extent that sound accounting principles permit, the Board of Trustees may coordinate its activities in the administration of the Fund with the administrative activities of the governing board or boards of any other fund or funds, established for employees in the building and construction industry to the extent and upon the terms deemed necessary or desirable by the Board, including the entering into and performance of agreements with any board or boards providing for reciprocity or transfer or exchange of credits of contributions between or among funds or plans upon terms as the Board may determine are for the best interest of the Participants and Beneficiaries of the Plan.

Section 9.

(A) The Board of Trustees may enter into an agreement with the board of trustees of any other annuity trust fund, which fund is established or maintained pursuant to a collective bargaining agreement, providing for the consolidation, merger or amalgamation of the Fund with the other fund, upon terms and conditions as the Board shall determine, subject to the prior written approval of the agreement by the Employers and the Union, and may accept the transfer of monies, accounts, contracts, liabilities, property and other investments or rights, provide for the payment of benefits and otherwise execute and carry out the terms of the agreement.

(B) In the event the Board of Trustees approves any consolidation, merger or amalgamation of the Fund, the Board of Trustees shall have the power to appoint an equal number of employee trustees and employee trustees from the existing board of trustees of the merging fund to the Board of Trustees. These trustees shall serve at the discretion of the Board of Trustees and for as long as the Board of Trustees may deem desirable.

## ARTICLE V
## Procedure of Board of Trustees

Section 1. The Board of Trustees shall determine the time and place for regular periodic meetings of the Board. Either the Chairman or the Co-Chairman, or any four members of the Board, may call a special meeting of the Board by giving written notice to all other Trustees of the time and place of the meeting at least 5 days before the date set for the meeting. Any notice of a special meeting shall be sufficient if sent by ordinary mail or by wire addressed to the Trustee at his address as shown in the records of the Board. Any meeting at which all Trustees are present, or concerning which all Trustees have waived notice in writing, shall be a valid meeting without the giving of any notice.

Section 2. The Board shall appoint a secretary who shall keep minutes or records of all meetings, proceedings and acts of the Board. The minutes need not be verbatim.

Section 3. The Board shall not take any action or make any decision on any matter coming before it or presented to it for consideration or exercise any power or right given or reserved to it or conferred upon it by this Trust Agreement except upon the vote of a majority of all 16 of the Trustees at a meeting of the Board duly and regularly called or except by the signed concurrence of all the Trustees without a meeting, as provided in Section 5 of this Article.

16

In the event of the absence of any Employer Trustee from a meeting of the Board, the Employer Trustees present at the meeting may vote on behalf of the absent Employer Trustee and if the Employer Trustees cannot agree as to how the vote of the absent Employer Trustee shall be cast, then it shall be cast as a majority of them shall determine, or, in the absence of a majority determination, it shall be cast as the Employer Trustee Chairman or Co-Chairman of the Board shall determine. In the event of the absence of any Employee Trustee from a meeting of the Board, the Employee Trustees present at the meeting may vote on behalf of the absent Employee Trustee pursuant to cast the vote of any absent Employee Trustee.

At the request of any Trustee, made either before or after the taking of a vote on any matter coming before the Board, the action or decision of the Board on the matter shall be by unit vote, that is, the vote of the Employer Trustees on the action or decision shall be determined by the majority of all Employer Trustees and the vote of the Employee Trustees on the action or decision shall be determined by the majority of all Employee Trustees.

Section 4. All meetings of the Board shall be held at the principal office of the Fund unless another place is designated by the Board.

Section 5. Upon any matter which may properly come before the Board of Trustees, the Board may act in writing without a meeting, provided the action has the concurrence of all the Trustees.

## ARTICLE VI
## Corporate Co-Trustee or Custodian

Section 1. The Corporate Co-Trustee or Custodian and any successor may be appointed by the Board of Trustees.

Section 2. The Corporate Co-Trustee or Custodian shall not be a representative of either the Employers or the Union.

Section 3. The duties, responsibilities, rights and powers of the Corporate Co-Trustee or Custodian shall be those delegated to it by the Board of Trustees, and shall be set forth in a contract between the Board and the Corporate Co-Trustee or Custodian. If so designated, the Corporate Co-Trustee or Custodian shall act as a fiduciary.

## ARTICLE VII
## General Provisions Applicable to Trustees

Section 1. The provisions of this Article are subject to and qualified by the provisions of ERISA to the extent those provisions are constitutionally applicable. In order to induce experienced, competent and qualified persons and entities to serve as fiduciaries, to deal with the Fund and the Board of Trustees and to participate in other ways in the administration and operation of the Fund and Plan and to further the interest of the Participants and Beneficiaries of the Plan, it is the intent and purpose of the parties to provide for the maximum permissible protection and indemnification of those persons or entities from maximum personal liability, loss, cost or expense as a result of their service, dealing or participation, and the provisions of this Article shall be literally construed and applied to accomplish this objective.

Section 2. No party who has verified that he or it is dealing with the duly appointed Trustees, shall be obligated to see to the application of any money or property of the Fund or to see that the terms of this Trust Agreement have been complied with, or to inquire as to the necessity or expedience of any act of the Trustees. Every instrument executed by the

17

Board of Trustees or by its direction shall be conclusive in favor of every person who relies on it, that (a) at the time of the delivery of the instrument this Trust Agreement was in full force and effect, (b) the instrument was executed in accordance with the terms and conditions of this Trust Agreement, and (c) the Board was duly authorized to execute the instrument or direct its execution.

Section 3. The duties, responsibilities, liabilities and limitations of any Trustee under this Trust Agreement shall be determined solely by the express provisions of this Trust Agreement and no further duties, responsibilities, liabilities or limitations shall be implied or imposed.

