UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

THE BOARD OF TRUSTEES OF THE
CARPENTERS HEALTH AND WELFARE
TRUST FUND FOR CALIFORNIA, ET AL.,

        Plaintiff(s),

v.

SAUL M. CRUZ, ET AL.,

        Defendant(s).
_____/

No. C-08-01067 CW (JCS)

**REPORT AND RECOMMENDATION RE PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT [Docket No. 9]**

## I. INTRODUCTION

Plaintiffs in this action have filed a combined petition to confirm three arbitration awards pursuant to 9 U.S.C. §9 and complaint asserting various claims under ERISA, 29 U.S.C. §1001 *et seq*. Defendants Saul M. and Magdalena L. Cruz, individually and doing business as SMC Modular Installation ("SMC Modular" or the "Employer"), did not appear and default was entered against them on April 1, 2008. Plaintiffs now bring a Motion for Default Judgment (the "Motion"), seeking entry of default judgment for unpaid contributions, interest thereon and attorneys' fees, and for an order requiring that Defendants submit to an audit. Plaintiffs further request that the Court confirm the arbitration awards. A hearing was held on June 20, 2008, at 9:30 a.m. Plaintiffs filed supplemental materials on July 7, 2008. For the reasons stated below, the motion should be GRANTED in part and DENIED in part.

## II. BACKGROUND

Plaintiffs are the Board of Trustees of the Carpenters Health and Welfare Trust Fund for California, Carpenters Vacation-Holiday Trust Fund for Northern California, Carpenters Pension

Trust Fund for Northern California, Carpenters Annuity Trust Fund for Northern California and Carpenters Training Trust Fund for Northern California ("Trust Funds") and the Carpenters 46 Northern California Counties Conference Board for itself and on behalf of Northern California Carpenters Regional Council and Carpenters Union Local No. 22 (the "Union"). Petition to Confirm Arbitration Awards and Complaint for Audit, Breach of Contract on Promissory Note, Breach of Contract, Damages, Breach of Fiduciary Duty, and Injunctions (ERISA 28 U.S.C. § 1001, et seq., 29 U.S.C. § 185) ("Petition and Complaint") at 2. The Union is a labor organization within the meaning of 29 U.S.C. § 152(5). *Id*. at 3. Defendant SMC Modular has been an employer within the meaning of section 3(5) and section 515 of ERISA (29 U.S.C. §§ 1002(5), 1145). *Id*.

SMC Modular entered into a collective bargaining agreement with the Union by signing a Memorandum Agreement, dated April 8, 2003, that incorporates by reference the Carpenters Master Agreement (the "Master Agreement"). Petition and Complaint at 3, Ex. B (Memorandum Agreement). The Master Agreement, in turn, incorporates Trust Agreements requiring Defendants to pay contributions to the Trust Funds based on the hours worked by Union employees. Petition and Complaint at 4, Ex. A (Master Agreement). The Trust Agreements also provide for prompt payment of contributions and liquidated damages for late contributions. Petition and Complaint at 4; Declaration of Michael Plommer in Support of Plaintiffs' Motion for Default Judgment ("Plommer Decl.") ¶ 5, Ex. A (Trust Agreements).

Section 51 of the Master Agreement establishes a grievance procedure that culminates in submission of grievances to an impartial arbitrator, whose decision is to be final and binding on the parties. Petition and Complaint at 4, Ex. A. The grievance procedure provides that any party who fails to comply with an award of the arbitrator "shall be responsible for reasonable attorneys' fees for the filing and trial of any petition to confirm and enforce said decision or award, in addition to all other remedies available through law." Petition and Complaint, Ex. A at 40. Further, each Trust Agreement contains an identical provision stating that "reasonable expenses of the arbitration, including . . . the enforcement of the arbitration award . . . shall be a proper charge against the Fund." Plommer Decl. ¶ 15, Ex. A (Health and Welfare Trust at 20, Pension Trust at 21, Vacation and Holiday Trust at 23, Training Trust at 20, and Annuity Trust at 20).