Section 4. The Trustees shall incur no liability, either collectively or individually, in acting upon any papers, documents, data or information believed by them to be genuine and accurate and to have been made, executed, delivered or assembled by the proper parties. The Trustees may delegate any of their ministerial powers or duties to any of their agents or employees. No Trustee shall incur any liability for simple negligence, oversight or carelessness in connection with the performance of his duties as Trustee. No Trustee shall be liable for the act or omission of any other Trustee. The Fund shall exonerate, reimburse and save harmless the Trustees, individually and collectively, against any and all liabilities and reasonable expenses arising out of their trusteeship, except (as to the individual Trustee or Trustees directly involved) for expenses and liabilities arising out of willful misconduct or gross negligence. No expense shall be deemed reasonable under this Section unless and until approved by the Board of Trustees.

Section 5.

(A) Except as otherwise provided in Subsection (B) of this Section, upon request of a Trustee or former Trustee, or the legal representative of a deceased Trustee or former Trustee, the Board of Trustees shall provide for the defense of any civil action or proceeding brought against the Trustee, former Trustee or estate of a deceased Trustee or former Trustee, in his capacity as Trustee or former Trustee or in his individual capacity or in both, on account of any act or omission in the scope of his service or duties as a Trustee of the Fund. For the purposes of this Section, a cross-action, counterclaim, cross-complaint or administrative or arbitration proceeding against a Trustee or former Trustee or estate shall be deemed to be a civil action or proceeding brought against him or it.

(B) The Board of Trustees may refuse to provide for the defense of a civil action or proceeding brought against a Trustee or former Trustee or estate if the Board determines that:

(1) The act or omission was not within the scope of his service as a Trustee of the Fund, or

(2) He acted or failed to act in breach of his fiduciary duty because of willful misconduct or gross negligence; or

(3) The defense of the action or proceeding by the Board would create a conflict of interest between the Board or Fund and the Trustee, former Trustee or estate

(C) The Board of Trustees may provide for the defense of a criminal action brought against a Trustee or former Trustee if:

(1) The criminal action or proceeding is brought on account of an act or omission in the scope of his services or duties as a Trustee or former Trustee; and

(2) The Board determines the defense would be in the best interests of the Fund and its Participants and Beneficiaries and that the Trustee or former Trustee acted, or failed to act, in good faith, without actual malice and in the apparent interests of the Fund and its Participants and Beneficiaries.

(D) The Board may provide for a defense pursuant to this Section by Fund counsel

- 18 -

or co-counsel or by employing other counsel or by purchasing insurance which requires that the insurer provide the defense. All of the expenses of providing a defense pursuant to this Section are proper charges against the Fund. The Fund shall have no right to recover these expenses from the Trustee, former Trustee or estate.

(E) If the Board fails or refuses to provide a Trustee, former Trustee or estate with a defense against a civil action or proceeding brought against him or it and the Trustee or former Trustee or legal representative retains his own counsel to defend the action or proceeding, he shall be entitled to recover from the Fund reasonable attorney's fees, costs and expenses incurred by him in defending the action or proceeding if the action or proceeding arose out of an act or omission in the scope of his service or duties as a Trustee of the Fund unless the Board establishes that the Trustee or former Trustee acted, or failed to act, in breach of his fiduciary duty because of willful misconduct or gross negligence.

Section 6. Neither the Employers, any Signatory Association, the Individual Employers, the Union, any Local Union, any District Council, nor any of the Trustees shall be responsible or liable for:

(A) The validity of this Trust Agreement or of the Annuity Plan;

(B) The form, validity, sufficiency, or effect of any contract or policy for annuity benefits which may be entered into;

(C) Any delay occasioned by any restriction or provision in this Trust Agreement, the Annuity Plan, the rules and procedures of the Board of Trustees, any contract or policy procured in the course of the administration of the Fund or Plan, or by any other proper procedure in administration. However, this clause shall not excuse any violation of the Collective Bargaining Agreement; or

(D) The making or retention of any deposit or investment of the Fund, or the disposition of any investment, or the failure to make any deposit or investment of the Fund, or any loss or diminution of the Fund, except any loss due to the gross neglect or willful misconduct of a particular person.

Section 7. Neither the Employers, any Signatory Association, any Individual Employer, the Union, any Local Union, nor any District Council shall be liable in any respect for any of the obligations or acts of the Trustees because the Trustees are in any way associated with the Employer, Signatory Association, Individual Employer, Union, Local Union, or District Council.

Section 8. Subject to and within the limitations of law and any applicable government regulations, each Trustee shall be reimbursed by the Fund for all expenses reasonably, properly and actually incurred by him in attending a meeting of the Board of Trustees or of a committee meeting of the Board, or in the performance of any other of his duties with the Plan, including attendance at educational or training conferences, institutes or other meetings relevant to the duties authorized by the Board, in accordance with the rules and regulations adopted by the Board.

Section 9. Any Trustee who resigns or is removed from office shall turn over to the Chairman or Co-Chairman of the Board of Trustees or the principal office of the Fund any and all records, books, documents, monies and other property in his possession or under his control which belong to the Fund at which were received by him in his capacity as Trustee.

Section 10. The name of the Fund may be used to designate the Trustees collectively and all instruments may be effected by the Board of Trustees in the name of the Fund.