Pursuant to Section 51 of the Master Agreement, the Union brought grievances against SMC Modular, culminating in arbitration. Hearings on the grievances were held on November 13, 2007, and January 8, culminating in three written arbitration decisions. Petition and Complaint at 5-6; Declaration of Jim Crotty in Support of Motion for Default Judgment ("Crotty Decl.") ¶ 7 and 9, Ex. C (November 15, 2007 Decision and Award of the Arbitrator, signed by arbitrator Gerald R. McKay (the "November 15 Award")), Ex. D (January 9, 2008 Decision and Award of the Board of Adjustment regarding Grievance #07-165, signed by arbitrator Fred R. Wright (the "First January 9 Award")); Plommer Decl. ¶ 11, Ex. E (January 9, 2008 Decision and Award of the Board of Adjustment regarding Grievance #07-166, signed by arbitrator Fred R. Wright (the "Second January 9 Award")). SMC Modular did not appear at the November 13th hearing, although it received notice of that hearing. Crotty Decl., Ex. C at 1. SMC Modular did appear at the January 8th hearings. Crotty Decl., Ex. D at 1; Plommer Decl., Ex. E at 1.

In the November 15 Award, the arbitrator found that SMC Modular was bound by the current Master Agreement and ordered that it "cease and desist any further violations of the [Master Agreement]" and pay $8,004.96 in waiting time. Crotty Decl., Ex. C at 3. The arbitrator retained jurisdiction to resolve any dispute "between the parties to this Award concerning the amount of money due, or to whom said amounts are to be paid. . . ." *Id*. The arbitrator held that if SMC Modular did not comply with the award and it was necessary to bring legal action to enforce the award, the Union would be entitled reasonable attorneys' fees and court costs incurred to enforce the award. *Id*. Finally, the arbitrator ordered SMC Modular to pay $300.00 as its share of the cost of arbitration. *Id*. at 4.

In the First January 9 Award, the Board of Adjustment ordered that SMC Modular pay an additional $30,549.15 in unpaid wages and waiting time. Crotty Decl., Ex. D at 3. The Board of Adjustment again ordered that SMC Modular cease and desist any further violations of the Master Agreement, retained jurisdiction to resolve any dispute concerning the amount of money due, and held that the Union would be entitled to reasonable attorneys' fees and court costs if it needed to bring legal action to enforce the award. *Id*. at 2-3. Additionally, the Board stated that the Employer had claimed that taxes had already been paid on the unpaid wages, but if it was later discovered that

3

1   the taxes had not been paid, the Union had the right to amend the award accordingly. *Id*. at 3.

2   Finally, SMC Modular was ordered to pay $300.00 as its share of the proceedings. *Id*. at 4.

3       In the Second January 9 Award, the Board of Adjustment ordered that SMC Modular pay an

4   additional $272,799.71 in unpaid fringe benefits, audit costs, and liquidated damages. Plommer

5   Decl., Ex. E at 5. SMC Modular was again ordered to cease and desist any further violations of the

6   Master Agreement and specifically, to cease and desist from improperly reporting and untimely

7   paying Trust Fund contributions required under the Trust Agreements. *Id*. at 3. The Board of

8   Adjustment also ordered that SMC Modular submit to an audit, as follows:

> The Employer shall forthwith submit to an audit of all of its books and records by representatives of the Northern California Carpenters Trust funds for the period March 10, 2005 through date of audit entry in order to determine the amount of wages and fringe benefits due, if any, and to whom they may be due. . .

12  *Id*. A detailed list of the documents to be provided by SMC Modular for the audit was provided. *Id*.

13  at 4. SMC Modular was also told to submit all Trust Fund Reporting Forms that had not yet been

14  submitted, in particular for the months of October, November, and December of 2007. *Id*. at 3.