- 19 -

# ARTICLE VIII
## Arbitration

Section 1. In the event that the Trustees deadlock on any matter arising in connection with the administration of the Fund or the Annuity Plan, they shall agree upon a neutral person to serve as an impartial umpire to decide the dispute. The Employer Trustees and the Employee Trustees may, by mutual agreement, select an equal number of representatives from their respective Trustee groups to sit with the umpire to constitute a Board of Arbitration. The decision of a majority of this board shall be final and binding upon the Trustees and the parties to and the Participants and Beneficiaries of this Trust Agreement and the Plan. Otherwise, the decision of the impartial umpire shall be final and binding upon the Trustees, the parties to and the Participants and Beneficiaries of this Trust Agreement and the Plan. Any matter in dispute and to be arbitrated shall be submitted to the Board of Arbitration or the impartial umpire, in writing, and in making its or his decision, the board or umpire shall be bound by the provisions of this Trust Agreement, the Plan, and the Collective Bargaining Agreement and shall have no authority to alter or amend any of the terms of those agreements. If the Trustees cannot jointly agree upon a statement submitting the matter to arbitration, each group shall prepare and state in writing its version of the dispute and the question or questions involved. The decision of the Board of Arbitration or the impartial umpire shall be available in writing within 10 days after the submission of the dispute.

Section 2. If an agreement in an impartial umpire is reached within 10 days, or within the time the Trustees may allow for this purpose, an umpire shall, on petition of either the Employer Trustees or the Employee Trustees be appointed by the United States District Court for the Northern District of California.

Section 3. The reasonable expenses of the arbitration, including any necessary court proceedings to secure the appointment of an umpire or the enforcement of the arbitration award (excluding the fees and expenses of witnesses called by the parties and the cost of any attorneys other than the Fund attorneys selected pursuant to Article IV, Section 4(D)), shall be a proper charge against the Fund. No expense shall be deemed reasonable under this Section unless and until approved by the Board of Trustees

Section 4. No matter in connection with the interpretation or enforcement of any collective bargaining agreement shall be subject to arbitration under this Article. No matter which is subject to arbitration under this Article shall be subject to the grievance procedure or any other arbitration procedure provided in any of the collective bargaining agreements.

# ARTICLE IX
## General Provisions

Section 1. Subject to the provisions of the Collective Bargaining Agreement, the rights and duties of all parties, including the Employers, the Signatory Associations, the Individual Employers, the Union, the Local Unions, the District Councils, the Participants and their Beneficiaries, and the Trustees, shall be governed by the provisions of this Trust Agreement and the Plan and any insurance policies or contracts procured or executed pursuant to this Trust Agreement.

Section 2. No Participant, Beneficiary or other person shall have any right or claim to benefits under the Plan other than as specified in the Plan. Any claim to benefits from the Fund, and any claim or right asserted under the Plan or against the Fund, regardless of the basis asserted for the claim and regardless of when the act or omission upon which the claim is based occurred, shall be resolved by the Board of Trustees under and pursuant

to the Plan and its decision with regard to the claim or right shall be final and binding upon all persons affected by the decision. The Board of Trustees shall establish a procedure for the presentation, consideration and determination of any claim or right, which shall comply with ERISA. No action may be brought for benefits under the Plan or to enforce any right or claim under the Plan or against the Fund until after the claim for benefits or other claim has been submitted to and determined by the Board in accordance with the established procedures and the only action which may be brought is one to enforce the decision of the Board or to clarify the rights of the claimant under that decision. Neither the Employers, any Signatory Association, any Individual Employer, the Union, any Local Union or District Council, nor any of the Trustees shall be liable for the failure or omission for any reason to pay any benefits under the Plan.

Section 3. Any notice required to be given under the terms of this Trust Agreement or the Plan shall be deemed to have been duly served if delivered personally to the person to be notified in writing, or if mailed in a sealed envelope, postage prepaid, to the last known address shown in the records of the Fund, or if sent by wire to the last known address.

Section 4. This Trust Agreement shall be binding upon and inure to the benefit of all Individual Employers who are now or may become members of an employer association or any Signatory Association or who become in any other way any party to the Collective Bargaining Agreement and the heirs, executors, administrators, successors, purchasers and assigns of the Employers, any Individual Employer, the Union, any Local Unions, any District Council and the Trustees.

Section 5. All questions pertaining to this Trust Agreement, the Trust Fund, or the Plan, and their validity, administration and construction shall be determined in accordance with the laws of the United States and any applicable laws of the State of California.

Section 6. If any provision of this Trust Agreement, the Plan, the rules and procedures, or any step in the administration of the Plan is held to be illegal or invalid for any reason, or to render payments by the Individual Employers into this Trust non-deductible for tax purposes or taxable to the Individual Employer, or to prevent or defeat any other objective, that holding shall not affect the remaining portion of this Trust Agreement, the Plan or the rules and procedures, unless that holding prevents accomplishment of the objectives and purposes of the Trust Agreement and Plan. In the event this occurs the necessary steps to remedy any defect shall be taken immediately.

Section 7. Except to the extent necessary for the proper administration of the Fund, all books, records, papers, reports, documents or other information obtained with respect to the Fund shall be confidential and shall not be made public or used for any other purpose. Nothing in this Section shall prohibit the preparation and publication of statistical data and summary reports with respect to the operations of the Fund nor the cooperation with benefit funds authorized by other provisions of this Trust Agreement.

Section 8. In the establishment and maintenance of the Fund, and in the execution, amendment and implementation of this Trust Agreement, the Union acts for and on behalf of the Employees and as their collective bargaining representatives and agents, and every agreement or act of the Union in connection with the establishment, maintenance and operation of the Fund or the Plan shall be deemed to be and is the agreement or act of the Employee, or Employees, concerning or affected by the agreement or action.

Section 9. In the establishment and maintenance of the Fund and in the execution, amendment and implementation of this Trust Agreement, the Employers act for and on behalf of the Individual Employers who, at the time of the execution of this Trust Agreement are, or become members of any of the Signatory Association, and for and on behalf of any other Individual Employer who is required by the Collective Bargaining Agreement to make contributions to the Fund or who in fact

makes one or more Contributions to the Fund. Every agreement or act of the Employers in connection with the establishment, maintenance and operation of the Fund or the Plan shall be deemed to be and is the agreement or act of the Individual Employers, or Individual Employer, concerned or affected by the agreement or action.