15  Finally, SMC Modular was ordered to pay $300.00 as its share of the arbitration costs. *Id*. at 5.

16      Subsequently, Plaintiffs made demands upon SMC Modular to comply with the awards but

17  SMC Modular refused to do so. Petition and Complaint at 6. Plaintiffs thereafter filed this action,

18  seeking confirmation of the arbitration awards and asserting claims for audit, breach of contract on

19  promissory note, breach of contract based on the Trust Agreements, breach of fiduciary duty, and for

20  injunctive relief under ERISA. SMC Modular did not appear and default was entered; Plaintiffs

21  now seek entry of default judgment.

22      In their Motion, Plaintiffs request that the Court enter default judgement against Defendants

23  and confirm the three arbitration awards. In addition, Plaintiffs seek the following relief: 1) an order

24  directing Defendants to submit to an audit of their books and records; 2) an order requiring that upon

25  completion of the audit, Defendants shall pay all contributions due and owing in an amount to be

26  determined by said audit and interest thereon; 3) an award of reasonable attorneys' fees and costs;

27  4) an order directing and permanently enjoining Defendants to timely submit all required monthly

28  contribution reports and contributions due and owing by Defendants and 5) for this Court to retain

jurisdiction.  Motion at 3.

## III. ANALYSIS

### A. Joinder of Confirmation Proceeding with Other Claims

Plaintiffs have joined a petition to confirm the arbitration awards with a complaint alleging various claims that are based on the same facts as the arbitration awards.  The Court concludes that such joinder is improper and therefore, that Plaintiffs' claims - with the exception of their claim to confirm the arbitration awards - should be dismissed without prejudice.  *See Ottley v. Schwartzberg*, 819 F.2d 373 (2d Cir. 1987) (holding that where plaintiff trustee of trust funds for employee benefit plans joined ERISA claims with petition to confirm arbitration award awarding delinquent contributions, it was improper to join ERISA claims with petition because of summary nature of proceeding to confirm arbitration award).  The court in *Ottley* reasoned as follows:

> The statutory predicate for petitioner's damages claims, 29 U.S.C. § 1132(g)(2), is the ERISA civil enforcement provision.  It empowers certain individuals to bring civil actions, *inter alia*, to force compliance with various ERISA provisions and the terms of labor agreements governing ERISA-covered benefit plans.  A review of this provision indicates that it contemplates a formal adjudication.  Actions to confirm arbitration awards, by contrast are straightforward proceedings in which no other claims are to be adjudicated.  "[T]he confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." . . . [I]n a confirmation proceeding, the court properly may consider only the statutory bases for modifying or vacating an award and challenges to the award's clarity.

*Id*. at 376 (citations omitted).  The same reasoning applies here.  Accordingly, it is recommended that all of Plaintiffs' claims, with the exception of their claim requesting confirmation of the arbitration awards, be dismissed without prejudice.[1]

---

[1] In *Alvarado v. Newcon Constr.,* Case No. 05-4409, at 4 (N.D. Cal. June 22, 2006), the undersigned magistrate judge made a similar recommendation to the district court under similar facts.  That recommendation was adopted by the district court.  The plaintiffs did not appeal and the Court has found no case law questioning the approach that was taken in *Alvarado*.  Further, although plaintiffs in this case are represented by the same counsel as the plaintiffs in *Alvarado*, counsel failed to address the issue in the supplemental brief the Court requested on the joinder question.  Rather, their supplemental brief simply argues that Rule 8 of the Federal Rules of Civil Procedure allows pleading in the alternative.