Section 10. It is the intent and purpose of the parties that Contributions to the Fund shall be at all times deductible by the Individual Employers for income tax purposes in the taxable year when paid, that benefits to Participants and their Beneficiaries shall be at all times taxable to them, if at all, only in the year benefits are distributed or made available to Participants or Beneficiaries and that the Trust created by this Trust Agreement under the Internal Revenue Code has been made, and the parties and the Board of Trustees have done whatever was necessary to secure the qualification. If any administrative or judicial ruling holds that any provision of this Trust Agreement or of the Plan prevents or defeats the qualification of the Trust or any other objective stated in this Section, either under existing laws or regulations or under any laws or regulations subsequently enacted or adopted, or if for any reason it shall be necessary or desirable to amend this Trust Agreement or the Plan to accomplish any objective, the parties will enter into negotiations with regard to the amendment of this Trust Agreement or the Plan to accomplish the qualification or other objectives. Any amendment shall be effective, insofar as practicable, as of the effective date of this Trust Agreement or of the Plan or as of the effective date of any law or regulation enacted or adopted.

Section 11. Any payment required by a decision of the Board shall be due and payable in the City and County of San Francisco, California, and any action or proceeding to enforce or clarify that decision shall be brought in a court of competent jurisdiction in that jurisdiction and County. Any action or proceeding affecting the Fund, the Plan or the Trust shall be brought solely against the Fund as an entity, and solely by or on behalf of the claimant in the claims procedure established pursuant to Section 2 of this Article. Neither the Employers, nor any Signatory Association, the Union, any Local Union or District Council, any Participant or Beneficiary or other person shall be entitled to notice of any action or proceeding or to service of process. Any final judgment entered in any action or proceeding shall be binding upon all of the parties so long as judgment does not attempt or purport to impose any personal liability upon or against any party not joined or not served in the action or proceeding.

## ARTICLE X
## Non-Member Employers

Section 1. Any Individual Employer who is not a member of or represented by Employers or a Signatory Association but who is performing work coming within the jurisdiction of the Union may become a party to this Trust Agreement by executing in writing and depositing with the administrative office of the Board of Trustees his or its acceptance of this Trust Agreement, in a form acceptable to the Board.

Section 2. Any Individual Employer who executes and deposits a written acceptance, or who in fact makes one or more Contributions to the Fund, assumes and shall be bound by all of the obligations imposed by this Trust Agreement upon the Individual Employer, is entitled to all rights under this Trust Agreement and is otherwise subject to it in all respects.

22

## ARTICLE XI
## Amendment and Termination

Section 1. The provisions of this Trust Agreement may be amended or modified at any time, and from time to time, by mutual agreement of the Employers and the Union subject to the terms and conditions of the Collective Bargaining Agreement, any applicable law or regulation. Any amendment or modification must be executed in counterpart.

Section 2. Subject to the provisions of this Article and Article IX, Section 6, of this Trust Agreement, this Trust is irrevocable and the provisions of this Trust Agreement shall continue in effect during the term of the Collective Bargaining Agreement and any amendments, renewals or extensions, which provide for the continuation of payments into the Fund and the Annuity Plan and for a period of 6 months following the termination of the Fund and the Plan.

Section 3. This Trust Agreement and the Trust may be terminated by the Employers and the Union by an instrument in writing executed by mutual consent at any time, subject to the provisions of Section 4 of this Article. Upon the termination of the Trust, any monies remaining in the Fund after the payment of all expenses and obligations of the Trust shall be paid or used for the continuance of one or more benefits in accordance with the provisions of the Plan, until the Fund is exhausted.

Section 4. In no event shall any amendment or modification of this Trust Agreement, or the termination of this Trust Agreement, result in any portion of the Fund reverting to, or being recoverable by, any of the Employers, any Signatory Association, any Individual Employer, the Union, or any Local Union, or result in the diversion of any portion of the Fund to any purpose other than the exclusive benefit of Participants and their Beneficiaries under the Plan and the payment of the administrative expenses of the Fund and the Plan.

Section 5. In no event shall the Trust established by this Trust Agreement continue for a longer period than is permitted by law.

Executed as of May 20, 1997.

FOR THE EMPLOYERS:

ASSOCIATED GENERAL CONTRACTORS OF CALIFORNIA, INC.

By: (Signed)    Thomas T. Holsman

CONSTRUCTION EMPLOYERS ASSOCIATION

By: (Signed)    Michael Walton

HOME BUILDERS ASSOCIATION OF NORTHERN CALIFORNIA

By: (Signed)    Paul Balducci, Jr.

MILLWRIGHTS EMPLOYER ASSOCIATION

By: (Signed)    Stephen P. Lyons

FOR THE UNION:

CARPENTERS 46 NORTHERN CALIFORNIA COUNTIES CONFERENCE BOARD

By: (Signed)    Jim R. Green

By: (Signed)    John P. Casey

21

## ACCEPTANCE OF OFFICE BY TRUSTEES

The undersigned accept office as Trustees appointed pursuant to this Agreement and agree to act under and be subject to all of the terms and conditions of this Agreement. The undersigned declare that they hold the Fund created by this Agreement in trust for the uses and purposes set forth in this Agreement.

Dated: August, 1981

| Initial Employer Trustees | Initial Employee Trustees |
| --- | --- |
| John Griffin | Warren O. Stevens |
| Robert Hallici | Jim R. Green |
| George Detweiler | Harvey H. Landry, Jr. |
| Charley Peterson | Frank Murabito |
| Paul C. Peterson | Larry Null |
| Howard A. Russell | Ken Oliver |
| Lawrence F. Walters | John L. Watts |

## SUBSTITUTION OF TRUSTEES

Changes in the composition of the Board of Trustees can be obtained from the Carpenter Funds Administrative Office.