### B.     Confirmation of Arbitration Award

#### 1.     Standard Governing Confirmation of Arbitration Awards

The Ninth Circuit has stated that "[t]he inherent nature of arbitration is a consensual agreement of the parties to substitute a final and binding judgment of an impartial entity for the judgment of the court." *Coast Trading Co. v. Pac. Molasses Co.*, 681 F.2d 1195, 1197 (9th Cir. 1982). Accordingly, judicial review of an arbitrator's decision is "both limited and highly deferential." *Barnes v. Logan*, 122 F.3d 820, 821 (9th Cir. 1997). The deferential standard "'is designed to prevent the arbitration process from being transformed from a commercially useful alternative method of dispute resolution into a burdensome additional step on the march through the court system.'" *Collins v. D.R. Horton, Inc.*, 361 F. Supp. 2d 1085, 1092 (D. Ariz. 2005) (quoting *Flexible Mfg. Sys. Pty. Ltd. v. Super Products Corp.*, 86 F.3d 96, 100 (7th Cir. 1996)). An award must be confirmed if the arbitrator even "arguably construed or applied the contract and acted within the scope" of his authority. *Id.* The Ninth Circuit has concluded that "if on its face, the award represents a plausible interpretation of the contract in the context of the parties' conduct, judicial inquiry ceases and the award must be affirmed." *Holly Sugar Corp. v. Distillery, Rectifying, Wine & Allied Workers Int'l Union* 412 F.2d 899, 903 (9th Cir. 1969).

When a party seeks an order confirming an arbitration award, "the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of the . . . [Federal Arbitration Act]." *See* 9 U.S.C. § 9. Section 10 provides that the court may vacate an arbitration award where: 1) the award was procured by corruption or fraud; 2) there was evident partiality or corruption on the part of the arbitrator; 3) the arbitrator engaged in misconduct; or 4) the arbitrator exceeded his powers or so imperfectly executed them that a "mutual, fine, and definite award" was not made. 9 U.S.C. § 10. Section 11 allows the court to modify the award where: 1) "there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award;" 2) the arbitrator has made an award on a matter not submitted to him; or 3) "the award is imperfect in matter of form not affecting the merits of the controversy."

6

### 2. Standard Governing Default Judgment

Under Federal Rule of Civil Procedure 55(b)(2), the court may enter a default judgment where the clerk, under Rule 55(a), has already entered the party's default based upon a failure to plead or otherwise defend the action. The district court's decision to enter a default judgment involves some discretion. *Lau Ah Yew v. Dulles*, 236 F.2d 415 (9th Cir. 1956) (affirming district court's denial of default judgment). The court is free to consider a wide range of factors in deciding whether to enter a default judgment, including: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986); *see also* Wright & Miller, *Federal Practice and Procedure*, Civil § 2685. In deciding whether to enter a default judgment, the court may also consider whether there would be grounds for setting aside the judgment if the defaulting party were to seek such relief. *Id.* Where a default judgment is deemed appropriate, the factual allegations of the complaint, except those relating to damages, are taken as true. *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) (citing *Pope v. U.S.*, 323 U.S. 1, 12 (1944)).

### 3. Application of Legal Standards

Default has been entered against SMC Modular and there is no evidence in the record indicating that SMC Modular's failure to appear resulted from excusable neglect. Further, the Court finds that the arbitrators' decisions were within the scope of authority under the Master Agreement, which provides for arbitration of "[a]ny dispute concerning any application or interpretations of [the Master Agreement]." Petition and Complaint, Ex. A (Master Agreement), Section 51. In addition, the Court finds no evidence in the record that there exists any of the grounds for vacating an arbitration award in this case. Accordingly, default judgment should be entered on Plaintiffs' petition to confirm the three arbitration awards.

**C.  Remedy**

Plaintiffs have requested an order requiring that SMC Modular comply with the arbitration awards, for the Court to issue an injunction compelling Defendants to submit to an audit and to amend the award to reflect any contributions found due in the audit, for interest and liquidated damages, and for Defendants to pay attorneys' fees and costs.  As discussed below, Plaintiffs are entitled only to the relief that flows from the Court's confirmation of the arbitration awards.