## SUBSTITUTION OF CORPORATE CO-TRUSTEE

Changes in the named Corporate Co-Trustees can be obtained from the Carpenter Funds Administrative Office.

## CHANGES IN CONTRIBUTION RATE

Changes in the Contribution rate schedule since the inception of the Trust are available at the Carpenter Funds Administrative Office.

24



# CARPENTERS 46 NORTHERN CALIFORNIA COUNTIES
## MEMORANDUM AGREEMENT

It is hereby mutually understood and agreed by and between the undersigned individual employer or association and the Carpenters 46 Northern California Counties Conference Board, for and on behalf of all its affiliated Local Unions and District Councils in the 46 Northern California Counties, hereinafter referred to as "Union," that for and in consideration of services performed and to be performed by carpenters for the individual employer, the individual employer or association agrees to comply with all wages, hours, and working conditions set forth in the Carpenters Master Agreement for Northern California effective July 1, 1999 through June 30, 2004 (which Agreement is incorporated herein by reference and a copy of which has been delivered to me and receipt of which is hereby expressly acknowledged), which amends, modifies, supplements and renews each and every, all and singular, previous Carpenters Master Agreements or individual employer Memorandum Agreements in the construction industry in the 46 Northern California Counties and any future modifications, changes, amendments, supplements, extensions or renewals of or to said Master Agreement which may be negotiated between the parties thereto for the term thereof. The individual employer expressly acknowledges that it has satisfied itself that the Union represents a majority of its employees employed to perform bargaining unit work and that the Union is the collective bargaining representative of such employees. The individual employer specifically agrees it is establishing or has established a collective bargaining relationship within the meaning of Section 9 of the National Labor Relations Act of 1947, as amended, by executing this Agreement and/or by the execution of previous Memorandum Agreement(s).

The term "Master Agreement" referred to in this Memorandum Agreement shall be the Master Agreement referred to above or any other agreement designated in writing by the Union as the "Master Agreement" for a term or period subsequent to May 1, 1986 or any subsequent modifications, changes, amendments, supplements, extensions or renewals of or to said designated Master Agreement.

The individual employer by executing this Memorandum Agreement continues to be bound by each and every of the Memorandum Agreements previously signed by said individual employer, if any, for all work performed by said individual employer as described in said Master Agreement and as covered by said Master Agreement regardless of the name or style of doing business or method of organization of any individual employer entity including but not necessarily limited to any activity as a contractor, subcontractor, owner, developer or construction manager and specifically applies to any company, firm or corporation in the construction industry with which or to which the undersigned has any connection of any nature or kind whatsoever.

The individual employer agrees to pay all sums of money for each hour paid for or worked by employees performing work covered by said Master Agreement to each and every, all and singular, of the Trust Funds specified in said Master Agreement and to accept, assume, and be bound by, all of the obligations of any Trust Agreement, Plan or Rules, or any amendments, modifications or changes thereof made by the parties thereto, as are now or may hereafter be imposed upon any individual employer by or pursuant to any such Trust, Trust Fund or Plan as set forth in the Master Agreement or any applicable Trust Agreement.

The individual employer further agrees that he or it does irrevocably designate and appoint the employer members of said Trust Funds and Plans mentioned in the Master Agreement as his or its attorneys in fact for the selection, removal and substitution of Trustees or Board members as provided in the Trust Agreements or Plans as may be hereinafter provided by or pursuant to said Trust Agreements or Plans.

Notwithstanding any provision of the Master Agreement or this agreement, it is understood that the individual employer is required to give written notice to the Union at 446 Hegenberger Road, Oakland, California 94621 of the name or names of any entity, person, firm or corporation engaged in the construction industry with which the undersigned becomes or is now connected and any change of name or style under which the undersigned will be or is engaged in the construction industry in the territory covered by said Master Agreement. Such written notice must be given no less than ten (10) days prior to the date of any such change of name, new corporation, change of corporate status, creation or formation of any entity, etc.

The Union agrees to perform all of the provisions of the agreement hereinabove referred to.

This agreement shall be binding upon the heirs, executors, administrators, successors, purchasers and assigns of the individual employer, including any name or style under which business is conducted with respect to work covered by this Agreement.

Notwithstanding any provision of the Master Agreement or this Agreement, the individual employer agrees that upon a showing by the Union or any of its affiliates that a majority of the individual employer's shop employees, if any, have designated the Union or any of its affiliates as their representative for collective bargaining purposes, the individual employer shall recognize the Union and/or its affiliates as the collective bargaining representative of its shop employees and shall forthwith comply with all wages, hours, terms and conditions of the then applicable Millmen's Master Agreement for the term thereof. Proof of such majority representation shall be established by the submission of authorization cards to a neutral third person who shall compare the signatures with appropriate employee records. The individual employer shall fully cooperate in such review upon demand by the Union or any of its affiliates. Except as set forth below the individual employer waives any right that he or it may have to terminate, abrogate, repudiate or cancel this Agreement during its term, or during the term of any future modifications, changes, amendments, supplements, extensions, or renewals of or to said Master Agreement; or to file or process any petition before the National Labor Relations Board seeking such termination, abrogation, repudiation or cancellation.

This Agreement shall remain in full force and effect until June 30th, 2004, and shall continue thereafter for the term of any future modifications, changes, amendments, supplements, extensions or renewals of or to said Master Agreement which may be negotiated between the parties thereto unless either party to this Memorandum Agreement gives written notice to the other of the desire to change or cancel not more than ninety (90) nor less than sixty (60) days prior to June 30, 2004, or June 30th of any year in which the Master Agreement may terminate. Neither this Agreement nor the Carpenters Master Agreement for Northern California, which is incorporated herein, may be changed or modified, in any way, without the written approval by the Chairman or Executive Director of the Union.