**1.  Audit**

Plaintiffs request that the Court issue an injunction requiring that Defendants submit to an audit.  Although entry of such an injunction under ERISA is not appropriate for the reasons discussed above, by confirming the arbitration awards, Plaintiffs will receive the relief they have requested with respect to the audit.

**2.  Additional Contributions**

Plaintiffs further request that the Court award, as part of its judgment, any additional contributions that may be found to be due as a result of a future audit.  The Court concludes that this remedy exceeds the scope of the Court's jurisdiction with respect to confirmation of the arbitration awards.  In particular, the Second January 9 Award stipulates that the arbitrator shall retain jurisdiction in the event of a dispute between the parties of the amount due after the audit.  Therefore, the proper procedure to follow after the audit is for Plaintiffs to return to the arbitrator to request that the arbitrator amend his award or awards.  If the arbitrator amends the awards, Plaintiffs may then, in turn, ask this Court to amend the default judgment to confirm the amended arbitration awards. Similarly, if Plaintiffs seek additional interest and liquidated damages based on any future audits, they should address this request first to the arbitrator, who may amend the arbitration awards as he or she deems appropriate.

**3.  Attorneys' Fees and Costs**

Plaintiffs also ask that the Court award attorneys' fees and costs incurred in this action.  Generally, attorneys' fees cannot be awarded without contractual or statutory authorization.  *Int'l Union of P.I.W. v. W. Indus. Maint., Inc.*, 707 F.2d 425, 428 (9th Cir. 1983).  However, in the absence of Congressional prohibition, it is within the inherent equitable powers of the Court to

8

award attorneys' fees when the opposing side acts in bad faith. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975). As applied to "suits for the confirmation of arbitration awards, 'when a challenger refuses to abide by an arbitrator's decision without justification, attorneys' fees and costs may properly be awarded.'" *Int'l Chem. Workers v. BASF Wyandotte Corp.*, 774 F.2d 43, 46 (2d Cir. 1985) (quoting *Bell Prod. Eng'r Ass'n v. Bell Helicopter Textron*, 688 F.2d 997, 999 (5th Cir. 1992)); *see also Sheet Metal Workers' Int'l Ass'n Local Union No. 359 v. Madison Indus.*, 84 F.3d 1186, 1192 (9th Cir. 1996) (holding that the district court did not abuse its discretion in awarding attorney fees to the union in its suit for confirmation of an arbitration award); *Int'l Union of Petroleum & Indus. Workers v. W. Indus. Maint., Inc.*, 707 F.2d 425, 429 (9th Cir. 1983) (affirming the award of attorneys' fees in cases involving the confirmation of arbitration awards). Furthermore, the award of attorneys' fees serves to deter unjustified refusals to comply with arbitration awards and to compensate plaintiffs for the cost of going to court in order to obtain relief that an arbitrator has already determined is legally owed to them. *Int'l Union*, 707 F.2d at 428.

In the present case, there is evidence of bad faith, as Defendants have refused to comply with the arbitration awards and have also failed to appear in this action. *See Sheet Metal Workers'*, 84 F.3d at 1192 (finding that refusing to abide by an arbitrator's award demonstrates bad faith). Therefore, attorneys' fees and costs should be awarded. The Court notes that this result is consistent with the three arbitration awards, which stated that Plaintiffs would be entitled to attorneys' fees and costs if they had to go to court to enforce the awards. Thus, Plaintiffs are also entitled to this remedy by virtue of the Court's confirmation of the arbitration awards.

### 1. Amount of Attorneys' Fees

Where, as here, fees and costs are included as part of the arbitration awards, it is appropriate that the Court, rather than the arbitrator, determine the reasonableness of the fees and costs. As stated in *Alvarado*, "it is customary that reasonable fees and costs are determined by the forum in which a proceeding occurs." Case No. C-05-4409, Docket No. 25 at 7 (citing Fed R. App. P. 39-1, 39-2). It will be more efficient for this Court to ascertain the reasonableness of the fees, as all of the supporting documentation is already before the Court and the Court will generally have more

9

familiarity with what amount of attorneys' fees is reasonable in connection with a proceeding in this Court.