**UNION:** Carpenters 46 Northern California Counties Conference Board for and on behalf of all its affiliated Local Unions and District Councils in the 46 Northern California Counties.

| | |
|---|---|
| _signature_ | _LOCAL 22_ |
| Robert Alvarado, Chairman | Local Union or Regional Council |
| _Bill Feyling_ | _signature_  **RECEIVED** |
| William Feyling, Executive Director | By Union Representative    APR 10 2003 |

**EMPLOYER:** _Saul M. Cruz_

CARPENTERS 46 NORTHERN CALIFORNIA COUNTIES CONFERENCE BOARD

PRINT: – Name of Individual Employer or Association

Contractor's License Number(s)   _PENDING_

_signature_

Title (RME, RMO, Partner, Owner, etc.)   _OWNER_

Signature of Individual Employer or Authorized Representative

_77 ANDERSON ST._

Date Signed _4/8/03_    Effective Date _4/8/03_

Address

_SAN FRANCISCO 94110_

Telephone Number _415 268-5217_

City and State (Include Zip Code)

**EXHIBIT B**

# *S M C*

*MODULAR SYSTEMS INSTALLATIONS & REPAIRS*

*Saul M. Cruz*                    *Tel.  (415) 268-5217*
*733 Cortland Ave.*               *Cell (415) 867-8730*
*San Francisco, Ca 94110*        *Fax (415) 642-7564*



# Office of The County Clerk

## Search Detail - Fictitious Business Search

Step 3 of 3
**1** **2** **3**



**SFGO**
Online Ser

**Document Number Date Filed**
2003-0264728-00   02/21/2003

|  |  | Start Date | Abandonment Date |
|---|---|---|---|
| **Business Name** | S.M.C. MODULAR SYSTEM INSTALLATIONS & RE | 02/21/2003 |  |
| **Address** | 77 ANDERSON ST |  |  |
| **City, State and Zip Code** | SAN FRANCISCO, CA, 94110 |  |  |

|  |  | Start Date | Withdrawal Date |
|---|---|---|---|
| **Owner Name** | CRUZ MAGDALENA L | 02/21/2003 |  |
| **Owner Name** | CRUZ SAUL M | 02/21/2003 |  |

<- Previous Record - New Search - Next Record ->

Return To List

## Technical Support for Online Services

If you need help or have a question about this service, please visit our support area.



**Promissory Note**

CTF: 57233/57234

### SMC Modular Installation

1  For value received, the undersigned promises to pay to the order of the Carpenters Health and
2  Welfare Trust Fund for California, the Carpenters Pension Trust Fund for Northern California, the
3  Vacation and Holiday Trust Fund for Northern California, the Carpenters Annuity Trust Fund for
4  Northern California, the Carpenters Apprenticeship and Training Trust Fund for Northern
5  California, the Contract Work Preservation Trust Fund for Northern California, and the
6  Construction Industry Advancement Fund, the sum of **$220,226.53** due to said Funds, plus interest
7  from the date hereof, until paid at the rate of 9.25 (9.25%) per cent per annum on the unpaid
   balance of said sum.

8  The principal amount of **$220,226.53** and interest and all installment payments shall be payable
9  at the principal offices of the Trust Funds at 265 Hegenberger Road, Suite 100 in Oakland,
10 California. If all installments are paid according to the schedule described in this note the total
   interest payment will be **$8,676.62.**

11 If any installment is not paid in full in a timely fashion there shall be due additional interest in
12 accordance with the terms of this note, which will cause the total interest payment to increase.
13 There is no pre-payment penalty, and this note may be retired at any time by payment of all
14 outstanding principal and all interest accrued to the date of retirement.

15 The sum of **$25,000.00**, due and payable upon execution of this note, has been processed by the
   Trust Funds leaving a remaining balance of **$220,226.53**. The principal balance of **$220,226.53**
16 shall be due and payable in twenty-five monthly installments.

17 Twenty-Four (24) installment payments will be due in the amount of **$4,006.358**. The first
18 installment payment will commence on May 15, 2007 and continue thereafter to be due and
19 payable on the 15th day of each month up to and including April 15, 2009. One installment
20 payment, the 25th and last, will be due on May 15, 2009 in the amount of **$132,750.70**.

21 Additionally, Liquidated Damages in the amount of **$22,022.65** will be added to the principal
22 amount owing if the above payments are not received on a timely basis, **but will be waived upon
   timely payment of this Promissory Note.**

23 Each payment shall be credited first on interest then due and the remainder on principal; the
24 interest shall thereupon cease upon the principal so credited.

25 If any one of said installments is not paid in full when said installment becomes due and
26 payable, the whole of the principal sum then remaining unpaid, together with the interest that shall
27 have accrued thereon shall forthwith become due and payable at the election of the holders of this
28 note.

EXHIBIT _D_

**Promissory Note**

CTF: 57233/57234

**SMC Modular Installation**

If the collective bargaining agreement (pursuant to which fringe benefit contributions referenced in this promissory note were to be paid by the undersigned to the Trust Funds) terminates, then the whole of the principal sum then remaining unpaid, together with the interest that shall have accrued thereon, shall forthwith become due and payable at the election of the holders of this note.

Further, if the undersigned falls delinquent in payment of monthly contributions on behalf of employees performing work covered under the 46 Northern California Counties Carpenters Master Agreement, such payment of monthly contributions to be made in accordance with the terms of said Master Agreement, the whole of the principal sum then remaining unpaid, together with interest that shall have accrued thereon shall forthwith become due and payable at the election of the holders of this note.

Additionally, the undersigned agrees to remain current on all fringe benefit contributions, not yet due and payable, which become due and payable to the Carpenters Trust Funds during the term of this promissory note. It is a material condition of this promissory note that **Employer** remain current on all such fringe benefit contributions and failure to do so shall constitute default.