In determining the reasonableness of fees, the "lodestar" computation, which involves the multiplication of the number of hours reasonably expended by a reasonable hourly rate, is the predominant method of analysis used and the method adopted by the Supreme Court. *See Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987); *Hensley v. Eckerhart*, 461 U.S. 424. In performing the lodestar calculation, the Court can consider any relevant *Kerr* factors;[2] the award can then be adjusted upwards or downwards in light of the *Kerr* factors unused in the calculation. *Finley v. Hartford Life & Accident Ins. Co.*, 2008 U.S. Dist. LEXIS 29026 at *10 (N.D. Cal. Feb. 22, 2008).

Plaintiffs seek $5,371.25 in attorneys' fees. This amount is based on the following time billed: 1) 1.75 hours of work by attorney Barry Hinkle at a rate of $200.00/hour; 2) 20 hours of work by attorney Concepcion E. Lozano-Batista at a rate of $200.00/hour; 3) 10.25 hours of work by paralegal Eleanor Natwick at a rate of $95.00/hour; and 4) .5 hours of work by paralegal Judy Castillo at a rate of $95.00/hour. *See* Supplemental Declaration of Concepción E. Lozano-Batista in Support of Motion for Default Judgment ("Lozano-Batista Supp. Decl."). Plaintiffs have provided a detailed description of the billed work performed. *Id*. The Court finds both the rates sought and the specific dollar amounts for the tasks listed in the time sheets to be reasonable. Accordingly, Plaintiffs should be awarded $5,371.25 in attorneys' fees.

### 2. Amount of Costs

Plaintiffs seek $3,670.25 for the following costs incurred in prosecuting this action: 1) $350.00 for the Clerk's filing fee; 2) $240.00 for "[p]hotocopies re Petition exhibits, etc. of

---

[2] The 12 *Kerr* factors are as follows: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal serviceproperly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the undesirability of the case, (11) the nature and the length of the professional relationship with the client, and (12) awards in similar cases. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

1  Complaint, for personal service (962 pages at $.25 per page)"; 3) $1,300.00 for investigation
2  services relating to Defendants' assets; 4) $64.00 for a messenger/filing service to file the Petition;
3  5) $49.50 for the service of documents on Saul M. Cruz, individually; 6) $49.50 for the service of
4  documents on Saul M. Cruz, individually and DBA; 7) $24.75 for the service of documents on
5  Magdalena L. Cruz, individually; 8) $24.75 for the service of documents on Magdalena L. Cruz,
6  individually and DBA; 9) $24.75 for the service of documents on SMC Modular; 10) $1,400.00 for
7  investigation services "for services rendered in March 2008 re Saul and Magdalena Cruz: DMV
8  searches, Maria Cruz ID, Property research, West Installers, bank searches"; and 10) $143.00 for
9  copies of the motion for default judgment and exhibts, calculated based on 572 pages at $.25/page.
10 *Id*. at 6.

11   Under Civil Local Rule 54-3, an award of costs may include the clerk's filing fee and fees
12 for service of process "to the extent reasonably required and actually incurred." Therefore, items 1,
13 5, 6, 7, 8, and 9, for the Clerk's filing fee and service of process of various documents, totaling
14 $523.25, are allowable.