If the undersigned defaults in the making of any of said payments or any part thereof and if the holders of this note consult legal counsel with respect thereto, there shall be added to the undersigned's obligation under this note reasonable attorneys' fees, court costs and all other reasonable expenses incurred by the holders in connection with such suit or claim, including any and all appellate proceedings therein.

The time payment plan pursuant to this Promissory Note is not in violation of any state or federal law. However, if said payment plan is found to be in violation of any state or federal law, then the total amount of the Promissory Note then due shall immediately become due and payable.

If incorporated, the individual and/or company (collectively referred to as **Employer**), acknowledge they and each of them are doing business as SMC MODULAR SYSTEM INSTALLATIONS & RE (the corporation). The **Employer** acknowledges that they, and each of them, are individually liable, bound and subject to the 46 Northern California Counties Carpenters Master Agreement (the Agreement). The **Employer** further agrees that they and/or each of them, as an individual signatory and/or other entity signed to this note are subject to the grievance procedure set forth in Section 51 of the Agreement and, specifically, that any dispute arising over the interpretation, application or enforcement of this promissory note may be grieved and arbitrated under that procedure, including any mechanism for enforcing an Arbitration Award in the event of non-compliance.

57234PN 040207

**Promissory Note**

**SMC Modular Installation**

1   In the event there is any dispute over the payment plan, the amount due after the payment plan
2   has commenced, any issue regarding liquidated damages, attorneys' fees or the like, such issues
3   shall be submitted to the Permanent Neutral Arbitrator designated by the Carpenters 46 Northern
4   California Counties Master Agreement in accordance with the grievance procedure of said Master
5   Agreement.  No suit shall be filed to collect on said Promissory Note unless and until such matter
6   is first presented to the arbitrator and/or Board of Adjustment for resolution.

Dated: _N/3/07_ _____

**MAGDALENA L. CRUZ, AS AN INDIVIDUAL**

SSN: _555- 64- 6230_   CADL: _N7471001_ _____

/rac/opeiu-3-afl-cio(125)
57234pna 040207

**IN GRIEVANCE PROCEEDINGS
PURSUANT TO SECTION 51 OF THE
CARPENTERS MASTER AGREEMENT**

| | |
|---|---|
| **NORTHERN CALIFORNIA CARPENTERS REGIONAL COUNCIL,** )<br>)<br>) | |
|     **Grievant,** )<br>) | **Grievance #07-166** |
| **vs.** )<br>) | **DECISION AND AWARD OF THE BOARD OF ADJUSTMENT** |
| **SAUL M. CRUZ, Individually; SAUL M. CRUZ, Individually and doing business As SMC MODULAR INSTALLATION; MAGDALENA L. CRUZ, Individually; MAGDALENA L. CRUZ, Individually and doing business as SMC MODULAR INSTALLATION; SMC MODULAR INSTALLATION,** )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
|     **Employer.** )<br>) | |

These grievance proceedings were convened on this 8th day of January 8, 2008, in the offices of the Carpenters 46 Northern California Counties Conference Board located at 265 Hegenberger Road, Ste. 220, Oakland, California.

The Northern California Carpenters Regional Council (hereinafter referred to as "Regional Council"), appeared through its representative, Paul Cohen. Michael Plommer and Jarrod Mizusawa of the Carpenters Trust Funds also appeared.

The Employer, Saul M. Cruz, Individually; Saul M. Cruz, individually and doing business as SMC Modular Installation; Magdalena L. Cruz, Individually; Magdalena L. Cruz, individually and doing business as SMC Modular Installation; and SMC Modular Installation (hereinafter collectively referred to as "Employer"), appeared through its representative, Saul Cruz.

A quorum of the Board of Adjustment, including the Arbitrator, Gerald R. McKay, was present.

Pursuant to agreement, the matter was submitted to the Board of Adjustment for decision, which decision is final and binding upon the parties.

EXHIBIT _E_

The following exhibits were introduced:

1.    Copy of a Carpenters Master Agreement for Northern California;

2.    Copy of a Carpenters 46 Northern California Counties Memorandum Agreement signed and dated by the company on April 8, 2003;

3.    Copy of Notice of Grievance, with attachments, dated December 13, 2007;

4.    Copy of a letter dated December 17, 2007, notifying the Employer of the date and time of the hearing, which letter was sent to the last known address of Saul M. Cruz, Individually; Saul M. Cruz, individually and doing business as SMC Modular Installation; Magdalena L. Cruz, Individually; Magdalena L. Cruz, individually and doing business as SMC Modular Installation; and SMC Modular Installation;

5.    Return receipt from certified mail dated December 18, 2007;

6.    Copy of a Northern California Carpenters Trust Fund Remittance Report for the month of September, 2007;

7.    Copy of a Northern California Carpenters Trust Fund Remittance Report for the August, 2007.

Testimony was given by both sides with respect to the grievance.

Remedy sought:

That the Employer forthwith cease and desist any further violations of the Carpenters Master Agreement for the remainder of its term;

That the Employer forthwith comply with said Agreement for the remainder of its term;

That the Employer be assessed for violations as found.

The evidence having been taken, the matter stood submitted for decision by the Board of Adjustment.

## DECISION

1.    Based upon the evidence submitted, it is found that the Employer, Saul M. Cruz, Individually; Saul M. Cruz, individually and doing business as SMC Modular Installation; Magdalena L. Cruz, Individually; Magdalena L. Cruz, individually and doing business as SMC Modular Installation; and SMC Modular Installation (hereinafter collectively referred to in this Decision and Award as "Employer"), are each a party to and bound to the current Carpenters Master Agreement. The



Carpenters Master Agreement specifically requires the Employer to participate in the grievance procedure and authorizes the Board of Adjustment or Arbitrator to hear and decide the matter on a default basis in the event of Employer non-participation.