15   Plaintiffs also request $240.00 for photocopies of the petition and attachments that were
16 served on Defendants at the outset of the case (962 pages copied at a rate of $.25/page), as well as
17 $143.00 for photocopies of the default judgment motion and attachments. Civil Local Rule 54-3
18 provides that the "cost of reproducing copies of motions, pleadings, notices, and other routine case
19 papers is not allowable." However, the Ninth Circuit has ruled that when the local rules do not
20 allow for a certain cost, but some other source of authority allows for the awarding of that cost, that
21 cost can be awarded. *See Burt v. Hennessey*, 929 F.2d 457, 458-59 (9th Cir. 1991) (awarding
22 plaintiff the cost of photocopies under 42 U.S.C. §1988, even though they were disallowed by the
23 local rules). In the present case, 28 U.S.C. §1920(4) provides for "fees for exemplification and
24 copies of papers necessarily obtained for use in the case." Thus, this Court can award reasonable
25 costs for photocopies pursuant to §1920 if it finds that they were necessarily obtained for use in the
26 case.

27   Here, Plaintiffs seek to recover the cost of copying the petition and attachments that were
28 served on Defendants – 962 pages in all – at a rate of $.25 per page. A review of the docket reflects

that Plaintiffs served five sets of documents on the Defendants in their various capacities, with each set of documents containing close to 200 pages. Therefore, the Court finds the number of documents to be reasonable. Similarly, the Court finds that the 572 copies made of the default judgment motion and exhibits is reasonable. However, Plaintiffs have cited no authority – and the Court finds none – suggesting that the rate of $.25 per page is reasonable. Nor have Plaintiffs presented evidence showing that they actually paid this rate for the photocopies (for instance, if they had the documents copied by an outside service rather than making the copies in-house). Therefore, the Court concludes that the rate awarded should be reduced. A rate that is more in line with what courts generally award for photocopying is $.15 per page. *See, e.g.*, *Internet Specialties West, Inc. v. ISPWest,* 2007 WL 1655726, at * 2 (C.D. Cal. Feb. 7, 2007) (finding 15 cents per page a reasonable rate). Accordingly, it is recommended that Plaintiffs be awarded $144.30 for photocopying of the petition and $85.80 for photocopies of the default judgment motion.

Finally, Plaintiffs request costs for messenger service and investigation services. Although neither the local rule nor 28 U.S.C. §1920 authorizes the cost of investigation or messenger services, *see Bonilla v. KDH Backhoe Service, Inc.*, 2007 WL 39307, at * 3 (N.D. Cal. Jan. 4, 2007), the terms of the Trust Agreements provide for "reasonable expenses of the arbitration, including . . . the enforcement of the arbitration award," Plommer Decl. ¶ 15, Ex. A. Because items 3, 4, and 10 all appear to be reasonable expenses related to Plaintiffs' enforcement of the arbitration award, the cost of these services (totaling $2,764.00) should be included.

It is therefore recommended that Plaintiffs be awarded $3,517.35 in costs.

### D.  Retention of Jurisdiction

The Court concludes that retention of jurisdiction over this action is appropriate. It is within the discretion of the court to retain jurisdiction to ensure compliance with a court order. *See, e.g., Alaska Ctr. for the Env't v. Reilly*, 796 F. Supp. 1374 (W.D. Wash. 1992) (*citing U.S. v. Metro. Dist. Comm'n*, 930 F.2d 132 (1st Cir. 1991)). Courts have generally retained jurisdiction in cases where something further had to be done. *See Alaska*, 796 F. Supp. 1374 (jurisdiction was retained to ensure that the implementation of the pollution limits process occurred); *Burns v. Richardson*, 384 U.S. 73 (jurisdiction was retained to ensure that a permanent apportionment plan was made and to

monitor legislative proceedings). Likewise, the Court should retain jurisdiction in the present case because Plaintiffs will need to return to this Court to confirm any amended arbitration award that may be issued as a result of future audits.

## IV. CONCLUSION

The Motion should be GRANTED and the arbitration awards should be CONFIRMED. Claims Four through Nine should be dismissed without prejudice. Plaintiffs are entitled to $8,888.60 in reasonable fees and costs incurred in this confirmation proceeding.

Dated: July 28, 2008

JOSEPH C. SPERO
United States Magistrate Judge

13