2.  The Board of Adjustment has considered the evidence pertaining to the merits of the grievance and finds that the grievance filed by the Northern California Carpenters Regional Council is meritorious and that the Regional Council is entitled to a remedy to resolve this matter.

3.  Having found in favor of the Regional Council, the Board of Adjustment issues the following Award:

## AWARD

1.  The Employer shall forthwith cease and desist any further violations of the current 46 Northern California Counties Carpenters Master Agreement for Northern California for the remainder of its term.  The Employer shall forthwith comply with said Agreement for the remainder of its term.

2.  The Employer is found to be in violation of the collective bargaining agreement and shall submit the amount of $271,799.71 in unpaid fringe benefits, audit costs, plus liquidated damages.

3.  The Employer shall also immediately submit all Trust Fund Reporting Forms that have not been submitted, including the months of October, November, and December, 2007, with all monies due and owing for those months.

4.  The Employer shall immediately cease and desist from improperly reporting and untimely paying Trust Fund contributions that are required to be paid to the various Trust Funds referred to in the Carpenters 46 Counties Master Agreement.

5.  The Employer shall correctly report and timely pay all required contributions to each and all of the various Trust Funds referred to in the Carpenters 46 Counties Master Agreement.  Correct reporting means to report each individual employee for all hours worked and paid for.  Timely payment means that all payments must be paid on or before the 15th and no later than the 25th of each month following the work month for which each such report is made.

6.  The Employer shall forthwith submit to an audit of all of its books and records by representatives of the Northern California Carpenters Trust Funds for the period March 10, 2005 through date of audit entry in order to determine the amount of wages and fringe benefits due, if any, and to whom they may be due.  For purposes of this Award, the amount of wages due shall be based upon the

number of hours worked for which Trust Fund contributions are deemed to be due the Carpenter Trust Funds by the auditors.

The books and records which must be submitted to the auditors are all those referred to in Section 21 of the Carpenters Master Agreement and the records referred to in Article IV, Section 8, of the Carpenters Health and Welfare Trust Agreement; Article IV, Section 6, of the Carpenters Pension Trust Agreement; Article VII, Section 4, of the Carpenters Vacation Holiday Trust Agreement; and Article IV, Section 6, of the Carpenters Apprentice Trust Agreement, including, but not necessarily limited to all of the following records as has been determined by the Joint Delinquency Committee of the Carpenters Trust Funds to be relevant:

(a)     Contribution Return and Report of Wages - California (Form DE-3)

(b)     Contribution Returns and Report of Wages – Federal

(c)     Time cards for all employees

(d)     Payroll Journal

(e)     Workers Compensation Reports

(f)     Individual Earnings Record

(g)     Forms W-2, W-4, 1096 and 1099

(h)     Trust Fund Reports for other trades

(i)     General check registers

(j)     Check stubs or vouchers

(k)     Bank statements and cancelled checks

(l)     Job Costs Records, copies of all contracts

(m)     General Ledger, Cash Receipts Journal

(n)     Individual, Corporate and/or Partnership Tax Returns

(o)     Vendor's invoices

(p)     Records of related entities

(q)   Other books and records as may be necessary to conduct appropriate testing to assume the accuracy of records that have been reviewed.

7.   In the event that there is any dispute between the parties to this Award concerning the amount of wages and/or fringe benefits due, or to whom said amounts are to be paid, or the amount that is to be paid following the audit, the Arbitrator hereby retains jurisdiction over these proceedings to resolve or adjust said differences upon further submission to it by any of the parties to this Award.

8.   In the event that the Employer does not comply with the terms of this Award and if the Regional Council or Trust Funds files suit to confirm this Award, the Regional Council or Trust Funds shall be entitled to reasonable attorneys' fees and court costs incurred in enforcing this Award. Said attorneys' fees and court costs are deemed a part of the remedy awarded by the Arbitrator in order to resolve the issues raised in the grievance procedure as set forth in Section 51 of the Carpenters Master Agreement.

9.   It is further ordered that pursuant to Section 51, the Employer shall pay the sum of $300.00 as and for its share of the cost of these proceedings.

10.   Amount due under this Award:

(a)   Unpaid fringe benefits, audit costs, and liquidated damages  $271,799.71
(b)   Cost of proceedings                                              300.00

**Amount due:**                    **$272,099.71**

1/9/08
_____
Date

(s) Fred R. Wright
_____
Fred R. Wright, Member of the Board of
Adjustment for and on behalf of the Board

** The above sum does not include the amount due and owing for wages and/or fringe benefits (if any) as determined by the audit, in addition to the Trust Fund Reporting Forms that have not been submitted, including the months of October, November, and December, 2007, with all monies due and owing for those months.

5

CASE NUMBER(S):  07-166

CERTIFICATE OF SERVICE
(1013a, 2015.5 C.C.P.)

I am a citizen of the United States and a resident of the County of Alameda, State of California.

I am over the age of eighteen years and not a party to the within action; my business address is

265 Hegenberger Road, Suite 220, Oakland, California 94621.  On January 9, 2008, I served

the within **DECISION AND AWARD OF THE BOARD OF ADJUSTMENT** on the interested

parties in said action by placing a true and exact copy thereof enclosed in a sealed envelope

with postage thereon fully prepaid, in the United States Post Office mail box at Oakland,

California, addressed as follows:

> **Saul M. Cruz, Individually;  Saul M. Cruz,
> Individually & dba SMC Modular Installation;
> Magdalena L. Cruz, Individually; Magdalena L.
> Cruz, Individually & dba SMC Modular
> Installation; SMC Modular Installation
> 1731 Poplar Street
> Oakland, CA  94607**

SENT CERTIFIED AND REGULAR MAIL.  CERTIFIED RECEIPT #7007 2560 0001 6736 1870.

I certify under penalty of perjury that the foregoing is true and correct.

Executed in Oakland, California on January 9, 2008.

Patricia K. Reese